## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CENTER FOR BIOLOGICAL DIVERSITY,
TAMPA BAY WATERKEEPER, SUNCOAST
WATERKEEPER, MANASOTA-88, and
OUR CHILDREN'S EARTH FOUNDATION,

      Plaintiffs,

v.

GOVERNOR RON DeSANTIS
and
SHAWN HAMILTON, in his official capacity
as ACTING SECRETARY, FLORIDA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,
and
HRK HOLDINGS, LLC
and
MANATEE COUNTY PORT AUTHORITY,

      Defendants.

Case No.: 8:21-cv-001521

## DEFENDANT, MANATEE COUNTY PORT AUTHORITY'S
## MOTION TO DISMISS

      Defendant, Manatee County Port Authority (the "Port") by and through its

undersigned counsel, and pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.,

and Local Rule 3.01, hereby moves for entry of an Order dismissing Plaintiff's

Second Amended Complaint for Declaratory and Injunctive Relief (Doc. 50), filed

by Plaintiffs, Center for Biological Diversity, Tampa Bay Waterkeeper, Suncoast

Waterkeeper, Manasota-88, and Our Children's Earth Foundation (collectively the

"Plaintiffs"), with prejudice, and in support thereof states as follows:

## Introduction

The Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992, was enacted to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, "so as to minimize the present and future threat to human health and the environment." 42 U.S.C. § 6901 et seq.; *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). RCRA is a comprehensive environmental statute empowering the EPA to regulate hazardous wastes from cradle to grave, in accordance with the rigorous safeguards and waste management procedures set forth in the statute. *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 331, 114 S. Ct. 1588, 1590, 128 L. Ed. 2d 302 (1994). In Florida, the State has assumed EPA's responsibilities under RCRA. Florida's regulations governing the disposal of hazardous wastes are set forth in Chapters 376 and 403 of the Florida Statutes and as well as Chapter 62 of the Florida Administrative Code.

Plaintiffs have sued all the named defendants under RCRA's citizen suit provision, 42 U.S.C § 6972(a)(1)(B), for an alleged violation of the statue giving rise to an alleged substantial endangerment to human health and the environment based on activities at the Piney Point Phosphate Facility ("Piney Point"). In addition, the Second Amended Complaint asserts a claim against, HRK Holdings, Inc. "HRK") and the Florida Department of Environmental Protection ("FDEP") alleging a violation under the Federal Water Pollution Control Act (the "Clean

Water Act"), 33 U.S.C. §§1251-1387. The Port has confirmed with Plaintiffs' counsel that these counts are not alleged against the Port and as such will not be addressed herein. Plaintiffs' counsel also deleted some of the allegations that counsel for the Port identified as factually incorrect in, but Plaintiffs are still proceeding against the Port under slightly altered logic.

FDEP is tasked with regulating the Piney Point site – a responsibility undertaken as the government entity delegated authority over environmental preservation, cleanup, and remediation. FDEP has been working with the past and present owners and operators of the site in what amounts to an almost two-decade long enforcement action.  The Port is not an owner or operator of Piney Point and has no control over the site, nor any authorization or role in the State and HRK's current closure and cleanup efforts. For the reasons expressed below the Second Amended Complaint should be dismissed, because the Plaintiffs lack standing and have failed to state a claim upon which relief can be granted.

## **Statement of Facts**

As alleged in the Second Amended Complaint, Piney Point was a phosphate fertilizer plant that ceased operations in 1999. Doc. 50, ¶70; see also Doc. 50-1, p. 5.   Since then, Piney Point has been owned and operated by a series of corporations. Doc. 50, ¶¶ 86; 100.  Today, the site is owned and operated by Defendant, HRK under the close supervision of Defendant, FDEP.[1] Doc. 50, ¶ 100;

---

[1] As of August 25, 2021, the Twelfth Judicial Circuit in and for Manatee County, Florida appointed Herbert Donica as receiver over Piney Point. *Fortress 2020 Landco, LLC v. HRK Holdings, LLC, et al.,* No. 2020-CA-004459-AX (Fla. 12th Cir. Ct. Nov. 17, 2020).

116. FDEP is the state entity tasked with regulating environmental contamination and clean-up. *See generally*, Chapter 403, Fla. Stat. (2021).  For almost two decades, FDEP has been working with the past and present owners of Piney Point to achieve site clean-up and closure. Doc. 50, ¶¶87,105, 107, 116, 184.  As part of the closure efforts, the phosphogypsum stacks at Piney Point were closed with four large reservoir compartments. *See e.g*. Doc. 50 ¶93 (aerial depiction of Piney Point). The compartments were lined with high density polyethylene (HDPE) designed to capture rainwater and prevent infiltration into the underlying phosphogypsum. *See e.g* Doc. 50, ¶¶90-92. Over the years, the HDPE liners have experienced several issues including cracks that have subsequently been repaired by HRK under FDEP's supervision. Doc. 50, ¶¶143, 165, 168.

The Port is a deep-water seaport and dependent special district, specific purpose local government entity that is located adjacent to Piney Point. *See* Chapter 2003-351, Laws of Florida. The Port has never owned, operated, or had regulatory authority over Piney Point. The Port's sole involvement at Piney Point relates to the Dredged Materials Containment Agreement referenced in the Second Amended Complaint and its subsequent amendments ("DMCA") entered between HRK and the Port and authorized by FDEP. Doc. 50, ¶ 112. The DMCA and its subsequent amendments are attached hereto as Exhibit "A."[2]

---

[2] Although consideration of a motion to dismiss under 12(b)(6) is normally confined to the four corners of a complaint, it is well established that the court may consider public documents at the motion to dismiss stage without converting the motion to dismiss into a motion for summary judgment.  *See Bouton v. Ocean Properties, Ltd.,* 201 F. Supp.3d 1341, 1345 (S.D. Fla. 2016) ("a court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and

To understand the context of the allegations raised in the Second Amended Complaint against the Port, it is necessary to understand the Manatee Harbor Florida Navigation Project– a major joint dredging project between the U.S Army Corps of Engineers ("USACOE") and the Port. Construction of the Manatee Harbor Florida Navigation Project (the "Project") at the Port was authorized by Section 201 of the Water Resources Development Act of 1986, Public Law 99-662, and Section 102(j) of the Water Resources Development Act of 1990, Public Law 101-640. *See e.g*, 1995 Project Cooperation Agreement between the USACOE and Port attached hereto as Exhibit "B".   The relevant phase of the Project in this case, is Phase III – the South Channel Extension.

The Port received a Section 404 Permit from the USACOE for the Port expansion on February 22, 2001 (SAJ-1998-1210(IP-MN))[3] ("CWA Permit"). The CWA Permit is attached hereto as Exhibit "C". As part of the CWA Permit, the Port was required to identify an upland site to place the dredged materials following the

---

consideration of such documents does not convert a motion to dismiss into one for summary judgment") (*citing Horne v. Potter,* 392 Fed. Appx. 800, 802 (11th Cir. 2010) and *Universal Express, Inc. v. U.S. S.E.C.,* 177 Fed.Appx. 52, 53 (11th Cir. 2006)); *Pozdol v. City of Miami*, 996 F. Supp.2d 1290, 1299, n. 14 (S.D. Fla. 2014) (considering a Department of Justice Letter as "a matter of public record, of which the Court may take judicial notice and which the Court may consider when deciding on a motion to dismiss) (*further citations omitted*); *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017) ("a court may take judicial notice of matter of public record...and consider those facts in resolving a motion to dismiss") (*further citation omitted*). All records attached to this Motion, are considered public records pursuant to Chapter 119 of the Florida Statutes. As such, as expressed in the Port's Motion for Judicial Notice concurrently filed, the Port respectfully requests the Court take judicial notice of the exhibits attached to this Motion to Dismiss.
[3] A section 404 permit under the CWA is required for projects that involve both federal and non-federal components where the sponsor (in this case the Port) does work outside the federal project and either funds the work entirely or seeks federal funding later.

dredging activities at the Port. *See e.g*. 33 U.S. Code § 1344.[4] The Port was also required to secure an Environmental Resource Permit ("ERP") from the FDEP; which it obtained. See Doc. 50, ¶111.  When the CWA Permit was first issued there was a site on Port property designated for the Phase III dredged material placement, however following the completion of Phase II, the Port determined a need to identify an additional placement location to accommodate the dredged materials from Phase III.

After coordinating with FDEP and after evaluating its options, the Port was invited by FDEP and HRK to place dredged materials at Piney Point as part of an attempt to close the Piney Point site and to provide a beneficial use of the dredged materials. See for example Doc. 50, ¶ 117 ("be of benefit for the Department"); *see also* Doc. 50, ¶ 121.

FDEP and HRK intended the placement of the dredged materials on the lined phosphogypsum reservoirs to serve as part of the remediation efforts at the site and to provide a protective cover over the HDPE liner. *See*, Sept. 26, 2007 correspondence from FDEP to USACOE attached hereto as Exhibit "D". On November 14, 2007 the USACOE issued a modification letter to the Port adding Piney Point as an upland site available for the placement of dredged materials. See CWA Permit Modification attached hereto as Exhibit "E".   Following the

---

[4] 33 U.S.C § 1344(a) provides that 404 permits may be issued, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at **specified disposal sites**.(*emphasis added*). The regulations governing specified disposal sites are set forth in 33 U.S. C. § 1344(b) and (c) and 40 C.F.R Part 230. Pursuant to 33 U.S.C § 1344(b) the disposal site must be specified in the 404 permit.

modification letter, multiple communications between the Port, FDEP, and the USACOE occurred regarding the use of Piney Point as a site for the dredged materials. At one point the USACOE determined that it was not comfortable utilizing Piney Point for its portions of the Project because there was low but not zero risk associated with using the phosphogypsum stack.  See e.g. Doc. 50, ¶¶ 124, 130. On the other hand, FDEP determined that the minimal risk was acceptable and approved the Phase III dredging project including placement of the dredged materials at Piney Point. See e.g, Doc. 50 ¶141.

On April 22, 2011, the Port commenced dredging operations for the construction of the Port's Berth 12 area as part of Phase III. The dredged materials (consisting of uncontaminated sand and sediment) were moved hydraulically through a piping system from the Port's property to the Phosphogypsum stacks pursuant to FDEP authorization and the DMCA. The Berth 12 dredging project was completed on October 21, 2011.  Since that date, no dredged materials have been sent to Piney Point from the Port.[5]

### Procedural Background

On June 24, 2021, Plaintiffs filed their Complaint for declaratory and injunctive relief in the United States District Court for the Middle District of Florida, Tampa Division. On July 14, 2021, the Port was served with Plaintiff's

---

[5] The Port has not placed any dredged materials at Piney Point since 2011. While the Port has engaged in other maintenance dredging activities, all spoil associated with any maintenance dredging has been deposited on Port property and not at Piney Point and counsel for Plaintiffs acknowledged this fact and removed allegations to the contrary in drafting the Second Amended Complaint.

Complaint.  The Complaint consisted of one count pursuant to the Resource Conservation and Recovery Act ("RCRA") citizen suit provision, 42 U.S.C § 6972(a)(1)(B). The Complaint alleges that the Port violated RCRA by transporting dredged materials and placing the materials on the phosphogypsum stacks at Piney Point. Allegedly the dredged materials have comingled with other materials creating a hazardous leachate, which subsequently was released from the Site in April 2021.

On August 12, 2021, the Plaintiffs filed its Amended Complaint for declaratory and injunctive relief. The Amended Complaint added a second count and a third count alleged in the alternative pursuant to the CWA. The allegations under the CWA are not specifically directed at the Port, or any Port action and the request for relief is specifically directed only against FDEP and HRK.

On November 19, 2021, the Plaintiffs filed its Second Amended Complaint for declaratory and injunctive relief (the "Second Amended Complaint").  The Second Amended Complaint was revised to remove certain allegations against the Port following discussions between the Port and Plaintiffs.

The Parties agreed to a briefing schedule for submission of the Motions to Dismiss.  See Doc 49.  On November 17, 2020, a state court foreclosure action commenced against defendant, HRK and on August 5, 2021, FDEP initiated an enforcement action against HRK in State Circuit Court. On August 25, 2021, a receiver was appointed and has made an appearance as an interested party in this case.

<u>**Memorandum of Law**</u>

The Port, pursuant to Local Rule 3.01(a), files this memorandum of legal authority in support of its Motion to Dismiss as follows:

I.    <u>**Standard of Review and Statutory Background**</u>

    *a. Rule 12 (b)(1) – Subject Matter Jurisdiction*

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies and the lack of a case or controversy creates a jurisdictional issue for the Court. *Cone Corporation, C.H. v. Fla. Dept. of Transportation*, 921 F.2d 1190, 1203 (11th Cir. 1991). When a defendant mounts a factual challenge to the jurisdiction of the Court pursuant to Federal Rule of Civil Procedure 12(b)(1), the burden shifts to the plaintiff to establish the Court's jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)*; Arctic Corner, Inc. v. United States,* 845 F.2d 999 (Fed. Cir. 1988).

In the Eleventh Circuit, "[a]ttacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990) (alterations in origina) (*citing Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)) (further citations omitted). Conversely, factual attacks "challenge 'the

existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (Further citations omitted). In the instant case, the Plaintiffs lack subject matter jurisdiction both in fact and facially.

### b. Rule 12 (b)(6) – Failure to State a Claim

To survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Here the Plaintiffs have not stated a plausible claim for **relief** because the dredged materials do not constitute waste regulated by RCRA, the Port has no authority over the closure of Piney Point and a plan for closure is already moving forward pursuant to a separate state litigation brought by FDEP.

### c. Resource Conservation and Recovery Act

RCRA's primary purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). Accordingly, RCRA establishes a "cradle to

grave" regulatory scheme for wastes it deems to be "hazardous." Nonhazardous wastes are less stringently regulated under RCRA as "solid waste." *City of Chicago v. Environmental Def Fund*, 511 U.S. 328, 331-32 (1994). Materials that have a beneficial use or have been defined by regulation as non-waste are not subject to the RCRA regulatory scheme of liability.

Citizens may bring suit to enforce RCRA's provisions. Section 7002 of RCRA authorizes any person who has provided the statutorily prescribed notice of intent to sue to commence a civil action:

> against any person, including the United States ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ...

42 U.S.C. § 6972(a)(1)(B). As such, to prevail under RCRA's citizen suit provision in 42 U.S.C. § 6972(a)(1)(B), the plaintiff must prove: (1) that defendant is a person who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that solid or hazardous waste presents an imminent and substantial endangerment to health or the environment. Solid Waste Disposal Act, § 7002(a)(1)(B), as amended, 42 U.S.C § 6972(a)(1)(B).

## II.    Grounds for Dismissal Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Federal Rules of Civil Procedure.

### a. Plaintiffs have not provided the requisite notice pursuant to RCRA

On May 17, 2021, Plaintiffs served a Notice of Intent to Sue Pursuant to the Resource Conservation and Recovery Act, 42, U.S.C. § 6972(a)(1)(B); the Federal water Pollution Control Act, 33 U.S.C. § 1365(a)(1); & the Federal Endangered Species Act, 16 U.S.C. § 1540(g)(1)(A), and shorty after on June 24, 2021, Plaintiffs filed their initial Complaint.  Prior to filing a citizen suit under RCRA, sufficient notice is a "mandatory, not optional, condition precedent".  *Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989) (dismissing RCRA claim and holding that "where a party suing under the citizen suit provisions of RCRA fails to meet the notice and 60-day delay requirements of § 6972(b), the district court must dismiss the action as barred by the terms of the statute."). RCRA provides an exception for the notice period for citizen suits alleging violations of Subtitle C hazardous waste management provisions, which can be filed immediately after providing notice. 42 U.S.C § 6972 (b)(1)(A)(iii). However, more is required than alleging that the suit generally involves hazardous waste or hazardous waste management; the action must also be one "respecting a violation" of the provisions of subchapter III, which addresses hazardous waste violations, or the regulations promulgated thereunder.  *Building and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.*, C.A.2 (N.Y.) 2006, 448 F.3d 138. Thus, while the notice and the Second Amended Complaint reference the creation of a leachate from the comingling of phosphogypsum and dredged

materials (two non-hazardous wastes), the mere reference that the leachate exhibits characteristics of a hazardous substance is not sufficient to comply with the exception in § 6972 (b)(1)(A)(iii). The Second Amended Complaint and the Notice fail to specifically identify a violation of the Hazardous Waste Management segment of RCRA involving the Port.  *See e.g. Cooper v. Armstrong Rubber Co.*, CIV. A. J88-0464(L), 1989 WL 60338, at *7 (S.D. Miss. Feb. 1, 1989). Moreover, the Second Amended Complaint merely asserts legal conclusions with respect to the leachate. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").   Thus, the Plaintiffs failed to comply with RCRA's notice requirements and the Second Amended Complaint must be dismissed for failure to comply with the necessary jurisdictional condition precedent to filing.

### b. *Plaintiffs lack standing to bring this action.*

      i.   <u>Plaintiffs have not alleged an injury-in-fact likely to be redressed by a favorable decision against the Port.</u>

Article III standing is a threshold jurisdictional requirement for any case in federal court. U.S. Const. art. 3, § 2. "Article III of the Constitution restricts federal courts to the adjudication of cases and controversies." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp. (Gaston III),* 629 F.3d 387, 396 (4th Cir. 2011). "This requirement ensures that a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate." *Gaston III,* 629 F.3d at 396 (quoting *Emery v. Roanoke City Sch. Bd.,* 432 F.3d 294, 298 (4th Cir.

2005)).

To meet the constitutional requirement for standing, a plaintiff must prove that: 1) he or she suffered an 'injury in fact' that is concrete and particularized and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "Injury in fact is alleged adequately by 'environmental plaintiffs' when they 'aver that they use the *affected area* and are persons 'for whom the aesthetic and recreational values of the area will be lessened' *by the challenged activity*." *Friends of the Earth v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton,* 405 U.S. 727, 735, (1972)) (*emphasis added*). To demonstrate the redressability prong analysis of whether the plaintiff has standing to bring action in federal court, the plaintiff must show that it is likely, as opposed to merely speculative, that injury will be redressed by a favorable decision. U.S. Const. art. 3, § 2, cl. 1. If the Plaintiff fails to meet the redressability prong, an action must be dismissed. See for example, *Henry v. DeSantis*, 461 F. Supp. 3d 1244, 1253 (S.D. Fla. 2020).

The Second Amended Complaint does not allege an injury-in-fact that is concrete and particularized, actual and imminent, or fairly traceable to actions by the Port. While the Second Amended Complaint contains a lengthy description of Plaintiffs' use and enjoyment of Tampa Bay, the Second Amended Complaint does not sufficiently allege the Port's relationship to the Plaintiffs' alleged harm – the

traceability and causation requirement for standing is not met. See, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The injury that the Plaintiffs allege – impact to Tampa Bay from the 2021 release of water from one containment cell which was leaking in 2021, is separate and distinct from the Port's action of delivering dredged materials to a different containment cell, 10 years ago. Whether any dredged materials were released in 2021 causing injury to the Plaintiffs is tenuous, speculative, and not sufficiently identified in the Second Amended Complaint. Thus, the Second Amended Complaint does not support an injury-in-fact against the Port sufficient to establish Article III standing. Here, Plaintiffs also fail to allege an injury capable of redress by a favorable decision against the Port. The Port is not an owner of Piney Point and has no control over its operation. Moreover, pursuant to Paragraph 6 of the DMCA, the Port no longer owns the dredged materials. Pursuant to the DMCA, HRK is the party responsible for the dredged materials once they are placed on the site. The Second Amended Complaint requests injunctive relief against the Port to require clean-up of the Piney Point site that the Port cannot perform, and that the Court cannot compel. The Port is not involved in the closure or remediation of Piney Point, rather FDEP has initiated enforcement against HRK to compel site cleanup. *FDEP v. HRK Holdings, LLC*, No. 2021-CA-3192 (Fla. 11th Cir. Ct. August 5, 2021) (enforcement action). The Porthas no control over the site or how it is operated or how any remediation may be performed. Clearly, the regulatory agency, FDEP has determined that the Port's limited involvement at Piney Point over a decade ago is

not violative of the state and federal environmental laws requiring the Port to be part of cleanup efforts or enforcement action.  Thus, the injury alleged is not redressable by the injunctive relief requested against the Port. While arguably the Port could be required to formally withdraw Piney Point as an alternative site for the placement of dredged materials (as opposed to having previously and independently made this decision), this relief is not requested in the Second Amended Complaint, and would also present a difficult hurdle for the Plaintiffs in demonstrating an actual and imminent threat from such an occurrence. Moreover, as fully explained below, the Port has a valid CWA Permit allowing the use of Piney Point as a dredged material placement facility, which acts as a bar to a citizen suit pursuant to RCRA. See, 42 U.S.C. § 6905(a).

In addition, where a remediation plan is in place and cleanup is ongoing, the Plaintiffs lack an injury capable of redress because the Court cannot order superfluous relief (and RCRA does not allow for recovery of past cleanup costs). *See e.g SPPI-Somersville, Inc., et al. v. TRC Companies, Inc., et al*., 2009 WL 2612227 (N.D. Cal. 2009). In the case of Piney Point, the State and HRK are actively remediating the site.  *See e.g., 87 Street Owners Corp. v. Carnegie Hill-87th Street Corporation,* 251 F. Supp. 2d 1215 (S.D. NY 2002)   (where the New York Department of Conservation was already supervising remediation efforts on Defendant's property the court could not fashion any further injunctive relief); *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 867 F. Supp. 2d 754, 762 (W.D. Pa. 2012), aff'd in part, vacated in part, remanded, 735 F.3d 131 (3d Cir. 2013) ("the

court will grant summary judgment in favor of [defendant] because there is no meaningful relief available under RCRA in light of the Consent Order"). FDEP has already initiated an enforcement action against HRK to compel site cleanup. *FDEP v. HRK Holdings, LLC*, No. 2021-CA-3192 (Fla. 11th Cir. Ct. August 5, 2021) (enforcement action). Again, the Port is not a party to FDEP's enforcement action because the Port plays no role in regulating or utilizing Piney Point and did not contribute to any environmental harm associated with the Piney Point site. Finally, there is no basis for civil penalties against the Port since the Port has not violated RCRA, and the Plaintiffs have further not specifically plead such relief. *See e.g. Friends of the Earth v. Laidlaw Envtl. Serv.*, Inc., 528 U.S. 167 (2000).

As alleged in the Second Amended Complaint, cleanup by FDEP has been an ongoing effort to address Piney Point for decades. The recent discharge that Plaintiffs object to was a controlled discharge mandated by FDEP to prevent a complete failure of the Piney Point site and was pursuant to an emergency order followed up by subsequent enforcement action against the owner and operator of Piney Point. The issues complained about are already being addressed by the State regulatory agency against the party responsible. Thus, the Plaintiffs have not alleged an injury likely to be redressed by a favorable decision against the Port and must be dismissed.

      ii.   <u>Plaintiffs' claim should be dismissed because the action is moot.</u>

As stated above, under Article III of the Constitution, a federal court can only entertain "cases and controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

559-60 (1992). "[T]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)... A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Frulla v. CRA Holdings, Inc., 543 F.3d 1247, 1250-51* (11th Cir. 2008). "When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehab. Facilities v. State of Fla. Dep't of Health and Rehabilitative Serv., et al.,* 225 F.3d 1208, 1217 (11th Cir. 2000). Motions to dismiss on grounds of mootness are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173, 1182 (11th Cir. 2007).

As referenced above, FDEP is already using its enforcement authority through a Circuit Court action to have the site cleaned up. Moreover, FDEP has been regulating cleanup and remediation efforts at the site for decades to ensure the site poses no threat to the human health and environment. See e.g Doc. 50-1, p. 5-7. The emergency order allowing discharge to Tampa Bay were part of a regulatory enforcement action to prevent greater harm, followed by addition measures taken by FDEP. See, 2021 Emergency Order attached hereto as Exhibit "F". The Plaintiffs request declaratory and injunctive relief against the Defendants asking the Court to require the Defendants take corrective action to clean up Piney Point and cease all activities constituting the alleged imminent and substantial endangerment. Plaintiffs also request the court exercise close supervision over the

Defendants as they implement a remedial investigation and closure plan that will fully abate the imminent and substantial endangerment threatened by Piney Point. The relief requested is already well underway; not only has FDEP sued HRK, FDEP is actively working and has been actively working to remediate the site, thereby rendering the Plaintiffs claims moot.   Moreover, the bankruptcy court has appointed a receiver for HRK to ensure HRK complies with its obligations as the owner of Piney Point.

### c. RCRA's "anti-duplication" provision prohibits suit against the Port

RCRA contains provisions addressing the potential duplicative regulation that might result from applying RCRA alongside other environmental statutes, such as the CWA. *See* 42 U.S.C. § 6905. Specifically, RCRA prohibits such duplication. RCRA's anti-duplication provision restrains RCRA's application with respect to "any activity or substance which is subject to" the CWA. 42 U.S.C. § 6905(a). The statute requires that the EPA administer RCRA by "avoid[ing] duplication, to the maximum extent practicable, with the appropriate provisions" of the CWA. 42 U.S.C. § 6905(b). This provision bars RCRA's application where the specific application would conflict with identifiable legal requirements promulgated under the CWA. *Id*. In this case, the Plaintiffs claims against the Port are attempting to extend the application of RCRA to a situation that is expressly regulated under section 404 of the Clean Water Act ("CWA") and thus prohibited under RCRA. 42 U.S.C. § 6905

The Port's dredging and associated placement of dredged materials at Piney Point was specifically authorized by a valid USACOE permit under the CWA. Section 404 of the CWA regulates the discharge of dredged material in connection with the dredging efforts at the Port. Appellants' RCRA claims are based on the same activities and substances that the CWA covers.

This is even more apparent when examining the adoption documents of the Final Rule for the Operation and Maintenance of Army Corps of Engineers Civil Works Projects Involving the Discharge of Dredged Material into Waters of the U.S or Ocean Waters – 53 FR 1492-01,1988 – wherein the USACOE determined the following:

> After careful study of RCRA and its legislative history, we do not believe that Congress intended that RCRA regulate dredged material disposal. Dredged material does not clearly fall within the RCRA definitions of solid waste or hazardous waste. Also, the CWA and ODA provide the appropriate legal and regulatory regimes for dredged material disposal, and those regimes are substantially incompatible with regulation under RCRA.

Therefore, pursuant to 42 U.S.C § 6905(a), RCRA cannot apply to these activities and substances in this instance because any such application would be inconsistent with the CWA.

### d. The Port has not contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste that may present imminent and substantial endangerment to health or the environment

In addition to all the preceding reasons upon which the Court should dismiss the Second Amended Complaint as to the Port, the Plaintiffs' claims against the Port should also be dismissed because the Plaintiffs have not alleged requisite facts

to support its RCRA claim. When assessing a motion to dismiss for failure to state a claim, if a complaint omits facts concerning pivotal elements of a claim, a court is justified in assuming the non-existence of the claims. See for example, *Fuller v. Mortgage Elec. Registration Sys.*, Inc., 888 F. Supp. 2d 1257, 1268 (M.D. Fla. 2012). Plaintiffs' Second Amended Complaint fails to state a claim because it lacks allegations – other than legal conclusions masquerading as factual conclusions – which are not sufficient to support its RCRA claim against the Port. Specifically, the Plaintiffs have not sufficiently alleged how the dredged materials are a solid waste or hazardous waste regulated under RCRA, how the Port has "contributed to" the alleged comingling of substances at Piney Point; and how the Port's actions with respect to the dredged materials present imminent and substantial endangerment to human health or the environment.

       i.    <u>The dredged materials are not a solid or hazardous waste regulated under RCRA</u>

The Second Amended Complaint alleges that the Port is a past transporter and generator of solid waste that has contributed to the handling, storage, treatment, transportation, or disposal of water that may present imminent and substantial endangerment to health or the environment. This legal conclusion is not supported by the facts alleged. Simply, the Plaintiffs do not allege sufficient facts to demonstrate that the Port is a transporter or generator of solid waste regulated by RCRA. The dredged materials are neither solid waste nor hazardous waste.

Under RCRA, "solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations. 42 U.S.C.A. § 6903. Therefore, to proceed with a claim against the Port, the Court must find that the term "solid waste" includes the dredged materials at issue.

Courts have routinely found that material being used for a beneficial purpose is not being "discarded" such that it becomes "solid waste" subject to RCRA regulation. *See e.g. Delaware Riverkeeper Network*, 2017 WL 2829603, at *22 ("a common-sense reading of words like "discard," "disposal," and "abandon" connotes that the material is not being applied for a beneficial or intentional purpose.");   *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 55-56 (D.C.Cir.2000) ([m]aterial is considered to be "discarded" where it is disposed of, thrown away, or abandoned); *see also   Am. Mining Congress v. EPA*, 824 F.2d 1177, 1183-84 (D.C.Cir.1987) ("[t]he ordinary, plain-English meaning of the word 'discarded' is 'disposed of,' 'thrown away' or 'abandoned.'");   *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-0329-GKF-PJC, 2010 WL 653032, at *10 (N.D. Okla. Feb. 17, 2010) ("[i]n determining whether a material is a 'beneficial' product or a RCRA solid waste, courts have examined whether the material has market value, and whether the party intended to throw the material away or put it to a beneficial use"); *Krause v. City of Omaha*, No. 8:15-CV-197, 2015 WL 5008657, at *4 (D. Neb. Aug. 19,

2015) (*citing  Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 206 (2d Cir. 2009) ([w]hen the materials in question were "applied for a specific use" and were used to "effectuate their intended purposes," that "they were not discarded under the RCRA.").

In determining whether a material is a "beneficial" product or a RCRA solid waste, courts have examined whether the party intended to throw the material away or put it to a beneficial use.  *Tyson Foods*, 2010 WL 653032, at *11;  *Safe Food & Fertilizer v. E.P.A.*, 350 F.3d 1263, 1268 (D.C. Cir. 2003), on reh'g in part, 365 F.3d 46 (D.C. Cir. 2004). As noted in *Tyson Foods*, critical to the analysis is the party's intent in the use of the material. The Court must consider the underlying purpose, and intent of the application. In this case, because the dredged material was used and intended for a beneficial purpose (as part of Piney Point's closure efforts) it does not meet RCRA's definition of a solid waste. See attached Exhibit "D" and the First Amendment to Administrative Agreement dated August 13, 2007 and attached here to as Exhibit "G."  In this case HRK, FDEP, and the Port agreed that the dredged materials had a beneficial purpose. Material that does not meet the definition of "solid waste," is not subject to RCRA and cannot be the subject of an endangerment citizen suit claim.

It is also worth noting that the USACOE document referenced in Paragraph 124 of the Second Amended Complaint states that "[d]redged material is not regulated by RCRA because it is not a solid waste under the statutory definition". This is consistent with USACOE policy that the placement of dredged materials

regulated under Section 404 of the CWA is not subject to RCRA as a solid waste. See for example, USACOE Engineer Manual Dredging and Dredged Material Management EM 1110-2-5025, July 31, 2015; see also 53 FR 1492-01,1988.

Similarly, dredged materials are not considered "hazardous wastes" under RCRA where there is a valid 404 Clean Water Act permit. 40 CFR § 261.4(g). As explained above, the Port has a valid 404 permit for the dredging activity that resulted in materials being placed at Piney Point; therefore, the dredged material itself is not considered a hazardous waste.

    ii.   <u>The Port has not "contributed to" the alleged comingling of substances at Piney Point</u>

Further, in addition to the dredged materials not constituting a solid or hazardous waste regulated by RCRA, Plaintiffs' claims must be dismissed because the dredged material did not contribute to substantially effecting human health or the environment. Specifically, the Plaintiffs allege that the dredged materials have comingled with other substances at Piney Point, thereby creating a hazardous waste. Doc. 50, ¶1, 6, 271. "Contributing to" is not defined under RCRA. While courts have broadly interpreted "contributing to" to mean "to have a share in any act or effect," passive conduct, such as merely failing to remediate or prevent migration of contaminants, fails to satisfy the "contributing to" requirement. *See, e.g., Delaney v. Town of Carmel*, 55 F. Supp. 2d 237, 256 (S.D.N.Y. 1999) ("The term [contributed to] has been universally held to infer something more than mere ownership of a site; some level of causation between the contamination and the

party to be held liable must be established."); *SPS Ltd. Partnership, LLLP v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 807 (D. Md. 2011) (dismissing RCRA count based on the fact defendant was passive subsequent owner who acquired site after disposal at issue ceased). In this case, the Port has taken no recent action of any kind on the Piney Point site and has no authority to even enter Piney Point. Moreover, when the dredging project was underway and materials were placed at the site, the Port acted pursuant to its permits and direction provided by the State of the Florida. The Port played no role in the events that transpired in April 2021 and had no control over how the State chose to remedy the situation.

Further, once the dredged materials were placed at the Site, HRK became the exclusive owner of the dredged materials pursuant to the DMCA. Since the completion of the dredging, the MCPA's involvement with activities associated with Piney Point has been exclusively at the direction of the FDEP, responding to the State's directives in addressing any emergency needs. The MCPA also has no control over the Site's maintenance or operation.  Therefore, to the extent a hazardous waste now exists at the Piney Point site based on activities that have occurred subsequent to the dredging activities (as alleged in the Second Amended Complaint (Doc. 50, ¶ 182-275), the MCPA bears no responsibility or liability for its creation or its release.

      iii.   <u>The Port's activities with respect to the dredged materials do not present imminent and substantial endangerment to human health or the environment</u>

Plaintiff brings this claim under RCRA's citizen's suit provisions, which allows "any person to commence a civil action on his own behalf." 42 U.S.C. § 6972(a). The suit can be brought against "any person who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order" under RCRA. 42 U.S.C. § 6972(a)(1)(A). Specifically, Plaintiffs' claim is brought under 42 U.S.C. § 6972(a)(1)(B), which allows a private party to bring suit upon a showing that the solid or hazardous waste at issue "may present an imminent and substantial endangerment to health or the environment."

The United States Supreme Court declared that this provision is designed to provide a remedy that ameliorates present or obviates the risk of future "imminent" harms, not a remedy that compensates for past cleanup efforts. *Meghrig*, 516 U.S. at 486. Accordingly, only prospective relief is available to Plaintiffs under this provision. *See Soo Line R. Co. v. Werner Enterprises*, No. CIV. 12-1089 DSD/JSM, 2013 WL 2434880, at *13 (D. Minn. June 4, 2013), objections overruled, No. CIV. 12-1089 DSD/JSM, 2013 WL 3771391 (D. Minn. July 17, 2013)(*citing Tyco Thermal Controls LLC v. Redwood Indus.*, Civ. No. 06-7164, 2010 WL 3211926 at *19 (N.D. Cal. Aug. 12, 2010)).

To successfully plead a claim under § 6972(a)(1)(B), Plaintiffs must first allege conditions that are present which may present an imminent and substantial endangerment. *United States v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1382 (8th Cir.1989) (*citing United States v. Bliss*, 667 F. Supp. 1298, 1313

(E.D.Mo.1987). The Supreme Court has interpreted the statute's use of "may present" imminent harm to "quite clearly exclude waste that no longer presents such a danger." *Meghrig*, 516 U.S. at 485-86. Courts across the country have followed this precedent in finding that application of this provision necessarily requires that a Plaintiff must allege an existing or ongoing endangerment. *See e.g Cross Oil Co. v. Phillips Petroleum Co.*, 944 F. Supp. 787, 789 (E.D. Mo. 1996) (no cause of action exists for a plaintiff to recover costs for cleanup charges when the contamination at issue is not alleged to have presented an imminent and substantial endangerment to the environment); 307 *Campostella, LLC v. Mullane*, 143 F. Supp. 3d 407, 414 (E.D. Va. 2015) ("an allegation of harm that no longer presents any danger could not constitute the basis for suit under § 6972(a)(1)(B)"); *A-C Reorganization Tr. v. E.I. DuPont de Nemours & Co.*, 968 F. Supp. 423, 427 (E.D. Wis. 1997) ("RCRA's citizen suit provisions do not allow for recovery of past cleanup costs in the form of legal damages or equitable restitution.); *Bologna v. Kerr-McGee Corp.*, 95 F. Supp. 2d 197, 202 (S.D.N.Y. 2000) ("to the extent, however, that plaintiffs seek compensation for any past cleanup efforts, RCRA bars the claim.").

Whether a particular threat may be an imminent and substantial endangerment to the environment turns significantly on the word "may." *Delaware Riverkeeper Network v. Soil Safe, Inc.*, No. CV 14-1349 (RMB/KMW), 2017 WL 2829603, at *26 (D.N.J. June 30, 2017). "Meghrig tells us that an endangerment cannot be merely possible but must "threaten to occur

immediately." *Crandall v. City & Cty. of Denver, Colo.*, 594 F.3d 1231, 1238 (10th Cir. 2010). A vague possibility of future harm cannot satisfy the statute, which applies to dangers that are both "imminent and substantial." 42 U.S.C. § 6972(a)(1)(B).

Plaintiffs' claim fails to allege any immediate and substantial endangerment that would subject the Port to liability under RCRA. The dredged material was not a solid or hazardous waste at the time it was placed on the site, but also presented no imminent or substantial endangerment to health, or the environment. This has not changed with the passage of time and certainly has not changed based on any action taken by the Port. Moreover, the allegation that the Port knew or should have known that depositing dredged materials at Piney Point presented an imminent or substantial endangerment is not supported by the facts alleged. In fact, the documents referenced by the Second Amended Complaint indicate that the Port did extensive analysis prior to commencing with the dredge project and that it obtained all requisite permission from all necessary regulatory agencies. See e.g Doc. 50, ¶¶111, 113, 118; see also 404 Permit.  It also is clear that the Port ceased all activities in 2011 . See Doc 50, ¶ 168. Additionally, the allegation that the leaking, leaching, and downward movement of dredged materials has been continuous and ongoing since the completion of the dredge project (Doc 50, ¶ 171) directly conflicts with the allegation in paragraph 168 that makes reference to the liner being repaired. The allegations in the Second Amended Complaint are simply not sufficient to establish that the Port contributed to a waste that may result in

imminent and substantial endangerment.

It is also worth noting that while courts have been liberal in interpreting the terms "imminent" and "substantial," courts have held that where alleged risk of harm is remote in time, speculative, or de minimis, the threshold for an imminent and substantial endangerment is not met. *See, e.g., Maine People's Alliance and Natural Resources Defense Council v. Mallinckrodt, Inc.*, 471 F.3d 277 (1st Cir. 2006). The incident at Piney Point in April 2021, occurred 11 years after the dredged material was placed at the Site. At the time the material was placed at Piney Point, prior to its use, extensive investigation was conducted. See for example, July 8, 2008 Memorandum attached hereto as Exhibit "H." and the Operation and Maintenance Plan attached hereto as Exhibit "I." All accounts indicated a de minimis risk of the dredged materials ever leaving the containment areas.   Although the Second Amended Complaint references the USCOE's warnings against placing dredged materials at the site, USCOE granted a permit modification to include Piney Point as an upland area appropriate for the dredged material placement and FDEP fully endorsed and authorized the placement. See Exhibit "E" and Doc 50, ¶ 141. Therefore, Plaintiffs have failed to allege that the Port is responsible for an imminent and substantial endangerment to human health and environment and the Second Amended Complaint must be dismissed.

### e. *Alternatively, Plaintiffs' challenge is barred by RCRA Section 7002(b)(2)(D).*

The RCRA citizen suit provision under which Plaintiffs are attempting to

proceed, specifically prohibits an action concerning the siting or permitting of a hazardous waste treatment, storage or disposal facility. The statute says:

> No action may be commenced under subsection (a)(1)(B) of this section by any person (other than a State or local government) with respect to the siting of a hazardous waste treatment, storage, or a disposal facility, nor to restrain or enjoin the issuance of a permit for such facility.

42 U.S.C. § 6972(b)(2)(D). RCRA § 7002 "does not allow collateral attacks on Environmental Protection Agency permit decisions or those of state agencies with federally-delegated authority." *Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army*, 111 F.3d 1485, 1492 (10th Cir. 1997). Should the Court determine that the Second Amended Complaint's allegations that the Port disposed of a waste at the Piney Point site then Plaintiffs' RCRA cause of action should be viewed as prohibited, because RCRA expressly restricts challenging the siting of a disposal facility and on the permit for such a facility. As discussed above, the dredging activities were authorized by the CWA Permit, and this action is therefore barred by RCRA's anti-duplication provision. Moreover, both FDEP and USACOE allowed the Port to designate Piney Point as an upland disposal site for the dredged materials in the Port. In fact, Plaintiffs indicate in the Second Amended Complaint at paragraph 128 that the USACOE required FDEP to certify Piney Point as a Dredged Material Disposal Site. Thus, if Plaintiffs' allegations that the Piney Point site received waste from the Port for disposal are accepted as true, then the Plaintiffs' time for challenging the determination to allow this use for Piney Point is long past and RCRA does not provide a private party cause of action

at this time. This claim is expressly prohibited by 42 U.S.C. § 6972(b)(2)(D) and

must be dismissed.[6]

## III.   **Conclusion**

For the foregoing reasons, the Second Amended Complaint should be

dismissed with prejudice and without leave to amend as to the Port.

Respectfully submitted this 3rd day of December, 2021.

*/s/ Kevin S. Hennessy*

KEVIN S. HENNESSY, ESQUIRE
Florida Bar No. 0602558
NICOLE J. POOT, ESQUIRE
Florida Bar No. 0118858
LEWIS, LONGMAN & WALKER, P.A.
100 Second Avenue South, Suite 501-S
St. Petersburg, FL 33701
Telephone: (727) 245-0820
Facsimile: (727) 290-4057
Primary Email: khennessy@llw-law.com
               npoot@llw-law.com
Secondary Email: jbissette@llw-law.com
                 jdavy@llw-law.com
*Counsel for Manatee County Port Authority*

---

[6] It is unclear whether or not 42 U.S.C. § 6972(b)(2)(D) expressly applies only to hazardous waste disposal facilities, however, to interpret 42 U.S.C. § 6972(b)(2)(D) as creating an exception to allow citizen suits that challenge solid waste disposal permits reaches an absurd result: citizen plaintiffs would have more authority under the endangerment citizen suit provision to challenge solid waste disposal than for challenges to hazardous waste disposal, even though the latter category is defined by its potential for endangerment. See, § 6903(5) ("'hazardous waste' means a solid waste,.. [which may] (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed").

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a true and correct copy of the foregoing was served

via the Court's CM/ECF system, which provides notice to the following counsel of

record, on this 3rd day of December, 2021:

Charles M. Tebbutt, Esq.
Daniel C. Snyder, Esq.
B. Parker Jones, Esq.
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR  97401
Tel: (541) 344-3505
Fax: (541) 344-3516
charlie@tebbuttlaw.com
dan@tebbuttlaw.com
parker@tebbuttlaw.com
*Co-Counsel for Plaintiffs*

Jaclyn Lopez, Esq.
Center for Biological Diversity
PO Box 2155
St. Petersburg, FL  33731
Tel: (727) 490-9190
jlopez@biologicaldiversity.org
*Co-Counsel for Plaintiffs*

Jesse L. Ray, Esq.
Jesse Lee Ray Attorney at Law, P.A.
13014 N. Dale Mabry Hwy., #315
Tampa, FL  33618-2808
jray@jesseleeray.com
efile@jesseleeray.com
Tel: (813) 443-9701
Fax: (866) 523-5468
*Counsel for HRK Holdings, LLC*

Justin Bloom, Esq.
PO Box 1028
Sarasota, FL 34230
Tel: (941) 275-2922
Bloomesq1@gmail.com
*Co-Counsel for Plaintiffs*

Nicolas J. P. Meros, Esq.
Deputy General Counsel
Executive Office of the Governor
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL  32399
Nicholas.Meros@eog.myflorida.com
Gov.legal@eog.myflorida.com
Tel: (850) 717-9310
Fax: (850) 488-9810
*Counsel for Governor Ron DeSantis*

Jeffrey Brown, Esq.
Assistant General Counsel
Department of Envir. Protection
3900 Commonwealth Blvd., MS 35
Tallahassee, FL  32399-3000
Jeffrey.Brown@FloridaDEP.gov
Syndie.Kinsey@FloridaDEP.gov
DEP.Defense@FloridaDEP.gov
*Counsel for Shawn Hamilton, in his official capacity as Acting Secretary of the Florida Department of Environmental Protection*

   /s/ *Kevin S. Hennessy*
      KEVIN S. HENNESSY