## PORT MANATEE DREDGED MATERIALS CONTAINMENT AGREEMENT

The MANATEE COUNTY PORT AUTHORITY, a political entity of the State of Florida with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida 34221 (the "Authority"), and HRK HOLDINGS, LLC, a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520 ("HRK"), for and in consideration of the mutual covenants herein contained and other good and valuable consideration, agree as follows:

1. AUTHORITY REPRESENTATIONS. The Authority represents unto HRK, with the intent that HRK rely thereon, that:

A. The Authority owns and operates public seaport facilities in the northwestern portion of Manatee County, Florida named "Port Manatee".

B. It is periodically necessary for the Authority to undertake the dredging of basins and channels to provide access to Port Manatee by oceangoing vessels and to provide for the proper and safe upland containment of the materials from said dredging activities.

C. It is presently anticipated that the Authority will in the immediate future undertake the dredging of the Berth 12 approach channel, also identified as the south channel extension which will consist of hydraulically dredging a channel approximately 1,600 feet long by approximately 400 feet wide to a

-1-

RECEIVED

APR 1 6 2007

PORT MANATEE

EXHIBIT

A

depth of approximately 40 feet at mean low tide resulting in approximately 1,500,000 cubic yards of dredged materials (the "Anticipated Project"). Depending upon various circumstances existing at the time dredging is to be initiated, the Anticipated Project may be undertaken as one continuous project or in two phases. Phase I would consist of the northerly most 1,000 feet resulting in approximately 1,000,000 cubic yards of dredged materials and Phase II would consist of the remaining distance of approximately 600 feet resulting in approximately 500,000 cubic yards of dredged materials as shown on the drawing attached hereto and made a part hereof as Exhibit "A".

D. The Anticipated Project is subject to Environmental Resource Permit No. 0129291-009-EM as modified by the Florida Department of Environmental Protection (DEP).

E. The Anticipated Project is subject to Permit No. SAJ-1998-1210(IP-MN) issued by the Department of the Army (Corps).

F. The Anticipated Project is subject to prescribed agreements between the Authority and the U.S. Department of the Army (through the Army Corps of Engineers) to the extent that the Anticipated Project is a federal dredging project.

G. Financing for the Anticipated Project is to be provided in part by Florida Department of Transportation Grant (Financial Project No. 41707719401) which imposed certain limitations and restrictions upon the Authority in connection with

-2-

the Anticipated Project.

        H.  The Authority has retained CH2M Hill, Inc. to perform professional consulting engineering services in connection with the portions of this agreement to be performed by the Authority.

     2.  HRK REPRESENTATIONS. HRK represents unto the Authority, with the intent that the Authority rely thereon that:

        A.  HRK owns the real property that was previously the Piney Point Phosphates, Inc. phosphate fertilizer manufacturing complex located adjacent to U.S. Highway 41 easterly of Port Manatee containing a phosphogypsum stack system (the "Stacks").

        B.  The Stacks are subject to an Administrative Agreement between the DEP and HRK in reference to HRK Holdings, LLC, The Former Piney Point Phosphates, Inc. Phosphate Fertilizer Manufacturing Complex, U.S. Highway 41, Manatee County, Florida, OGC No. 06-1685 which imposed certain limitations and restrictions upon HRK in connection with the possession and use of the Stacks.

        C.  HRK is allowed pursuant to said Administrative Agreement to fill or otherwise improve the Stacks, and the dredged materials from the Anticipated Project are acceptable and needed to fill or otherwise improve the Stacks.

        D.  HRK has retained Environmental Consulting and Technology, Inc. to perform professional consulting engineering services in connection with the portions of this agreement to be performed by HRK.

<p align="center">-3-</p>

3. MUTUAL REPRESENTATIONS. The Authority and HRK each represent unto the other party with the intent that both parties may rely thereon that:

A. The professional consulting engineers retained by the parties hereto shall be instructed to cooperate with each other in connection with the design and construction of both portions of the Anticipated Project covered by this agreement to provide the necessary facilities to efficiently perform the engineering related portions of this agreement.

B. The purpose of this agreement is to evidence a transaction wherein HRK grants to the Authority the present right to use the Stacks for the containment of dredged materials and to continue said use for as long as there is capacity in the Stacks for the proper and safe containment of dredged materials without granting the Authority any right, title or interest in and to the real property on which the Stacks are located.

4. RENOVATION OF STACKS. The Stacks shall be converted to hydraulically dredged material containment facilities with a capacity to properly and safely contain approximately 6,500,000 cubic yards of hydraulically dredged materials, including infrastructure for decanting dredged and rain water from the Stacks, the treatment of dredged water and providing for the integrity of these facilities. The design of, the permitting for and the construction of these facilities shall be at no cost or

-4-

expense to the Authority.

5.  CONTAINMENT OF DREDGED MATERIALS.  The Authority shall cause all or a portion of the dredged materials from the Anticipated Project to be hydraulically transported by pipeline to the Stacks.  HRK shall provide capacity for the proper and safe containment in the Stacks of the dredged materials and for the storage and treatment of dredged material and rainwater as necessary to comply with the turbidity requirements imposed by the Dredging ERP Permit.  HRK shall cause any internal design for the containment, storage and treatment to meet or exceed flows of the largest available hydraulic dredges (estimated at 41,000 gallons per minute). Conceptual specifications and drawings relating to these Stacks and these pipelines are attached hereto and made a part hereof as Exhibit "B".

6.  DREDGED MATERIALS OWNERSHIP.  As between the parties hereto, the Authority shall be deemed the owner of the dredged materials until same are properly and safely deposited in the Stacks at which time HRK becomes the owner of said dredged materials.

7.  DREDGED MATERIALS RELATED WATER.  The Authority shall construct, install, operate and maintain a pipeline that connects to HRK's infrastructure designed pursuant to paragraph 4 for the purpose of transporting and discharging of said decanted water and rainfall with the right to use permitted flocculants in accordance

-5-

with the conditions of the Dredging ERP Permit and with the conceptual specifications and drawings attached hereto and made a part hereof as Exhibit "B". As more fully described in Exhibit "B", during the Anticipated Project the Authority shall be responsible for the operation of the decanted water system, including the water clarification/treatment/collection facilities provided by HRK as well as the return water pipeline. Upon completion of the Anticipated Project, this responsibility will be assumed by HRK, which will operate the decanted water system until the conductivity of the treated water is less than 1,275 micromhos per centimeter.

8. PIPELINE EASEMENTS. The Authority shall provide right-of-way within Port Manatee and HRK shall provide right-of-way within the particular real property owned by HRK for pipelines for the transmission of dredged materials and pipelines for the transmission of decanted water and rainfall from the Stacks then in use for the purpose of this Agreement. The Authority shall be responsible for obtaining any easements or other authorizations needed for rights-of-way for said pipelines across and under any real property, railroad tracks or state highway owned by any entity or person other than the parties hereto.

9. AGREEMENT AND PERMIT MODIFICATIONS. The parties shall cooperate with each other in obtaining any necessary amendments to or modifications of the agreements and permits identified in the

-6-

foregoing paragraphs 1C, 1D, 1E, 1F, 1G, 2B and 2C to lawfully
enable the parties hereto to carry out and perform the provisions
of this agreement. Each party shall have the right to participate
in the proceedings for the amendment or modification of any of said
agreements or permits to the extent authorized by law and shall
share communications and documentation in connection therewith. If
said amendment and/or modification are not completed, executed or
issued within six (6) months of the date of this agreement, the
Authority shall have the right to cancel and terminate this
agreement by giving HRK written notice thereof.

10. MUTUAL BENEFIT AND PUBLIC PURPOSE. The parties hereto
recognize that the containment of the dredged materials from the
Anticipated Project is beneficial to the Authority , that the use
of the Stacks is beneficial to HRK and that there will be related
costs and expenditures incurred by the parties hereto in connection
with constructing, installing, operating and maintaining the
required pipelines and the placement and use of the dredged
materials. The performance of this agreement shall be of material
benefit to the DEP, and as a result of said material benefit, the
severance fee for dredging material from sovereignty submerged
lands should be eliminated or waived by the DEP. If the severance
fee is not eliminated or waived within six (6) months of the date
of this agreement, the Authority shall have the right to cancel or
terminate this agreement by giving HRK written notice thereof.

-7-

11.  COMPENSATION FOR ANTICIPATED PROJECT.  The Authority shall pay compensation to HRK for the capacity to properly and safely contain in the Stacks dredged materials and for the actual proper and safe containment of said dredged materials in the following amounts and upon the following events:

A.  $1,000,000 upon the parties receiving all of the approvals and permits and/or all of the amendments or modifications to the agreements and permits identified in paragraph 9 hereof.

B.  $500,000 upon the issuance of a Notice to Proceed by the Authority to the dredging contractor duly selected by the Authority.

C.  $1,000,000 upon the dredging contractor demobilizing upon the completion of Phase I.

D.  Compensation for Phase II of the Anticipated Project would be at the rate of $3.75 per cubic yard, with $937,500 due upon commencement of the disposition of dredged materials in the Stacks and the balance due upon agreement by the parties to the in situ cubic yards for materials actually dredged.

E.  Maintenance dredging and other Authority uses which utilize the Stacks will be at the rate of $3.75 per cubic yard. This rate will remain in full force and effect for a period of seven (7) years from the date of this agreement at which time it will be renegotiated as provided in paragraph 14C hereof.

12.  INSURANCE.

-8-

A. By the Parties. The parties shall mutually obtain and maintain a policy or policies of insurance covering liability arising out of, caused by or in connection with all of the Anticipated Project including, but not limited to, the construction and installation of improvements, the actual dredging, the transportation of dredged materials to the Stacks, the containment of said materials in the Stacks, the decanting of said materials in the Stacks, the removal of rainwater from the Stacks and the transportation of said water away from the Stacks. Said insurance shall also cover liability arising out of, caused by or in connection with any unauthorized or unpermitted migration or spillage of dredged materials or decanted water. Said insurance shall have minimum limits of $2,000,000 for each occurrence and a term that extends for a minimum period of twenty-four (24) months after the last of the dredged materials from the Anticipated Project is deposited in the Stacks. The parties shall both be named as insureds on said policy or policies as their interests may appear, or one party shall be the named insured and the other party shall be an additional insured as its interests may appear. Fifty percent (50%) of the amount of the premium or premiums for said insurance shall be paid by each party.

B. By Contractors. The performance of this agreement for the Anticipated Project requires the construction or installation of improvements including, but not limited to, the

-9-

actual dredging, pipelines and other related equipment and facilities by independent contractors. Each party engaging or retaining any such contractor for any of said improvements shall require said contractor to obtain and maintain a policy or policies of insurance for the amounts, coverages and terms set forth in Insurance Requirements For Port Manatee Berth 12 Dredging Project, Port Manatee - HRK Holdings Pipeline Projects and for the HRK Holdings Phosphogypsum Stack System Improvement Project attached hereto and made a part hereof as Exhibit "C".

C. By the Parties and by Contractors. All policies shall be issued by companies acceptable to both parties and licensed to conduct insurance business in the State of Florida with a favorable rating by A. M. Best Company. Each party shall have the right to obtain from the other party an original or certified copy of any policy issued pursuant to this agreement. Each of said policies shall provide that it is not subject to cancellation, non-renewal, material change or reduction in coverage unless at least thirty (30) days' prior written notice thereof is given to each of the parties.

D. Disclaimer. Nothing herein contained shall be deemed to require any additional or different insurance coverage each of the parties normally carries for the activities, operations and property of the particular party, such as, but not limited to, general liability, vehicle liability, worker's compensation and

-10-

fire and extended coverage for buildings and other structures.

13.  FINANCIAL RESPONSIBILITY.  Recognizing that each party is obligated to the expenditure of a substantial amount of funds in the performance of this agreement, each party shall, from time to time, upon reasonable notice furnish to the other party requested accountings, financial statements and other financial information, not otherwise confidential or exempt from disclosure, to evidence the financial responsibility of the particular party to perform this agreement.  Each party to the extent authorized by law shall not disclose to any other person or entity the contents of any financial document furnished to the other party.  The Authority shall appropriate by budget or by budget amendment funds to meet the compensation requirements of paragraph 11 hereof for each fiscal year of the Authority within which compensation payments are to be made by the Authority.  HRK in performance of paragraph 42 of the Administrative Agreement identified in paragraph 2B hereof established and maintains a line of credit for the benefit of the DEP in the amount of $1,650,000 as interim financial assurance to conduct long-term care and remaining water management activities associated with the Stacks as provided in Section III of said Administrative Agreement.

14.  RESERVATION AND USE OF STACK CAPACITY.

A.  Reservation.  HRK hereby reserves a total  capacity of 6,500,000 cubic yards in the Stacks renovated or to be renovated

pursuant to the provisions of paragraph 4 hereof for the containment of dredged materials from any future dredging operations by the Authority not included as part of the Anticipated Project for as long as there is remaining capacity in the Stacks for the proper and safe containment of dredged materials and hereby grants the Authority the exclusive right to the containment of dredged materials in the Stacks for as long as there is capacity remaining in the Stacks for the proper and safe containment of dredged materials.

B.   Reservation Consideration.   The Authority shall pay HRK as consideration for this right a sum in the amount of $200,000 upon the dredging contractor demobilizing following the completion of the Anticipated Project if the Anticipated Project is undertaken as one continuous project or upon the dredging contractor demobilizing following the completion of Phase I if the Anticipated Project is undertaken in phases.   If the Authority duly exercises this right and causes the dredged materials to be contained in the Stacks pursuant to the amendment or modification of this agreement provided for below, said $200,000 shall be credited in reduction of the amounts due by the Authority to HRK for the containment of said dredged materials.   If the Authority fails to exercise said right and does not cause said dredged materials to be contained in the Stacks, the total amount of said $200,000 shall be retained by HRK to compensate it for the loss of the beneficial use of the Stacks

-12-

during the time period of the reservation and the Authority shall have abandoned, released and waived any and all rights it may have had to said $200,000. If the Authority fails to deposit dredged materials into the Stacks for a period exceeding seven (7) consecutive years, then HRK shall have the right at its sole discretion to terminate this Agreement by written notice to the Authority and the return of the $200,000 reservation consideration.

C. Exercising The Right. The Authority may at any time there is capacity in the Stacks for the proper and safe containment of dredged materials notify HRK of its exercising the right to contain dredged materials in the Stacks by giving written notice to HRK. The parties shall immediately thereafter negotiate in good faith for an applicable amendment to or modification of this agreement nearly as consistent with this agreement as practicable providing for containment of dredged materials in the Stacks. Said amendment or modification shall provide for the compensation to be paid by the Authority to HRK for the containment of dredged materials in the Stacks calculated as an amount per cubic yard for each cubic yard of dredged materials. The amount shall be determined by adjusting $3.75 per cubic yard to reflect the change in the current Consumer Price Index and an amount determined by averaging the Consumer Price Index for the three (3) consecutive years immediately preceding the year in which the Authority exercises its right to contain dredged materials in the Stacks.

-13-

15. FORCE MAJEURE. In the event an act of God or an act of war or terror prevents the performance of this agreement, then and in any one of said events, the parties are released from any and all causes of action, claims or damages arising out of or in connection with said event or events. If any compensation pursuant to paragraph 11 hereof or any consideration pursuant to paragraph 14B hereof has been paid by the Authority to HRK prior to any such event or events, HRK shall reimburse or repay the Authority the total amounts of said compensation or consideration so paid, less an amount equal to the documented capacity used calculated at the rate of $2.50 per cubic yard of capacity used in the prompt performance of this agreement prior to the occurrence of said event or events.

16. AGREEMENT ADMINISTRATION. The Authority hereby authorized the Executive Director of Port Manatee, or his designee, to administer the terms and conditions of this agreement on behalf of the Authority and to make all managerial decisions on behalf of the Authority as they relate to the provisions of this agreement.

17. AUTHORITY TO EXECUTE. Each of the parties hereto covenants to the other party hereto that it has lawful authority to enter into this agreement, that the governing or managing body of each of the parties has approved this agreement and that the governing body or managing body of each of the parties has authorized the execution of this agreement in the manner

-14-

hereinafter set forth.

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Agreement to be executed in duplicate this the _19th_ day of _April_ , 2007.

ATTEST: R. B. SHORE
Clerk of Circuit Court

MANATEE COUNTY PORT AUTHORITY

By: _____
2nd Vice - Chairman
CAROL WHITMORE

AUTHORITY

WITNESSES:

HRK HOLDINGS, LLC

By: _____ GARY KANUT
Title: PRESIDENT

HRK

-15-



PHASE 2 BASE BID
40' REQUIRED DREDGE
PLUS 2 FOOT OVERDREDGE

TOE OF SLOPE

TOP OF SLOPE

PHASE 1 BASE BID

PHASE 2 ADD ALTERNATE
40 FOOT REQUIRED DEPTH
PLUS 2 FOOT ALLOWABLE OVERDREDGE
(SEE INSTRUCTIONS TO BIDDERS)

Exhibit A



Exhibit B
2686 FT
215 FT
166 FT
109 FT
603 FT
194 FT
1413 FT
209 FT
2652 FT
850 FT
1560 FT

Conceptual Specifications
Pipe Sleeve Installations for Dredge Slurry and Return Carrier Pipes
Dredged Material Disposal at Piney Point
April 13, 2007

1. Install 42-inch diameter steel pipe sleeves by bore-and-jack method – one sleeve crossing Reeder Road in the vicinity of South Dock Street, one sleeve crossing South Dock Street, two sleeves crossing each of the CSX railroad, Federal Port Corporation warehouse project entrance and U.S.-41 at South Dock Street.
2. The purpose is to run dredge slurry and return water carrier pipes across the thoroughfares for long periods of time without interference to traffic.
3. Installations are to be in accordance with design and permits further addressed in an engineering proposal prepared by CH2M HILL.
4. These conceptual details are subject to change during the design and permitting process.

Exhibit B

Exhibit "C" To The Port Manatee Dredged
Materials Containment Agreement


INSURANCE REQUIREMENTS FOR THE PORT MANATEE BERTH 12
DREDGING PROJECT, PORT MANATEE - HRK HOLDINGS PIPELINE
PROJECTS AND FOR THE HRK HOLDINGS PHOSPHOGYPSUM STACK
SYSTEM IMPROVEMENT PROJECT.

The MANATEE COUNTY PORT AUTHORITY, a political entity of the
State of Florida, owning and operating Port Manatee and HRK
HOLDINGS, LLC, a Florida limited liability company, are
independently undertaking various construction and improvement
projects in cooperation with each other and have agreed that each
contractor engaged or retained by either of said parties will
require that the particular contractor obtain and maintain a policy
or policies of insurance meeting the following requirements.

General liability insurance include as a minimum coverages for
premises operations, products and completed operations, blanket
contractual liabilities, personal injury liability and expanded
definition of property damage with minimum limits of at least
$1,000,000 Combined Single Limit (CSL), with an occurrence form
policy. Said coverage shall not contain any exclusion for
"Underground, Collapse or Explosion (XCU)".

Pollution liability insurance, where applicable, extending to
all work performed by the contractor pursuant to its particular
construction contract with limits of not less than $3,000,000 for
a period extending twelve (12) months following the completion of
all work governed by the particular construction contract. If any
such contractor pursuant to its particular construction contract is
to perform work on, over or under property controlled or owned by
independent third parties such as the Florida Department of
Transportation or CSX Transportation, Inc., the particular
contractor shall obtain and maintain any and all insurance
coverages required by said third parties which may include, but not
be limited to, Railroad Liability Insurance.

Vehicle liability insurance include as a minimum liability
coverage for owned, non-owned and hired vehicles with the minimum
limits being at least $1,000,000 CSL.

Worker's compensation insurance with limits sufficient to respond to Chapter 440 of the Florida Statutes and employer's liability coverage with limits of not less than $100,000 for bodily injury by accident, $500,000 for bodily injury by disease and $100,000 for bodily injury by disease for each employee.

The Manatee County Port Authority or HRK Holdings, LLC, as the case may be, shall be named as additional insured on each of said policies.

Each of said policies shall contain a Waiver of Subrogation provision in favor of either the Manatee County Port Authority or HRK Holdings, LLC, as the case may be.

All such policies shall be issued by companies acceptable to the Manatee County Port Authority or HRK Holdings, LLC, as the case may be, licensed to conduct insurance business in the State of Florida and enjoying a favorable rating from A. M. Best Company.

Each insurance policy must specify that it is not subject to cancellation, non-renewal, material change or reduction in coverage unless at least thirty (30) days' written notice thereof is given to the Manatee County Port Authority or HRK Holdings, LLC, as the case may be.

A Certificate of Insurance for each of said policies or a certified copy of said policies shall be furnished to the Manatee County Port Authority or HRK Holdings, LLC, as the case may be.

## PORT MANATEE DREDGED MATERIALS
## CONTAINMENT AGREEMENT AMENDMENT

The MANATEE COUNTY PORT AUTHORITY, a political entity of the State of Florida with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida 34221 (the "Authority"), and HRK HOLDINGS, LLC, a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520 ("HRK"), for and in consideration of the mutual covenants herein contained and other good and valuable consideration, amend, modify and supplement that certain Port Manatee Dredged Materials Containment Agreement between the parties hereto dated April 19, 2007, as follows:

1. REPRESENTATIONS.   Paragraph 9 of said agreement provides for the parties cooperating with each other in obtaining all necessary approvals and permits and/or all of the amendments to or modifications of agreements and permits, and paragraph 11A of said agreement provides that the Authority shall pay $1,000,000 to HRK upon the parties receiving all of the approvals and permits and/or all of the amendments or modifications to the agreements and permits identified in said paragraph 9.   Each of the parties represents to the other party, with the intent that the other party rely thereon, that the amendments, approvals and permits obtained to date are set forth in the Port Manatee Dredged Materials

-1-

Containment Agreement Status of Permits & Approvals As Of November 9, 2007 attached hereto and made a part hereof.  Through no direct or deliberate fault of either of the parties hereto, certain of said amendments, approvals or permits have not been obtained and are still pending with completion thereof anticipated within a relatively short period of time.  HRK has and does hereby request that due to said circumstances, the Authority presently pay to HRK $500,000 of said $1,000,000 prescribed for in said paragraph 11A.

2.   AMENDMENT.   Paragraph 11A of said agreement is hereby amended to provide that $500,000 shall be paid by the Authority to HRK immediately hereafter as is practicable and that $500,000 shall be paid by the Authority to HRK upon the parties receiving all of the permits and approvals and/or all of the amendments or modifications to the agreements and permits identified in paragraph 9 of said agreement and as shown on the Port Manatee Dredged Materials Containment Agreement Status of Permits & Approvals As Of November 9, 2007 attached hereto and made a part hereof.

3.   SAVINGS PROVISION.   Except to the extent herein amended, modified or supplemented, said agreement remains in full force and effect.

4. AUTHORITY TO EXECUTE.   Each of the parties hereto covenants to the other party hereto that it has lawful authority to enter into this agreement, that the governing or managing body of each of the parties has approved this agreement and that the governing body

-2-

or managing body of each of the parties has authorized the execution of this agreement in the manner hereinafter set forth.

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Agreement Amendment to be executed in duplicate this the 15th day of November, 2007.

ATTEST: R. B. SHORE                           MANATEE COUNTY PORT AUTHORITY
        Clerk of Circuit Court

By: _____          By: _____
                                                    Chairman

                          AUTHORITY

WITNESSES:                              HRK HOLDINGS, LLC

_____
_____                 By: _____
                                        Title: _____PRESIDENT_____

        STEPHEN J. EHRLING                      HRK
    Notary Public, State of New York
            #01EH6115223
     Qualified in Nassau County
    Commission Expires Sept 7, 2008

                            - 3 -

## PORT MANATEE DREDGE MATERIALS CONTAINMENT
## AGREEMENT AMENDMENT #2

The MANATEE COUNTY PORT AUTHORITY (the "Authority"), a political entity of the State of Florida, with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida   34221, and HRK HOLDINGS, LLC ("HRK"),  a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520, for and in consideration of the mutual covenants herein contained and other good and valuable consideration hereby enter into this Port Manatee Dredge Materials Containment Agreement Amendment #2   ("Amendment #2") and hereby amend, modify and supplement   the   Port   Manatee   Dredged   Materials   Containment   Agreement   ("Original Agreement") between the parties dated April 19, 2007, and the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1")  between the parties dated November 15, 2007, and state as follows:

1.       **REPRESENTATIONS.**   This Amendment #2 shall only amend, modify and supersede subsections A, B, C, and D of paragraph 11 of the Original Agreement, and paragraphs 1 and 2 of Amendment #1. All other provisions and subsections in the Original Agreement and Amendment #1shall remain binding upon the Authority and HRK.

2.       **COMPENSATION FOR ANTICIPATED PROJECT.**  The Authority will pay HRK a sum totaling approximately $3,887,500 as compensation to HRK for the capacity to properly and safely contain in the Stacks dredged materials for the actual proper and safe containment of said dredged materials for Phase I and II of the project.  The total costs for the Phase I portion of the project is $2,500,000.  The total costs for the Phase II portion of the project shall be calculated based upon a fee of $3.75 per yard for each cubic yard dredged, and is currently estimated to costs approximately $1,387,500 (based upon engineer estimates of 370,000 cubic yards).  HRK has agreed to accept installment payments from the Authority for the total compensation for Phase I and II at the timeframes set forth below:

1

A. $1,000,000 upon the parties receiving all of the approvals and permits and/or all of the amendments or modifications to the agreements and permits. The parties acknowledge that this amount has been paid by the Authority to HRK.

B. $500,000 upon the issuance of a Notice to Proceed by the Authority to the dredging contactor duly selected by the Authority.

C. If the contractor is mobilized to perform the dredging as provided for in Phase I and Phase II of the project, the following payments shall be made by the Authority to HRK:

    (1.)    $500,000 to be paid on or before December 31, 2010;

    (2.)    $500,000 to be paid on or before June 30, 2011;

    (3.)    $500,000 to be paid on or before December 31, 2011;

    (4.)    $500,000 to be paid on or before June 30, 2012; and

    (5.)    Any remaining balance, currently estimated at $387,500, shall be paid on or before December 31, 2012.

3.    **CONFLICT.**  In the event of a conflict regarding the provisions set forth in subsections A, B, C and D of paragraph 11 of the Original Agreement and this Amendment #2, this Amendment #2 shall prevail. In the event of a conflict regarding the provisions set forth in paragraphs 1 and 2 of Amendment #1 and this Amendment #2, this Amendment #2 shall prevail.

4.    **SAVINGS PROVISION.**  Except to the extent herein amended, the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, and the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1") between the parties dated November 15, 2007, shall remain binding and in full force and effect.

2

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Amendment #2 to be duly executed in duplicate this the ___24th___ day of ___Aug.___ _____, 2010.

ATTEST:  R. B. SHORE                    MANATEE COUNTY PORT AUTHORITY
         Clerk of Circuit Court

By: _Diane E Vollmer, D___          By: _Larry Bustle_____
Printed: _DIANE E. VOLLMER___           Larry Bustle

                      AUTHORITY

WITNESSES:                          HRK HOLDINGS, LLC.

_____               By: _Jeffrey A. _____
_____                   JEFFREY A. BARATH

STATE OF FLORIDA
COUNTY OF _Manatee_____

    The foregoing instrument was acknowledged before me this the ___23___ day of ___August___ _____, 2010 by _Jeffrey Barath_ as the _____ of _____, a Florida corporation, who is personally known to me or who has produced _FL Drivers Lic_ as identification and who did not take an oath.

                        _____
                        Notary Public

JEANINE ZERIS
MY COMMISSION # DD842729
EXPIRES November 24, 2013
(407) 398-0153   FloridaNotaryService.com

PORT MANATEE DREDGE MATERIALS CONTAINMENT
AGREEMENT AMENDMENT #3

The MANATEE COUNTY PORT AUTHORITY (the "Authority"), a political entity of the State of Florida, with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida  34221, and HRK HOLDINGS, LLC ("HRK"),  a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520, for and in consideration of the mutual covenants herein contained and other good and valuable consideration hereby enter into this Port Manatee Dredge Materials Containment Agreement Amendment #3  ("Amendment #3") and hereby amend, modify and supplement the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1")  between the parties dated November 15, 2007, and the Port Manatee Dredge Materials Containment Agreement Amendment #2 ("Amendment #2") between the parties dated August 24, 2010, and state as follows:

1.      **REPRESENTATIONS**.  This Amendment #3 shall only amend, modify and supersede paragraph 2(C) of Amendment #2. All other provisions, paragraphs and subsections in the Original Agreement, Amendment #1, and Amendment #2 shall remain binding upon the Authority and HRK.

2.      **COMPENSATION FOR ANTICIPATED PROJECT.**  HRK has agreed to accept certain installment payments if the contractor is mobilized to perform the dredging as provided for in Phase I and II of the project.  The parties agree that such installment payments shall be made by the Authority to HRK as follows:

(1.)$500,000 to be paid on or before December 31, 2010, and such payments have been made and received by HRK;

1

(2.) $350,000 to be paid on or before July 1, 2011, in consideration for HRK's agreement to continue progress at the maximum speed practical to make the necessary repairs to the dredge disposal facility located within the Stacks that will allow the Authority's contractor (Great Lakes Dredge and Dock, hereinafter "Great Lakes") to restart and complete the project;

(3.) $150,000 to be paid immediately after all of the following occur: (a) all necessary repairs are made by HRK to the dredge disposal facility located within the Stacks such that the Authority's contractor ("Great Lakes") can restart and complete the project;  (b) written approval is received from the Florida Department of Environmental Protection ("FDEP") to restart the disposal of the dredge spoil at the HRK facility; (c) dredge operations have been restarted by the Authority's contractor (Great Lakes) to the operational levels contracted for by the Authority and Great Lakes;  and (d) after Great Lakes has completed 48 hours of continuous dredging.

(4.) Subject to authorization from the Authority, $500,000 to be paid  after the project has been fully completed and certified by all of the following:  the Authority's contractor (Great Lakes); the Authority's consulting engineers; the Authority's engineer; and, after the U.S. Coast Guard, the Tampa Bay Pilots Association and any other legally required governmental entity has confirmed and certified that the dredging project has been fully completed per the bid specifications and Berth 12 is ready to receive vessels for the class and type for which it was designed.

(5.) $500,000 to be paid on or before June 30, 2012; and

2

(6.) Any remaining balance, currently estimated at $387,500, to be paid on or before December 31, 2012.

3.      **CONFLICT.**   In the event of a conflict regarding the provisions set forth in paragraph 2 (C) of this Amendment #3 and the Original Agreement, this Amendment #3, shall prevail.   In the event of a conflict regarding the provisions set forth in paragraph 2 (C) of this Amendment #3 and the Amendment #1, this Amendment #3 shall prevail. In the event of a conflict regarding the provisions set forth in paragraph 2 (C) of this Amendment #3 and the Amendment #2, this Amendment #3 shall prevail.

4.      **SAVINGS PROVISION.**   Except to the extent herein amended, the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, and the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1") between the parties dated November 15, 2007,  and the Port Manatee Dredged Materials Containment Agreement Amendment #2 ("Amendment #2) between the parties dated August 24, 2010, shall remain binding and in full force and effect.

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Amendment #3 to be duly executed in duplicate this the _30th_ day of _June_ _____, 2011.

ATTEST: R. B. SHORE
           Clerk of Circuit Court

By: _____
Printed: _____

MANATEE COUNTY PORT AUTHORITY

By: _____
     David McDonald, PPM
     Executive Director

3

WITNESSES:                              HRK HOLDINGS, LLC.

_Denise C Stufft_                  By: _Jordan Levy_
_Robert J. Armstz_                      (Jordan Levy)
                                        CEO

STATE OF FLORIDA
COUNTY OF _Manatee_

    The foregoing instrument was acknowledged before me this the _30th_ day of _June_, _____, 2011 by _Jordan H. Levy_, as the _CEO_ of _HRK Holdings, LLC_ a Florida corporation, who is personally known to me or who has produced _NY/DL 636366174_ as identification and who did not take an oath.

                              _Sheila R Neal_
                              Notary Public

SHEILA R. NEAL
Comm# DD0764523
Expires 4/27/2012
Florida Notary Assn., Inc

4