IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER, SUNCOAST WATERKEEPER, MANASOTA-88, *and* OUR CHILDREN'S EARTH FOUNDATION,<br><br>    *Plaintiffs*,<br><br>    *v.*<br><br>GOVERNOR RON DeSANTIS,<br><br>*and* SHAWN HAMILTON, *in his official capacity as* ACTING SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, *and* HRK HOLDINGS, LLC, *and* MANATEE COUNTY PORT AUTHORITY,<br><br>    *Defendants*. | Case No. 8:21-cv-1521-WFJ-CPT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SECRETARY HAMILTON'S MOTION TO STAY, ECF NO. 53** |

    Plaintiffs respectfully submit this Opposition to Defendant Secretary Hamilton's ("FDEP") Motion to Stay, ECF No. 53. Defendant Manatee County Port Authority noticed its "joinder" to FDEP's Motion on January 18, 2022. ECF No. 68. Defendant Governor DeSantis also joins FDEP's Motion. ECF No. 55 at 10.

    A stay of this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*") or the Court's inherent authority is unwarranted and unsupported by the weight of relevant authority. The "State Actions" are not parallel proceedings as required by *Colorado River*, because the

parties and issues are different. Additionally, *Colorado River* stays are inappropriate in citizen suit litigation, as Congress made a deliberate choice to vest exclusive jurisdiction in the federal courts to redress violations of the Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA"). Indeed, Plaintiffs cannot bring such suits in Florida state court, meaning no relief, let alone complete relief, could be afforded in the state forum. Furthermore, FDEP has not shown that relief issued under the CWA or RCRA would be inconsistent with actions taken at the site in the foreclosure lawsuit. The Court should deny FDEP's Motion to Stay ("Mot.").

## MEMORANDUM OF LAW

Pursuant to Local Rule 3.01(a), Plaintiffs present this Memorandum of Law in Support of Plaintiffs' Opposition to FDEP's Motion to Stay.

## ARGUMENT

The Court should not stay this case under either *Colorado River* or the Court's inherent authority. None of the *Colorado River* factors favor staying the case, and the prevailing authority weighs against this Court issuing a stay pursuant to its inherent powers. Issuing a stay at this stage of the proceedings would undermine Plaintiffs' ability to hold Defendants accountable for their violations of federal law.

### I. The State Actions are distinguishable from Plaintiffs' RCRA lawsuit, and the *Colorado River* factors weigh against a stay.

Federal Courts have a "virtually unflagging obligation…to exercise the jurisdiction given them," such as the jurisdiction conferred under the CWA to

address point source discharges and RCRA to abate imminent and substantial endangerments. *Colorado River*, 424 U.S. at 817-18; 42 U.S.C. § 6972(a); 33 U.S.C. § 1365(a). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (quotation omitted). "A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation." *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1328, 95 F. App'x 1320 (11th Cir. 2004). As such, federal courts may abstain to avoid duplicative litigation with state courts only in "exceptional" circumstances. *Colorado River*, 424 U.S. at 818. *Colorado River* abstention is permissible in even fewer circumstances than other abstention doctrines. *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1331.

As a threshold matter, *Colorado River* abstention only applies where the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Id*. at 1330; *see also Beepot v. J.P. Morgan Chase Nat'l Corp. Servs.*, No. 3:10-cv-423-J-34TEM, 2011 U.S. Dist. LEXIS 113124, at *25 (M.D. Fla. Sep. 30, 2011). "Exact identity between parties and issues is not required," but "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Flowers v. Fulton Cty. Sch. Sys.*, 654 F. App'x 396, 399 (11th Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. (Moses H. Cone)*, 460 U.S. 1, 28 (1983)).

3

"Generally, actions will not be substantially similar for purposes of *Colorado River* abstention if they involve different issues with different requisites of proof and seek different remedies." *Pharmaceuticals v. Murphy*, No. 1:04-CV-3817-TWT, 2005 U.S. Dist. LEXIS 57635, at *9 (N.D. Ga. June 1, 2005); *see also Turf Paradise, Inc. v. Ariz. Downs,* 670 F.2d 813, 821 (9th Cir. 1982) (*Colorado River* abstention only applicable "when both the federal and state courts have concurrent jurisdiction over particular claims"). "If the federal and state proceedings are not parallel, then the *Colorado River* doctrine does not apply." *Acosta v. Gustino*, 478 F. App'x 620, 621 (11th Cir. 2012) (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005)).

For instance, where a federal complaint included a civil RICO fraud allegation, and state court proceedings with substantially similar parties did not, the threshold for *Colorado River* abstention was not met. *United Auto. Ins. Co. v. Fla. Wellness & Rehab. Ctr.*, No. 08-20348-CIV-LENARD/GARBER, 2009 U.S. Dist. LEXIS 141145, at *22 (S.D. Fla. Feb. 11, 2009). Similarly, even where two cases share a common nexus of operative facts—the resignation of employees of a school system—if the federal case includes different causes of action and involves different parties, *Colorado River* does not apply. *Flowers*, 654 F. App'x at 399.

Here, no Plaintiff is involved in the state court foreclosure action, which was filed before Plaintiffs served their notice and initiated this lawsuit (although the Receiver was appointed after this case was filed). FDEP seeks to avoid this flaw by arguing the foreclosure action and the Receivership were "brought to vindicate the public interest." Mot. at 5. The foreclosure action, however, was brought to vindicate

4

financial interests, ECF No. 52 at 67-68, not the public interest in abating imminent and substantial endangerments and ending point source discharges. Moreover, Plaintiffs bring this suit *against FDEP* for its failures at Piney Point. *See, e.g.,* ECF No. 50, Second Amended Complaint ("SAC") at ¶¶ 339-40, 352, 366, 373. FDEP can hardly claim a public interest nucleus with Plaintiffs' case when FDEP contributes to the endangerment at Piney Point and discharges pollutants without a permit.

The issues in the two cases are also different. Plaintiffs' lawsuit seeks RCRA-specific and CWA-specific remedies that are not contemplated in the state court action and, indeed, could not be brought in state court. *Compare* SAC at 93-94, *with* ECF No. 52 at 67-68 (Foreclosure action demand for relief). Nothing submitted by FDEP suggests the Receiver is pursuing either RCRA or CWA causes of action or the specific federal remedies available under those statutes. Indeed, the Receiver is not taking any action at the site under those statutes.

Finally, "[w]here a plaintiff's nonfrivolous claim involves the exclusive jurisdiction of federal courts, [a] *Colorado River* stay is not appropriate." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 500 (7th Cir. 2011) (quoting *Madema v. Madema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988)). This is especially true in RCRA and CWA citizen suit enforcement cases, which cannot be brought in Florida state court. *See Adkins*, 644 F.3d at 500 (state court lawsuits brought against same defendant by Indiana environmental regulator did not require *Colorado River* abstention, because suits brought in state court under state law causes of action could not "fully dispose of either of the plaintiff's RCRA claims"). Furthermore, the policy choices made by

5

Congress in authorizing citizen suit litigation demonstrate that the threshold *Colorado River* finding cannot be met. *Id.* at 498 (courts should not abstain under *Colorado River* because policy choices by Congress "plainly contemplate and authorize citizen suits going forward even if a federal or state agency files a later parallel action.");[1] *see also Remington v. Mathson*, No. CV 09-4547 NJV, 2010 U.S. Dist. LEXIS 29187, at *25 (N.D. Cal. Mar. 26, 2010) (citing cases where *Colorado River* abstention found inapplicable to citizen suits in federal court).

Thus, the threshold of *Colorado River* cannot be met, as this case does not involve the same parties, causes of action, or issues as the state court foreclosure action. Plaintiffs seek RCRA- and CWA-specific remedies that cannot be secured in state court, meaning this court *will* have something "further to do in resolving any substantive part of the case." *Flowers*, 654 F. App'x at 399. Finally, "[m]any other courts hearing this issue under RCRA or under the CWA, with its identical statutory language, have declined to abstain under *Colorado River*." *Adkins,* 644 F.3d at 502-03.

If the Court determines that the threshold for *Colorado River* abstention is met, however, then the factors analyzed in the Eleventh Circuit weigh strongly against abstention. "[A] federal court considering abstention must weigh these factors with a heavy bias in favor of exercising jurisdiction[.]" *Transouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998). Plaintiffs address each *Colorado River* factor in turn:

---

[1] The Court in *Adkins* also cited RCRA's legislative history, which states that "the Committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments." *Id*.

6

## (1) Whether one of the courts has assumed jurisdiction over property.

Plaintiffs acknowledge a foreclosure action was filed on November 17, 2020 in Florida State court, stylized as *FORTRESS 2020 LANDCO, LLC v. HRK Holdings, LLC et al*. ECF No. 52, Ex. A. Nothing in that complaint pertains to environmental contamination or the CWA and RCRA, but rather foreclosure of various mortgages, notes, and liens. *See id*. at 67-68 (relief is financial in nature). Plaintiffs further acknowledge that a Receiver was appointed in that proceeding after Plaintiffs' initiation of this lawsuit. Importantly, however, no party is asking this Court to determine *the rights* of the property over which the state court has exercised jurisdiction, namely Piney Point, meaning this factor weighs *against* abstention. *Forehand v. First Alabama Bank*, 727 F.2d 1033, 1035 (11th Cir. 1984) (abstention improper where "the federal and state courts are not both determining rights in property over which one court has first taken jurisdiction" because "[t]he state court has control over the property that was the subject of the bank's security interest, but the federal suit does not purport to determine, as between the bank and [Plaintiff-Appellant], the ownership rights in those goods.").[2]

FDEP fails to explain how "any orders from this Court…will *necessarily conflict*" with orders and actions taken in the state court proceeding. FDEP Mot. at 6. FDEP offers no factual or legal support for its position that any injunctive or

---

[2] FDEP cites *Beepot*, 2011 WL 4529604, at *8 in this section of its brief. But the court in that foreclosure action involved "the same parties, *the same loan*, and the same property." *Id*. (emphasis added). It was not simply that some aspect of the federal case dealt with real property at issue in the state court proceeding.

remedial relief secured by Plaintiffs will "necessarily conflict" with anything that occurs in the state court proceeding. The Receiver has not proposed a final closure or remedial plan for Piney Point. The Receiver's statement filed by FDEP indicates that preparatory work is being completed at the site. *See, e.g.,* ECF No. 52 at 174-75 (Receiver has conducted a site visit, conferred with FDEP about transition issues, and met with FDEP "in connection with formalization of closing strategy"). And nothing in the Receiver's appointment or status report suggests that remedial actions will be taken concerning the widespread groundwater contamination that Plaintiffs seek to redress in this lawsuit, the issuance of a discharge permit under the Clean Water Act, or civil penalties concerning the 2021 Discharge Event and all other unlawful discharges occurring at the site during the last five years.

**(2) The inconvenience of the federal forum.** The federal forum is not inconvenient, as FDEP admits. Mot. at 6.

**(3) The likelihood of piecemeal litigation.** Under this factor, "[r]un of the mill piecemeal litigation will not do: this factor 'does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious.'" *Jackson-Platts v. GE Capital Corp.*, 727 F.3d 1127, 1142 (11th Cir. 2013) (quoting *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1333).[3] Nor does this factor favor abstention when litigation is "inevitably piecemeal." *Id*. (quoting *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525

---

[3] Note that the Court in *Jackson-Platts* switched the third and fourth factors from how they had been identified previously in *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1331.

(11th Cir. 1984)). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Hendricks v. Mortg. Elec. Registration Sys.*, No. 8:12-CV-2801-T-30TGW, 2013 U.S. Dist. LEXIS 44620, at *10 (M.D. Fla. Mar. 28, 2013) (quoting *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011)). This factor has less importance for citizen suits, because "Congress determined, in the context of a RCRA citizen suit, that judicial efficiency simply is not the paramount concern." *Adkins*, 466 F.3d at 501.

     Here, no action related to the Receiver or any *environmental* aspect of Piney Point occurred until after Plaintiffs' filed suit in the federal forum. There can be no "piecemeal litigation" because the tribunal in Florida is considering a foreclosure action, not a RCRA or CWA citizen suit seeking exclusive federal remedies that Plaintiffs could not bring, let alone secure, in state court. Moreover, FDEP does not explain how the Receiver's unspecified and speculative future actions at Piney Point will necessarily result in duplicative efforts or different results, or how this Court's orders are likely to conflict with actions taken by the Receiver. This is unsurprising, because there is no record from which such inconsistencies could be drawn, as a closure plan has not been finalized and is not being fully implemented. Finally, the cases FDEP relies upon deal with competing federal and state actions, all focused on determining the parties' legal rights with regard to property, something that is absent in this litigation. *See Hendricks*, 2013 U.S. Dist. LEXIS 44620, at *11 (third factor favors abstention when state foreclosure action and federal lawsuit both dealt with

same property); *Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760, 763-64 (11th Cir. 2018) ("Baker and Smith filed a suit in federal court seeking to determine the same ownership and licensing issues pending in state court"); *Bayshore TBI, Inc. v. MemberSelect Ins. Co.*, No. 8:19-cv-01281-MSS-AAS, 2019 U.S. Dist. LEXIS 212811, at *15 (M.D. Fla. Dec. 4, 2019) ("Bayshore has filed two lawsuits in two different tribunals that hinge on the same issues: whether an oral contract was made between the Parties and subsequently breached by MemberSelect and MemberSelect's obligation, or lack thereof, to compensate Bayshore on behalf of Harkins.").[4]

**(4) The order in which the courts obtained jurisdiction.** "Under this factor, we ask which forum acquired jurisdiction first. What matters is not so much the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *Jackson-Platts*, 727 F.3d at 1142 (quoting *Transouth Fin.*

---

[4] The other case cited by FDEP is *NRDC v. BP Prods. N. Am., Inc.*, No. 2:08-CV-204 PS, 2009 U.S. Dist. LEXIS 54363 (N.D. Ind. June 26, 2009), which presents a slightly different scenario. There, NRDC brought suit for alleged violations of the Clean Air Act. *Id*. at *1-2. Before filing suit, NRDC and other environmental groups submitted comments to the Indiana Department of Environmental Management protesting defendant's expansion of its operations. *Id*. Some of those groups sought relief through an available administrative challenge. Meanwhile, NRDC filed suit against defendant in federal court. *Id*. at *2-3. After determining that the administrative challenge and federal lawsuit involved substantially similar parties and issues, the court found that the third *Colorado River* abstention factor weighed in favor of abstention, because "the two cases present nearly identical issues," namely whether the facility's expansion required a "minor" or "major" new source permit. *Id*. at *44, 47-48. The court was especially swayed by the fact that "a paragraph-by-paragraph review of the NRDC's complaint and the petition in the [administrative challenge] reveals that even the particular omissions that BP is alleged to have made in each case is nearly the same, if not word-for-word identical." *Id*. at *44. Nonetheless, the court allowed one of Clean Air Act claims, which sought civil penalties, to proceed. *Id*. at *17.

*Corp.*, 149 F.3d at 1295). Where both state and federal cases are at early stages of litigation, this factor weighs against abstention. *Id.*

Here, FDEP ignores that this action predates its lawsuit against HRK and the appointment of a Receiver in the mortgage foreclosure action. Instead, FDEP asserts that the state foreclosure action is "further along" because a Receiver has been appointed, FDEP Mot. at 8, but FDEP presents no information indicating the Receiver has taken any action at Piney Point that would move the facility closer to permanent closure than this litigation. There is no closure plan and the scope of the remedies sought in this litigation are *different* than the work the Receiver has been assigned, including a RCRA-specific corrective action study, the imposition of civil penalties, and an order requiring Defendants to obtain the required CWA permit for discharges. This factor weighs against abstention.

**(5) Whether state or federal law will be applied.** "[T]his factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143. This case does not present complex questions of state law that a state court may be best suited to resolve. *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1334. Indeed, this case presents no question of state law, but is rather a creature of Federal statutes that vest District Courts with exclusive jurisdiction over the environmental claims asserted. Abstention is therefore inappropriate. *Remington*, 2010 U.S. Dist. LEXIS 29187, at *28 (no *Colorado River* abstention where "federal law controls the determination of Plaintiff's federal

11

environmental claims."); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 ("the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction).

FDEP argues Plaintiffs' case merely repackages "state issues" into federal CWA and RCRA claims. FDEP does not articulate how the "state issues" it identifies—funding from the Florida Legislature, enforcement by FDEP, and oversight by the Federal courts—could possibly be "repackaged" as a RCRA imminent and substantial endangerment claim or a CWA unpermitted discharge claim. FDEP Mot. at 8. Furthermore, this factor asks what law *this Court* will be applying, and Plaintiffs are not authorized to bring their federal CWA and RCRA claims in state court. FDEP cites *Coal. for Clean Air v. VWR Int'l, LLC*, 922 F. Supp. 2d 1089, 1111 (E.D. Cal. 2013), but in that case, the parties and claims were identical, and the plaintiff's Clean Air Act claim was based on a state rule that itself was enforceable under state law, which is not the case here. *Id*. at 1111.

**(6) Whether the state court can adequately protect the parties' rights.** "This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1334. Thus, "if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." *R.R. St. & Co.*, 656 F.3d at 981. If both forums are adequate, which they are not in this instance, then this factor is neutral. *Am. Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir.

1990). FDEP does not engage with these principles or cite any precedent on this factor. Indeed, nowhere does FDEP claim that Plaintiffs' rights can be protected by somehow bringing their federal RCRA and CWA causes of action, based on federal statutes vesting federal courts with exclusive jurisdiction, in a state court foreclosure action. Instead, FDEP offers a mere rehashing of its mootness argument, asserting the state action and Receiver will completely close the facility, and that somehow protects Plaintiffs' litigation rights. FDEP Mot. at 9. Plaintiffs appropriately respond to FDEP's mootness argument in their Omnibus Opposition. Because Plaintiffs cannot bring RCRA and CWA claims in state court, this factor weighs *against* abstention.

**(7) The vexatious or reactive nature of either the federal or state litigation.**
In *Moses H. Cone*, the Supreme Court noted that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." 460 U.S. at 18 n. 20. "Abstaining when litigation is reactive or vexatious furthers the important federal policy of prohibiting forum shopping." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999) (citing *Allied Machinery Serv. Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406, 410 (S.D. Fla. 1993)). This factor is implicated when a party's federal lawsuit is an attempt to "avoid adverse rulings by the state court." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989). For instance, where plaintiffs engaged in years of unsuccessful litigation in state courts concerning an ordinance's constitutionality, and then later brought suit in federal court making similar arguments that had been rejected by state

tribunals, the federal litigation was "reactive" and a form of impermissible forum shopping. *Redner v. Tampa*, 723 F. Supp. 1448, 1449-50, 1454 (M.D. Fla. 1989).

FDEP again does not cite any precedent concerning this factor. FDEP Mot. at 9. Instead, it speculatively argues, without any evidentiary support, that Plaintiffs federal litigation is "reactive" to the Florida Legislature appointing funding for the closure of Piney Point. *Id*. But the "reactive" element is meant to examine whether Plaintiffs filed this case because of adverse rulings in a parallel state court proceeding. Here, there is no parallel state court proceeding, because Plaintiffs cannot file suit in Florida state court under 42 U.S.C. § 6972(a) or 33 U.S.C. § 1365(a). This factor does not favor abstention and, indeed, is entirely inapplicable.

**II.     The Court should not stay this case pursuant to its inherent powers.**

Plaintiffs respectfully submit the Court should not stay this case pursuant to its inherent powers. District courts are empowered to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party seeking a stay must "make out a clear case of hardship or inequity in going forward. . .if there is even a fair possibility that the stay will work damage to someone else." *Id.* at 255; *see also Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *Hughes v. Polar Corp.*, No. 5:16-CV-72-CAR, 2017 U.S. Dist. LEXIS 84669, at *3 (M.D. Ga. 2017) (party seeking a stay must make out a clear case of hardship or inequity in being required to go forward); *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (proponent of stay "bears the burden of establishing its need").

14

This power "must not be exercised lightly." *Home Ins. Co. v. Coastal Lumber Co.*, 575 F. Supp. 1081, 1083 (N.D. Ga. 1983). In making its determination, the Court may consider the prudential advantages of a stay, "but must also examine the relative prejudice and hardship worked on each party if a stay is or is not granted." *Dise v. Express Marine, Inc.*, No. 08-0127-WS-C, 2008 U.S. Dist. LEXIS 40443, at *9 (S.D. Ala. May 19, 2008). Additionally, when exercising its discretion to stay a case pending the resolution of related proceedings in another forum, the district court's stay must not be "immoderate." *Trujillo v. Conover & Co. Communs., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). In considering whether a stay is "immoderate," courts examine the scope of the stay (including its potential duration) and the reasons cited for justifying the stay in the first place. *Id*.

The Court should also consider FDEP's request within the context of the environmental statutes under which Plaintiffs bring their claims. In passing RCRA, "Congress [] *specified* the conditions under which the pendency of other proceedings bars suit under RCRA." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (emphasis in original). Congressional intent is that RCRA endangerment suits are only barred when formal proceedings in state or federal court under specific statutes have been filed by environmental regulators. *Id*.; 42 U.S.C. § 6972(b)(2)(B), (C) (specifying statutory and administrative actions that bar endangerment suits); 33 U.S.C. § 1365(b) (similar provision for CWA). A stay of Plaintiffs' lawsuit "would subordinate [this] citizen's suit to the progress of a [] proceeding in which plaintiff has no role[,]" and presents an "end run" around RCRA, because refusing "to

abstain [under *Colorado River*] out of deference to Congressional intent on the one hand, but then to grant the exact same relief as a case management tool on the other, strikes this court as a sleight-of-hand that would just as surely defeat Congress's purpose in authorizing citizen's suits." *Dmj Assocs. v. Capasso*, 228 F. Supp. 2d 223, 231 (E.D.N.Y. 2002). This is because federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817.

      Here, FDEP's proposed "six-month" stay is nothing more than an immoderate, indefinite stay in disguise. At the end of six months, FDEP will assuredly ask the Court to continue its stay on the same basis as before: the unsupported assertion that the "State Actions" will somehow provide all the relief Plaintiffs seek in this federal case. *See* FDEP Mot. at 11 (arguing a stay is not prejudicial because FDEP is working to "abate any environmental danger in state court"). Importantly, there is no "end date" on the "State Actions," the Receiver's work, or a final date by which the endangerment at Piney Point would theoretically be abated by a non-RCRA closure. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

      As argued herein, the "State Actions" and the Receiver's order do not encompass the relief sought in this case: a RCRA corrective action study that results in a closure plan that is compliant with RCRA and abates the endangerment, including the widespread groundwater contamination that is left unaddressed in the

state proceedings; an order requiring Defendants HRK Holdings, LLC and FDEP to cease all discharges unless and until they obtain a lawful NPDES permit for their operation of Piney Point; and the imposition of civil penalties for all unlawful discharges taking place during the last five years. In this Circuit, a state court action that does not resolve the issues pending in the federal litigation is inappropriate for a discretionary stay. *See Am. Mfrs. Mut. Ins. Co.*, 743 F.2d at 1524-25; *see also, e.g., Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC,* 141 F. Supp. 3d 428, 449–54 (M.D.N.C. 2015) (stay of CWA unpermitted discharge case pending state court proceedings on proposed NPDES permit unwarranted, where alleged CWA violations persist, and a stay "has the potential to substantially harm the environment and the individuals who live near" the polluting facility "and draw their daily supply of water from allegedly contaminated wells"). A discretionary stay interferes with Plaintiffs' "right to have [their] case resolved without undue delay." *Id*. at 452 (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 128 (4th Cir. 1983).

      FDEP argues that because this case is in an early posture, a stay is favored. FDEP Mot. at 10. Here, the Court has issued its Case Management and Scheduling Order, ECF No. 41, and the parties have a trial date on June 5, 2023. Plaintiffs anticipate significant discovery occurring promptly upon resolution of the Defendants' Motions to Dismiss, as initial expert reports are due September 2, 2022. *Id*. This is expected to include site investigations and a robust sampling effort. At best, this factor is neutral in evaluating whether a stay should occur; however, when

contrasted against Congressional intent in authorizing citizen suits in the face of state proceedings, this factor weighs against a stay.

FDEP next posits that unspecified "developments" in the State Actions will dispose of "key issues…regarding the existence or propriety of jurisdiction." FDEP Mot. at 11. This is a telling admission, for FDEP apparently acknowledges that its mootness and diligent prosecution arguments are not meritorious at present. In any event, FDEP proffers no specific developments that would moot this case, and certainly no *timeframe* by which those developments are expected to occur. The cases cited by FDEP in this section mitigate against a stay. *N. Fork Rancheria v. California*, 2016 U.S. Dist. LEXIS 105825, at *25 (E.D. Cal. Aug. 9, 2016) (court declined stay where state actions in very early stages and "finality is not in sight"); *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1200 (11th Cir. 2009) (dismissing appeal where stay was not a final appealable order pursuant to 28 U.S.C. § 1291; stay involved two federal lawsuits, not a parallel state proceeding).

FDEP asserts that a stay will not cause discovery "to disappear or become unduly difficult to obtain," Mot. at 10, but such an argument is pure speculation in the absence of a formalized closure plan for Piney Point. For instance, Defendants intend to inject all of the process wastewater at Piney Point via deepwell injection. Will that process be complete by the time FDEP's six-month stay concludes? If not, will FDEP ask for another six months? What impact will removal of the wastewater have on the integrity of the impoundments and any hazardous waste leachate located beneath the liners? Delay of this case could be especially prejudicial to Plaintiffs'

planned Rule 34 inspection and sampling of the site, as changes instituted during a six-month stay at Piney Point could cause discoverable material such as hazardous wastes to be unreachable or untestable.

FDEP seemingly claims that defending this case presents a "clear case of hardship or inequity" under *Landis*. FDEP Mot. at 11 (citing ECF No. 39 regarding Plaintiffs' proposed areas of discovery). But being required to defend a lawsuit, without more, is not a clear case of hardship or inequity. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255). Additionally, FDEP publicly admitted that Piney Point presents an imminent and substantial endangerment. SAC ¶ 350. Plaintiffs are ready to dispense with discovery and proceed directly to determining a suitable remedy at Piney Point under RCRA and the CWA, if FDEP and the other Defendants would so stipulate. Finally, FDEP claims that allowing the case to proceed would require the involvement of FDEP's staff and lawyers and thereby delay closure of Piney Point. Mot. at 11-12. This statement is inconsistent with FDEP's arguments in its Motion to Dismiss that it is not an operator of Piney Point or its point sources. *See, e.g.,* ECF No. 51 at 36 (arguing FDEP is essentially "hands off" and not an operator of Piney Point). A discretionary state pursuant to the Court's inherent powers is thus unwarranted.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court deny FDEP's Motion to Stay.

Respectfully Submitted this 21st Day of January, 2022.

/s/ Daniel C. Snyder
Daniel C. Snyder, *pro hac vice*
Charles M. Tebbutt
B. Parker Jones
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
Fax: (541)344-3516
dan@tebbuttlaw.com
charlie@tebbuttlaw.com
parker@tebbuttlaw.com

/s/ Jaclyn Lopez
Jaclyn Lopez, Florida Bar No. 96445
Center for Biological Diversity
PO Box 2155
St. Petersburg, FL 33731
Tel: (727) 490-9190
jlopez@biologicaldiversity.org

/s/ Justin Bloom
Justin Bloom, Florida Bar No. 89109
PO Box 1028
Sarasota, FL 34230
Tel: (941) 275-2922
bloomesq1@gmail.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022, I presented the foregoing document to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties and their counsel of record in this case.

/s/ Daniel C. Snyder
Daniel C. Snyder, *pro hac vice*
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
Fax: (541)344-3516
dan@tebbuttlaw.com