# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER, SUNCOAST WATERKEEPER, MANASOTA-88, *and* OUR CHILDREN'S EARTH FOUNDATION,<br><br>      *Plaintiffs*,<br><br>      *v.*<br><br>GOVERNOR RON DeSANTIS,<br><br>*and* SHAWN HAMILTON, *in his official capacity as* ACTING SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, *and* HRK HOLDINGS, LLC, *and* MANATEE COUNTY PORT AUTHORITY,<br><br>      *Defendants*. | Case No. 8:21-cv-1521<br><br>**EXHIBIT 7 TO PLAINTIFFS' RESPONSE AND CROSS-MOTION FOR JUDICIAL NOTICE** |



**DEPARTMENT OF THE ARMY**
JACKSONVILLE DISTRICT CORPS OF ENGINEERS
P.O. BOX 4970
JACKSONVILLE, FLORIDA 32232-0019

REPLY TO
ATTENTION OF

NOV 16 2009

Planning Division
Plan Formulation Branch

David L. McDonald
Executive Director Port Manatee
300 Tampa Bay Way, Suite 1
Palmetto, Florida 34211-6608

Dear Mr. McDonald:

    This letter serves to follow up our telephone conversation of 10 November 2009, in which I informed you that the position of the Jacksonville District is that we do not endorse the use of Piney Point as the dredged material disposal site for Phase III of the Manatee Harbor Navigation Project. During that conversation, I agreed to provide you with documentation describing the rationale for our position.

    The National Economic Development (NED) plan, as it appears in the latest draft General Reevaluation Report (GRR), uses an offshore disposal site combined with expansion of an existing upland disposal site as the least cost and environmentally acceptable disposal alternative. Updated and detailed Micro-Computer Aided Cost Estimating System (MCACES) cost estimates for the offshore plan and the Piney Point plan have been completed, and the NED plan remains the combined offshore and expanded upland alternative. At your request, the upland disposal site known as Piney Point has been evaluated for consideration as a Locally Preferred Plan (LPP). The Piney Point site currently contains substances that are characterized as hazardous by the 2007 CERCLA Priority of Hazardous Substances, as well as the Department of Health and Human Services Agency for Toxic Substances and Disease Registry. It is these hazardous substances contained within the phosphogypsum stacks which justify the applicability of Engineer Regulation (ER) 1165-2-132, which directs the Corps to seek to avoid use of sites where hazardous substances are known to exist. (We note that while these substances are commonly found at CERCLA sites, the Piney Point site is not a hazardous waste site as defined by CERCLA.) Our consideration of the Piney Point site is based on four considerations discussed below:

- Environmental Consequences
- Engineering Risks
- Liability
- Planning Aspects



EXHIBIT #15

**Environmental Consequences:**

Despite legal and semantic arguments that the phosphogypsum in and of itself is not considered a hazardous waste, it does contain specific residual impurities. At Piney Point, 43 million tons of phosphogypsum are stored on approximately 478 acres. The Piney Point site previously stored millions of gallons of highly acidic process water resulting from phosphate processing. Although almost all of this water has been removed, and much has been buffered by captured rain or other sources of fresh water, some acidic pore water remains. Impurities in the phosphogypsum, which may become soluble due to the remaining pore water and thereby mobilized include arsenic, cadmium, chromium, lead, barium, as well as radium 226 and 228. All of these contaminants are listed as hazardous substances by the EPA. Discharge of these substances into the environment through any structural or operational failure would result in an unacceptable environmental hazard.

**Engineering Risks:**

Structural, geotechnical and materials analyses were completed to establish the level of suitability of the stacked gypsum facility to receive and contain the dredged materials. Closure of the phosphogysum production facilities (stacks, ponds, collection systems) was designed and constructed by Ardaman and Associates, Inc., a private consulting firm. Ardaman was also retained by the current owners of record of the facility, HRK Industries to prepare an engineering Technical Certification. Due to the nature of the project, a risk assessment was also required. At the sponsor's request, a written scope for the risk assessment was provided by the Jacksonville District in advance of its preparation. Other requirements included the provision of additional piezometers, a written operations manual and contingency plan in the event of any containment breach. Review of Ardaman's Technical Certification by Jacksonville District concluded that the site currently meets recognized geotechnical design criteria for use as a dredged material disposal facility.

The risk assessment prepared by Environmental Consulting and Technology, Inc. was provided by the local sponsor, Port Manatee, on July 29, 2009 and reviewed by the Jacksonville District, the Agency Technical Review (ATR) team and the USACE Environmental and Munitions Center of Expertise (EM-CX) in Omaha. The risk assessment concluded that the Piney Point site has a low probability of failure. However, the risk assessment document, at its current level of development, does not meet the requirements of the scope of work which had been provided to Port Manatee and does not provide sufficient information to adequately assess the risks associated with the use of the Piney Point site for disposal of dredged material. Specifically, the risk assessment did not identify all potential failure modes, did not fully address the five failure modes identified, did not address the type and extent of the breach expected with each failure mode, contained no discussion of the consequences of a breach, and failed to present conclusions summarizing the risks associated with the use of the Piney Point Site for disposal of dredged material. Consequently, definitive engineering conclusions or recommendations regarding the risk assessment cannot be made.

**Liability:**

The site has a history of ownership issues. The last private owner, Mulberry, abandoned the site following their filing for bankruptcy. The site was left with uncontained hazardous materials restrained by unstable phosphogypsum stacks. The Florida Department of Environmental Protection (FDEP) took possession of the property and has nearly completed closure of the facility. The property was purchased by HRK Industries in March of 2006 from FDEP, and they are the current owner of record.

The Piney Point disposal site is now privately owned by HRK Industries. HRK has entered into a legal agreement with Port Manatee to allow dredged material placement in the reservoir contained by the phosphogypsum stacks. They will be assessing a tipping fee as compensation for the placement of the dredged material. Port Manatee awarded a contract to a construction company to build the necessary pipes that will transfer dredged materials from barges to the site and will discharge the return seawater once the dredged solids have settled out (after several months).

Liability concerns are as follows:

1. A significant percentage of the dredged O&M material is not suitable for offshore disposal; therefore it would be placed in Piney Point. Once Federal material is placed in Piney Point, the USACE will become a potential responsible party under current CERCLA law.

2. Any possible "agreements" between HRK, Industries/sponsor with the USACE do not preclude lawsuits from environmental groups, landowners or other parties. Also, it is quite possible for HRK to declare bankruptcy similar to the original owners of the site.

**Planning Aspects:**

It is USACE policy to avoid use of sites that contain hazardous substances. The regulations go so far as to state that alternatives that are more expensive should be formulated in an attempt to avoid sites that contain HTRW. The intent of this is to ensure that the USACE effectively avoids environmental risks or any liability issues associated with future remediation, containment, or compensation to injured parties. While the Piney Point site may have a low risk of failure, the consequences could be great. The NED plan presented in the draft report is both of lesser cost and lesser risk. There are no known added benefits to the Federal government for using the proposed Piney Point site. In order to recommend Piney Point as the Locally Preferred Plan, three waivers to national policy would need to be prepared and approved by the ASA (for Civil Works). The first would be for use of a site that contains HTRW, the second would be to recommend a plan different from the NED and the third would be to conduct O&M disposal, which is at 100% Federal cost, using a more expensive disposal site.

3

In summary, the staff assessment of the Piney Point site is as follows:

- The Piney Point site, while remediated, does contain hazardous substances
- The risk of structural failure, while low, does exist
- Consequences of system failure are damaging to the environment and human health due to the potential release of increased levels of hazardous substances
- Use of Piney Point potentially exposes the Federal government to liability in the event of a failure of breach
- An alternative that is both environmentally acceptable and least cost has been identified

Based on this assessment, I do not believe that additional work on the Risk Assessment will result in a Jacksonville District recommendation to waive Corps policy in order to allow use of Piney Point as a disposal site for this project. The primary basis for my conclusion is that use of Piney Point involves an acknowledged risk of environmental contamination, however small, that can be avoided by use of an acceptable alternative disposal site. Our analysis indicates that the combination upland/ocean disposal alternative described in the Draft GRR carries none of the risk or potential liability associated with Piney Point, conforms with existing Corps policy, and is, in fact less expensive.

I realize this decision is not in accordance with your wishes. We stand ready to work with you in an effort to identify additional disposal alternatives, should that be your intent. Alternatively, we can proceed with processing the GRR, as written, supporting the existing NED plan. If you would like additional information, or have further questions, please do not hesitate to call. In the meantime, we will await your feedback as to your preference for next steps.

Sincerely,

Jack Rintoul, P.E., PMP
Deputy District Engineer
for Programs and Project Management


CF: Mr. John Coates, Florida Department of Environmental Protection