IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER, SUNCOAST WATERKEEPER, MANASOTA-88, *and* OUR CHILDREN'S EARTH FOUNDATION,<br><br>    *Plaintiffs*,<br><br>    *v.*<br><br>GOVERNOR RON DeSANTIS,<br><br>*and* SHAWN HAMILTON, *in his official capacity as* SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, *and* HRK HOLDINGS, LLC, *and* MANATEE COUNTY PORT AUTHORITY,<br><br>    *Defendants*. | Case No. 8:21-cv-1521-WFJ-CPT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MANATEE COUNTY PORT AUTHORITY'S MOTION FOR SANCTIONS, ECF NO. 67** |

    Plaintiffs respectfully submit this Opposition to Defendant Manatee County Port Authority's ("MCPA") "Motion for Sanctions Pursuant to Rule 11," ECF No. 67 (the "Motion"). MCPA's Motion is both procedurally and substantively untenable. It is procedurally defective under Fed. R. Civ. P. 11 because it is not the identical motion that MCPA served on Plaintiffs on October 29, 2021. Substantively, the Motion merely rehashes the same unsupported and incorrect legal arguments that MCPA advances in its Motion to Dismiss, ECF No. 56. The record demonstrates that Plaintiffs' Second Amended Complaint, ECF No. 50 ("SAC") is well supported

in law and fact, and comes nowhere near the realm of sanctionable conduct under Rule 11. Simply put, MCPA's disagreement with Plaintiffs' legal arguments does not afford any basis for sanctions. Plaintiffs request that the Court deny the Motion.

## MEMORANDUM OF LAW

Pursuant to Local Rule 3.01(a), Plaintiffs present this Memorandum of Law in Support of Plaintiffs' Opposition to MCPA's Motion for Sanctions.

## BACKGROUND

The background of this case is discussed in the parties' briefing on the pending motions to dismiss. *See, e.g.,* ECF No. 69 at 1-2. The following are the additional facts pertinent to the sanctions motion. On October 29, 2021 MCPA served Plaintiffs with a "Safe Harbor Letter pursuant to Fed. R. Civ. P. 11." Declaration of Daniel C. Snyder, filed herewith ("Snyder Decl."), Exhibit A. That letter included a "DRAFT" motion that MCPA threatened to file pursuant to Rule 11. The "DRAFT" motion threatened Rule 11 sanctions on two grounds: (1) the First Amended Complaint included incorrect factual allegations that (according to the letter) should have been discovered upon reasonable inquiry; and (2) Plaintiffs' RCRA endangerment claim against MCPA is unsupported by existing law. *See id.* Ex. A at ¶¶ 7-12; 13-22.

Shortly thereafter, on November 4, 2021 counsel for Plaintiffs and MCPA conferred by telephone, wherein Plaintiffs' counsel requested that MCPA provide documentation supporting its factual assertions that (1) it has not used Piney Point for disposal of dredged materials since the 2011 disposal; (2) the U.S. Army Corps of Engineers ("Corps") had issued a § 404 Clean Water Act (CWA) permit covering the

disposal of dredged materials at Piney Point; and (3) MCPA's disposal of dredged materials at Piney Point was done "at the direction of a state environmental regulatory agency." Snyder Decl. ¶ 4. Plaintiffs' counsel explained that the allegations in Plaintiffs' complaint were based on public records from various regulatory agencies, and that Plaintiffs had also submitted a Freedom of Information Act request with the Corps concerning the placement of dredged materials at Piney Point. *Id*. at ¶ 5. MCPA's attorneys committed to providing additional documents supporting their factual claims in the Safe Harbor letter and "DRAFT" motion. *Id*. at ¶ 6. On November 9, 2021 Plaintiffs' counsel followed up with MCPA's attorneys to inquire about "the documents we discussed by phone last week." *Id*. at ¶ 7. MCPA's counsel indicated the records were being reviewed and, later that same day, MCPA produced documents it contends supports its factual allegations. *Id*. at Ex. B (November 9, 2021 emails).

 Plaintiffs carefully reviewed the documents provided by MCPA and transmitted a detailed formal response to the Safe Harbor letter on November 18, 2021, which included additional documentation received from the Corps concerning MCPA's activities at Piney Point. *Id*. at ¶ 8 & Ex. C (the "Rule 11 Response Letter"). In that letter, Plaintiffs committed to remove three paragraphs from the First Amended Complaint and modify a fourth paragraph in a Second Amended Complaint. *Id*. at ¶ 8 & Ex. C at 1 (removing allegations that MCPA continued to dispose waste at Piney Point after 2011 and that MCPA was involved in Manatee County's plans to deep-well inject Piney Point wastewater). Plaintiffs noted that the

3

allegations in those paragraphs "were made in good faith based on the evidence available to Plaintiffs at the time of filing, and are not central to Plaintiffs' case in chief or MCPA's liability." *Id*. Plaintiffs sought MCPA's stipulation pursuant to Fed. R. Civ. P. 15(a)(2) to file the SAC. *Id*. All parties stipulated to the filing of the SAC, ECF Nos. 48 & 49, which was filed within the 21-day "safe harbor" established by Rule 11. Fed. R. Civ. P 11(c)(2). The remainder of Plaintiffs' Response Letter explained Plaintiffs' disagreement with the factual and legal assertions in Defendant's "DRAFT" motion, provided additional factual and legal support for Plaintiffs claims beyond those provided in the First Amended Complaint, and invited further communication with Defendant. *See* Snyder Decl. Ex. C.

Following service of Plaintiffs' November 18, 2021 Response, counsel for the parties again conferred telephonically on November 23, 2021. Snyder Decl. ¶ 9. Plaintiffs explained how their remaining allegations were supported by the law, and requested that if MCPA had or found further documentation supporting its arguments, it provide such documentation to Plaintiffs prior to filing a motion for sanctions. *Id.*

Plaintiffs received no further communication or documentation from MCPA concerning its "DRAFT" Rule 11 motion and Safe Harbor letter. *Id*. ¶ 10. Instead, two months later, on January 18, 2022, MCPA filed the instant Motion.

## LEGAL STANDARD

Rule 11 sanctions are warranted if a party files a motion or pleading that: (1) has no reasonable factual basis; (2) has no reasonable chance of success based on the

legal theory used, or that cannot be advanced as a reasonable basis to change existing law; or (3) is filed in bad faith for an improper purpose. Fed. R. Civ. P. 11(b); *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003). In determining whether to impose sanctions, courts first evaluate "whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The objective standard for assessing conduct under Rule 11 is "reasonableness under the circumstances" and "what [it] was reasonable to believe at the time" the pleading was submitted. *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). Sanctions are appropriate when a party exhibits a "deliberate indifference to obvious facts," but not when the party's evidence to support a claim is "merely weak." *Id.* (citation omitted).

Sanctions are not warranted even if a party is ultimately found to have been incorrect in its interpretation of the law, provided that a reasonable inquiry into the law was made. *See Hillsborough County v. A&E Road Oiling Service, Inc.*, 160 F.R.D. 655, 659 (M.D. Fla. 1995) ("In the final analysis, Plaintiff may have been proven wrong, but erroneous interpretation of the law and facts does not warrant Rule 11 sanctions."). "[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *See Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (interpreting earlier version of Rule 11, prior to 1993 amendments).

MCPA carries the "burden of proof as to whether" Plaintiffs violated Rule 11. *McMahan Sec. Co., L.P. v. FB Foods, Inc.*, No. 8:04-cv-1791-T-24TGW, 2006 U.S. Dist. LEXIS 51741, at *5 (M.D. Fla. July 27, 2006) (citation omitted). "All doubts as to whether Rule 11 has been violated should be resolved in favor of the [nonmoving party]." *Great Lakes Reinsurance (UK) PLC v. Blue Sea LLC*, 2006 U.S. Dist. LEXIS 59834, *9 (M.D. Fla. Aug. 24, 2006) (citing *McMahan Sec. Co., L.P.,* 2006 U.S. Dist. LEXIS 51741, 2006 WL 2092643, at *2).

## ARGUMENT

The Court should deny MCPA's Motion for Sanctions because it is procedurally defective under Fed. R. Civ. P. 11 and because Plaintiffs' RCRA cause of action is supported by existing law. Importantly, MCPA's Motion is only brought pursuant to Fed. R. Civ. P. 11(b)(2). Motion at 8 ("Plaintiffs Amended Complaint Against the MCPA is Unsupported by Existing Law.").

### I. The Court should deny MCPA's Motion because it is procedurally defective.

"Rule 11's procedural requirements and limitations are strictly construed." *Schilling v. Playa Del Sol Ass'n*, No. 16-60690-CIV-COOKE/TORRES, 2017 U.S. Dist. LEXIS 53040, at *4 (S.D. Fla. Apr. 5, 2017); *Chex Sys., Inc. v. DP Bureau, LLC*, 2011 U.S. Dist. LEXIS 130392, at *9 (M.D. Fla. Nov. 10, 2011) (same); *Adkins v. Hosp. Auth. of Houston Cnty.*, 2013 U.S. Dist. LEXIS 138685, at *14 (M.D. Ga. Sept. 27, 2013) (same). "Nearly every federal appellate court in the country has held that a Rule 11 motion can be granted only where the movant demonstrates strict

compliance with the safe harbor provision." *Petit Clair v. New Jersey*, No. 2:14-07082 (WJM), 2016 U.S. Dist. LEXIS 51736, at *3 (D.N.J. Apr. 18, 2016) (citing cases).

Rule 11 requires that "*The* motion must be served under Rule 5, but *it* must not be filed or be presented to the court if the challenged...contention...is withdrawn *or appropriately corrected within 21 days after service*." Fed. R. Civ. P. 11(c)(2) (emphasis added). "Thus, the plain language of Rule 11 provides that the movant must file with the court after the expiration of the safe harbor period the motion that was served upon the adversary." *Hyman v. Borack & Assocs., P.A.*, No. 8:12-CV-1088-T-23TGW, 2012 U.S. Dist. LEXIS 183566, at *7 (M.D. Fla. Dec. 14, 2012); *see also Robinson v. Alutiiq-Mele, LLC,* 643 F. Supp. 2d 1342, 1351 (S.D. Fla. 2009) (denying Rule 11 motion where, *inter alia*, motion filed with court not the same motion that was served on non-moving party during safe harbor); *In re Kirk-Murphy Holding, Inc.*, 313 B.R. 918, 921 (N.D. Fla. 2004) (interpreting bankruptcy rule 9011, which is identical to Rule 11) ("sanctions are to be initiated by motion, and served upon the offending party 21 days prior to filing the same sanctions motion with the court.").

Here, MCPA's "DRAFT" motion provided to Plaintiffs with MCPA's Safe Harbor letter materially differs from the Motion for Sanctions filed with the Court. *Compare* Motion (17 numbered paragraphs in length) with Snyder Decl., Ex. A ("DRAFT" motion includes 24 paragraphs). This is because Plaintiffs, in an effort to avoid any need for the Court to address MCPA's motion for sanctions, agreed to amend the specific factual allegations that were identified in the "DRAFT" motion. Rule 11 provides that a motion for sanctions "*must not be filed or be presented to the court*

7

*if the challenged paper, claim*, defense, contention, or denial is withdrawn *or appropriately corrected within 21 days after service* . . . ." Fed. R. Civ. P. 11(c)(2) (emphasis added). Accordingly, if MCPA desired to change the basis for its sanctions motion—*i.e.*, by arguing that sanctions were justified *solely* on the basis of MCPA's disagreement with Plaintiffs' view of the law, and irrespective of *any* alleged factual assertions remaining in Plaintiffs' operative complaint—it was incumbent on MCPA to serve a revised draft motion on Plaintiffs' counsel. That is the only course that would be consistent with both the plain language of the Rule and its patent purpose of avoiding, to the extent possible, the need for courts to expend scarce time and resources on sanctions issues. This alone is sufficient reason to deny the motion.

II. **The Court should deny MCPA's Motion for Sanctions because Plaintiffs' allegations in the SAC are well-supported by existing law and fact.**

The Court should also deny MCPA's Motion because Plaintiffs' allegations in the SAC are well-supported by existing law and fact. MCPA offers six arguments for why Plaintiffs' allegations against it are unsupported and thus sanctionable. But these arguments reflect no more than garden-variety disagreement with Plaintiffs' view of the law. In fact, virtually all of these arguments are also advanced in MCPA's Motion to Dismiss, on the grounds that Plaintiffs have failed to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 56 at 19-31. But a Rule 11 motion is not a vehicle for affording a party yet another bite at the apple on its legal theory. "Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on

the pleadings, a motion for summary judgment, or a trial on the merits." *Bigford v. BESM, Inc.*, No. 12-61215-CIV-WILLIAMS/SELTZER, 2012 U.S. Dist. LEXIS 196166, at *4 (S.D. Fla. Oct. 12, 2012) (quotation omitted); *Boigris v. EWC P&T, LLC*, No. 19-21148-Civ-SCOLA/TORRES, 2020 U.S. Dist. LEXIS 63033, at *6 (S.D. Fla. Feb. 10, 2020) ("a Rule 11 motion is not an avenue to seek judgment on the merits of a case. Instead, its purpose is to determine whether a party or attorney has abused the judicial process.") (citation omitted).

In any case, MCPA comes nowhere near the stringent standard for a Rule 11 violation, as Plaintiffs explain below:

*First*, MCPA claims that Plaintiffs' allegations in the SAC are sanctionable because "the dredged material does not qualify as solid or hazardous waste under RCRA[.]" Motion at ¶ 11; *compare* ECF No. 56 at 21-24 (same). The entire substance of MCPA's argument on this point is: "the dredged materials were placed at Piney Point for the beneficial purpose of providing cover for the exposed liners." Motion at ¶ 11. No evidentiary or other support is cited for this proposition. As Plaintiffs explained in detail in their Rule 11 Response Letter, Snyder Decl. Ex. C, and in Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss, ECF No. 69 at 53, RCRA solid waste is material that is "discarded," meaning "disposed of, thrown away, or abandoned*." See, e.g., Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-0329-GKF-PJC, 2010 U.S. Dist. LEXIS 14941, at *41- 43 (N.D. Okla. Feb. 17, 2010) (poultry

9

litter not solid waste where market existed and farmers sold it).[1] MCPA attaches to its Motion the "DMCA," but does not cite any specific provision of this agreement in its Motion to support this argument. In fact, as Plaintiffs describe in their Rule 11 Response Letter & Omnibus Opposition, the DMCA shows that rather than the dredge materials providing a beneficial use, MCPA had to pay Defendant HRK Holdings, LLC *millions of dollars* to use Piney Point as a landfill. Rule 11 Response Letter at 1-3; ECF No. 69 at 56; ECF No. 67-1 at 8, ¶ 11 (DMCA); *cf Ticonderoga Farms, Inc. v. Cty. of Loudoun*, 242 Va. 170, 175 (1991) (material discarded where fee paid to landowner to accept waste; "it is difficult to conceive a clearer example of 'discarded material.'"). MCPA's rationale for using Piney Point was not for any beneficial purpose concerning the exposed liners, but rather that expansion of MCPA's other disposal site carried "substantially high" costs. Snyder Decl. Ex. C at 2. Indeed, one of the documents MCPA submitted for judicial notice in connection with its Motion to Dismiss indicates that MCPA and HRK predicted that disposal of dredged materials would damage the liner, requiring HRK to first "blanket" the liner with "fine grained material consistently primarily of sanding or otherwise protective materials," *i.e.*, not the dredged materials, but a different material that would protect the liner from the dredged materials. ECF No. 56-9 at 37. Because the disposal of the dredged materials served no beneficial purpose, the material is solid waste under the

---

[1] At this time, Plaintiffs do not contend that the dredged materials were RCRA hazardous waste. Plaintiffs may seek leave to amend in the future if discovery shows the dredged materials contained hazardous pollutants. The exemption at 40 C.F.R. § 261.4(g), however, is inapplicable here, because the dredged materials were not subject to a jurisdictional § 404 CWA permit.

statute, as Plaintiffs allege in the SAC. ECF No. 50 at ¶¶ 324-28; Snyder Decl. Ex. C at 2-3; *see also* Omnibus Opposition, ECF No. 69 at 52 n. 24 (citing Corps manual stating that dredged materials are given no specific exemption under RCRA subtitle D for solid waste). MCPA provides no authority showing that, under these facts, Plaintiffs' assertion that dredged materials are RCRA solid waste is unsupported by existing law, let alone sanctionable under Rule 11.

***Second***, MCPA makes a scattershot argument that the dredged materials do not present an imminent and substantial endangerment under RCRA. Motion at ¶ 12. Within one paragraph, MCPA asserts that: all parties, including the Corps, determined that there was a "*de minimis*" risk with using Piney Point for storage of dredged materials; HRK is actually the owner of the materials pursuant to the DMCA, meaning any endangerment is not MCPA's fault or responsibility; dredged materials were placed on top of the liners as a means of protection; and finally, MCPA was acting at the direction of a state environmental regulator when it made its decision to use Piney Point. *Id.* Plainly absent from MCPA's argument is, again, any evidentiary or legal support cited for these propositions.[2] Nonetheless, Plaintiffs responded to each argument in their Rule 11 Response Letter, and do so again here.

---

[2] MCPA does cite multiple cases for the general proposition that a material being used for a beneficial purpose is not "discarded," but does little to apply that law to the facts at hand. Motion at 11 n. 4. Plaintiffs do not dispute that material put to beneficial reuse may not amount to solid waste under RCRA. Plaintiffs' dispute is that their review of the available documents shows MCPA did not dispose of dredged materials to serve a beneficial purpose, but to get rid of it at a location that was less expensive and more convenient; that MCPA paid HRK millions of dollars to accept its waste belies any "beneficial" purpose.

*De minimis* risk: The SAC makes well-founded allegations that the Corps for years warned MCPA of the dangers of using Piney Point for disposal of its dredged materials. The Corps did not determine there was a "*de minimis*" risk; to the contrary, it repeatedly cautioned Defendants, including MCPA, against using Piney Point. *See, e.g.,* SAC ¶¶ 124-29, 167, 170-73, 324-38, 345-47; Snyder Decl. Ex. C at 3-4; ECF No. 71-7 (November 16, 2009, letter to MCPA from Corps stating that Corps "*did not endorse the use of Piney Point as the dredged material disposal site*," and critiquing risk assessment) (emphasis added); ECF No. 71-8 (April 18, 2011, letter to MCPA stating that Corps opted to avoid Piney Point site because it "involves an acknowledged risk of environmental contamination").[3] Despite these clear admonitions, MCPA nonetheless disposed of the dredged materials at Piney Point, which affords a reasonable basis for a RCRA claim under existing law. 42 U.S.C. § 6972(a)(1)(B) (RCRA endangerment prohibition applies to past generators, past transporters, and those that contributed to the past disposal of solid waste).

HRK is the owner of the waste: RCRA liability attaches to generators and transporters of solid waste, and nothing within the statute suggests that MCPA may insulate itself from liability merely because an agreement it reached with HRK indicates HRK is the "owner" of the dredged materials once they were disposed of

---

[3] These records are attached to Plaintiffs' Response and Cross-Motion for Judicial Notice, ECF No. 71. If the Court denies Plaintiffs' request to take judicial notice of these records in connection with Plaintiffs' Omnibus Opposition, then Plaintiffs request an opportunity to present them in response to this sanctions motion, as it evidences that Plaintiffs undertook a robust factual and legal investigation in advancing the claims in the SAC.

by MCPA at Piney Point. *See* Snyder Decl., Ex. C at 4; ECF No. 69, Omnibus Opposition at 55-56. Plaintiffs requested MCPA provide support for any contrary proposition, and none has been provided. *See* Snyder Decl. ¶¶ 9-10. MCPA misconstrues the SAC when it seemingly claims that the only endangerment is from hazardous waste, as the SAC alleges that solid and hazardous waste present the endangerment. *See, e.g.,* SAC ¶¶ 344-47, 349, 353-59. MCPA's assertion that the dredged materials present no imminent and substantial endangerment is likewise incorrect because the key question is not when the harm will occur, but when the endangerment began. "For instance, buried solid waste may present an endangerment if toxic chemicals from the waste will eventually seep into the water table and be consumed by humans. No harm will result for years, but the endangerment already exists because that harm can result if 'remedial action is not taken' in the interim." *Crandall v. City & County of Denver*, 594 F.3d 1231, 1238 (10th Cir. 2010); *see also Maine People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 279 n. 1 (1st Cir. 2006) ("[I]f there is a reasonable prospect that a carcinogen released into the environment today may cause cancer twenty years hence, the threat is near-term even though the perceived harm will only occur in the distant future"). As Plaintiffs' Rule 11 Response Letter explains, "the Corps specifically warned that disposal of dredged materials at Piney Point could cause a breach in the liner, allowing water to saturate and cause a failure of the gypsum stack, enabling the mixing of large volumes of the two materials and threatening the

risk of catastrophic collapse." Snyder Decl. Ex. C at 4; *see also* ECF No. 69, Omnibus Opposition at 56 (describing how SAC alleges endangerment).

      Dredged materials placed on liners as means of protection: MCPA cites no evidentiary support for this argument in its Motion. In its Motion to Dismiss, MCPA cites two exhibits it seeks to have judicially noticed, ECF No. 56 at 23, but as Plaintiffs explain in their Omnibus Opposition, a different and later exhibit submitted by MCPA, the "Operation and Maintenance Plan for the Placement of Dredged Materials at the Piney Point Florida Site," ECF No. 56-9 (dated September 23, 2010), states that a layer of sand or other fine-textured material would need to *first* be put on the liners before disposing the dredged materials, such that the liners are protected from shells and other material in the dredged materials. ECF No. 69 at 54; ECF No. 56-9 at 14. At best, there is a genuine dispute of material fact concerning this matter, but hardly a fabrication or deliberate indifference that would give rise to Rule 11 sanctions. *See Davis*, 906 F.2d at 538 ("As we see it, Rule 11 is intended to deter claims with no factual or legal basis at all...").

      MCPA acting at the direction of a state environmental regulator: Again, MCPA submits no case law or evidentiary support with the Motion for its position that it "cannot be liable under RCRA where it acted pursuant to the direction of the state environmental regulatory agency[.]" Motion at 12. Plaintiffs requested that MCPA provide documentation that it acted at the direction of FDEP, and nothing specifically on-point was provided. *See* Snyder Decl. ¶¶ 4, 9-10.

14

*Third*, again reiterating its position in the Motion to Dismiss, MCPA asserts that Plaintiffs should be sanctioned under Rule 11 because their RCRA endangerment claim seeks an extension of RCRA "to a situation that is expressly regulated under section 404 of the Clean Water Act" and thus "prohibited under RCRA's anti-duplication provision." Motion at ¶ 13. As an initial matter, anti-duplication under 42 U.S.C. § 6905 is not a flat prohibition; the statute states that RCRA "shall not be construed to apply to...any activity or substance which is subject to the [CWA]... except to the extent that such application (or regulation) is *not inconsistent* with the requirements of [the CWA]." 42 U.S.C. § 6905(a) (emphasis added). MCPA offers no explanation for how applying RCRA's endangerment prohibition to its disposal of waste at Piney Point is "inconsistent" with the CWA. *See Tenn. Riverkeeper, Inc. v. 3M Co.*, 234 F. Supp. 3d 1153, 1160-61 (N.D. Ala. 2017) (anti-duplication requires "direct conflict" between RCRA and CWA; "RCRA mandates that are just different, or even greater" not necessarily "inconsistent") (quoting *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 509-10 (4th Cir. 2015)). More problematic for MCPA, however, is that the Corps disavowed that MCPA's disposal at Piney Point was jurisdictional under the CWA, *in correspondences exchanged directly with MCPA* that Plaintiffs highlighted in their Rule 11 Response Letter, and which Defendant chose not to disclose to the Court or address in either its Motion to Dismiss or in the instant Motion. *See* ECF No. 71-6 (April 17, 2009, letter) (Piney Point "was not jurisdictional under Section 404 of the Clean Water Act."); *id*. (September 4, 2008, Memorandum For Record at 2) ("The Piney Point

site has no wetland impacts and did not really need a Regulatory modification to the original COE permit but, since the Port wanted documentation, the modification letter was sent."). Because Piney Point is not within the jurisdictional limits of MCPA's § 404 permit, the disposal of dredged materials is not the subject of a CWA permit for purposes of anti-duplication. Given the weight of the legal and evidentiary support, Plaintiffs' allegations in the SAC cannot amount to sanctionable conduct.

*Fourth*, MCPA asserts that the dredged materials are "not a solid or hazardous waste," such that "it did not remove the phosphogypsum and process water's exempt status pursuant to 40 C.F.R. 261.4(b)(7)(ii)(D) and 261.4(b)(7)(ii)(P)." Motion at ¶ 14. Again, in the Motion, MCPA offers no evidentiary or legal support for this argument, which is also advanced in MCPA's Motion to Dismiss. ECF No. 56 at 24. As Plaintiffs explained in their Rule 11 Response Letter:

> This argument directly hinges upon the merits of MCPA's claim that its dredged material was not a solid waste. For the reasons described herein, MCPA's claim on this point is wrong: MCPA desired to use Piney Point to dispose of its solid waste so that it could use the existing DMMA for future cargo storage; it paid HRK Holdings, LLC millions of dollars to use Piney Point as a landfill for that waste; and arguments about the dredged material serving some beneficial purpose at Piney Point are without support and are directly contradicted by MCPA's stated intentions to the Corps and the Corps' repeated and ignored warnings that the dredge material actually presented an unreasonable risk to the liner and phosphogypsum stack integrity rather than a benefit. To the extent the Parties have a disagreement about the interpretation of these facts, or the application of law, those are matters that should be resolved through motions for summary judgment, not improperly wielded as the basis for a threatened motion for sanctions.

Snyder Decl. Ex. C at 5. That explanation is equally applicable today as it was two months ago, when MCPA initially threatened Plaintiffs with sanctions.

*Fifth*, MCPA argues that Plaintiffs' requested injunctive relief is not available against MCPA. Motion at ¶ 15. This is a rote rehash of MCPA's redressability argument on standing. ECF No. 56 at 13. As Plaintiffs' Omnibus Opposition explains, courts have rejected the argument that MCPA advances. ECF No. 69 at 14-15; *United States v. Price*, 523 F. Supp. 1055, 1072-73 (D.N.J. 1981) (party that sold contaminated property years before case initiated was a proper RCRA defendant "because the actions and inaction" of that defendant "are the primary cause of the hazardous situation"); *Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 784 (N.D. Cal. 2020) (redressability prong satisfied even though defendant was not owner of the contaminated site).

*Sixth* and finally, MCPA asserts without support that Plaintiffs are challenging the siting and permitting of a hazardous waste treatment, storage, or disposal facility, which MCPA alleges is improper under 42 U.S.C. § 6972(b)(2)(D). Motion at ¶ 16. MCPA's apparent basis for this argument is that FDEP designated Piney Point as a facility to "depose [sic] of the dredged materials." *Id*. But as Plaintiffs explain in their Omnibus Opposition and Rule 11 Response Letter, this provision of RCRA is inapplicable because Piney Point has never been considered a hazardous waste facility, and any certifications by FDEP were not made under RCRA. ECF No. 69 at 57; Snyder Decl. Ex. C at 6. MCPA does not explain how its own re-interpretation of Plaintiffs' RCRA endangerment claim as a RCRA § 7002(b)(2)(D) claim should result in Plaintiffs being sanctioned under Rule 11.

In sum, MCPA's claim that Plaintiffs did not investigate their claims or the law before filing the SAC is baseless. Motion at ¶ 17. The record shows that Plaintiffs quickly conferred with MCPA about its Safe Harbor letter and "DRAFT" Rule 11 motion; timely addressed what MCPA claimed were factual problems by removing allegations in the SAC; and provided an extensive well-supported response letter with supporting documents to MCPA responding to the arguments in MCPA's "DRAFT" Rule 11 motion. Notably, Plaintiffs' Rule 11 Response Letter spotlighted correspondence between the Corps and MCPA that raises serious questions about MCPA's positions that the disposal of dredged materials was subject to a § 404 permit and that the Corps determined there was merely a *de minimis* risk from MCPA's disposal of dredged materials at Piney Point. Snyder Decl. Ex. C at 4-5. That the arguments MCPA advanced in its Motion to Dismiss mirror those in its Motion for Sanctions, which Plaintiffs already addressed without MCPA's rebuttal, Snyder Decl. Ex. C, show that Plaintiffs have not "abused the judicial process," but rather raised good faith legal claims based on the record Plaintiffs had at the time and on existing law. *Friends of Warm Mineral Springs v. McCarthy*, No. 8:13-cv-3236-T-23TGW, 2015 U.S. Dist. LEXIS 98381, *5 (M.D. Fla. July 28, 2015) (holding while plaintiff's CWA argument was "ultimately unsuccessful, [it] was neither unreasonable nor groundless" and therefore did not warrant Rule 11 sanctions). There is nothing in the course of Plaintiffs' conduct that warrants any sanctions against them.

//

## **CONCLUSION**

For the reasons stated herein, MCPA's disagreement with Plaintiffs about the law does not afford any basis for sanctions. Plaintiffs therefore respectfully request that the Court deny the motion.

Respectfully Submitted this 1st Day of February, 2022.

/s/ Daniel C. Snyder
Daniel C. Snyder, *pro hac vice*
Charles M. Tebbutt
B. Parker Jones
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
Fax: (541)344-3516
dan@tebbuttlaw.com
charlie@tebbuttlaw.com
parker@tebbuttlaw.com

/s/ Jaclyn Lopez
Jaclyn Lopez, Florida Bar No. 96445
Center for Biological Diversity
PO Box 2155
St. Petersburg, FL 33731
Tel: (727) 490-9190
jlopez@biologicaldiversity.org

/s/ Justin Bloom
Justin Bloom, Florida Bar No. 89109
PO Box 1028
Sarasota, FL 34230
Tel: (941) 275-2922
bloomesq1@gmail.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2022, I presented the foregoing document to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all parties and their counsel of record in this case.

/s/ Daniel C. Snyder
Daniel C. Snyder, *pro hac vice*
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
Fax: (541)344-3516
dan@tebbuttlaw.com
