## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CENTER FOR BIOLOGICAL
DIVERSITY, TAMPA BAY
WATERKEEPER, SUNCOAST
WATERKEEPER, MANASOTA-88, *and*
OUR CHILDREN'S EARTH
FOUNDATION,

     *Plaintiffs,*

     *v.*

GOVERNOR RON DeSANTIS,

*and* SHAWN HAMILTON, *in his official
capacity as* SECRETARY, FLORIDA
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
*and* HRK HOLDINGS, LLC, *and*
MANATEE COUNTY PORT
AUTHORITY,

     *Defendants.*

Case No. 8:21-cv-1521-WFJ-CPT

**EXHIBIT A**

*TO*

**DECLARATION OF DANIEL C. SNYDER
IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT MANATEE
COUNTY PORT AUTHORITY'S MOTION
FOR SANCTIONS, ECF NO. 67**



Attorneys at Law
llw-law.com

Kevin S. Hennessy, Esq.
Nicole J. Poot, Esq.
khennessy@llw-law.com
npoot@llw-law.com

*Reply To:  St. Petersburg*

October 29, 2021

**_Via E-Mail Only to:_**

Charles M. Tebbutt, Esq.
Daniel C. Snyder, Esq.
B. Parker Jones, Esq.
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, OR 97401
charlie@tebbuttlaw.com
dan@tebbuttlaw.com

Justin Bloom, Esq.
P.O. Box 1028
Sarasota, FL 34230
Bloomesq1@gmail.com

Jaclyn Lopez
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Jlopez@biologicaldiversity.org

RE:   **Safe Harbor Letter pursuant to Fed. R. Civ. P. 11**
**Center for Biological Diversity, et. al. v. Manatee County Port Authority**
**United States Middle District Civil Action No. 8:21-cv-01521-WFJ-CPT**

Dear Counsel,

As you are aware, this firm has the pleasure of representing the Manatee County Port Authority (the "Port") in the above referenced matter.   Please consider this your twenty-one (21) day "safe harbor" letter pursuant to Federal Rule of Civil Procedure 11 to withdraw your Amended Complaint as against MCPA in the above referenced matter. Attached as Exhibit A to this letter is a Motion for Sanctions under Federal Law that the MCPA will file with the Court unless you withdraw the Amended Complaint as against MCPA or dismiss the case with respect to MCPA with prejudice.

01560761-1

**JACKSONVILLE**
245 Riverside Ave., Suite 510
Jacksonville, Florida 32202
T: 904.353.6410
F: 904.353.7619

**ST. PETERSBURG**
100 Second Ave., South
Suite 501-S
St. Petersburg, Florida 33701
T: 727.245.0820
F: 727.290.4057

**TALLAHASSEE**
315 South Calhoun St., Suite 830
Tallahassee, Florida 32301
T: 850.222.5702
F: 850.224.9242

**TAMPA**
301 West Platt St.
Suite 364
Tampa, Florida 33606
T: 813.775.2331

**WEST PALM BEACH**
360 South Rosemary Ave.,
Suite 1100
West Palm Beach, FL 33401
T: 561.640.0820
F: 561.640.8202

*See Things Differently*®

Manatee County Port Authority
Safe Harbor Letter
October 29, 2021
Page 2


       Should you have any questions or concerns, please don't hesitate to contact me at (727) 245-0820.

Sincerely,
**LEWIS, LONGMAN & WALKER, P.A.**

*/s/ Kevin S. Hennessy*

Kevin S. Hennessy
Nicole J. Poot, Esq.


KSH/jmd
Enclosure
cc: Client (via email w/enc.)

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CENTER FOR BIOLOGICAL DIVERSITY,
TAMPA BAY WATERKEEPER, SUNCOAST
WATERKEEPER, MANASOTA-88, and
OUR CHILDREN'S EARTH FOUNDATION,

        Plaintiffs,

v.

                                      Case No.: 8:21-cv-001521

GOVERNOR RON DeSANTIS
and SHAWN HAMILTON, in his official
capacity as ACTING SECRETARY, FLORIDA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, HRK HOLDINGS, LLC
And MANATEE COUNTY PORT AUTHORITY,

        Defendants.

---

**MOTION FOR SANCTIONS PURSUANT TO RULE 11,**
**FEDERAL RULES OF CIVIL PROCEDURE AND**
**MEMORANDUM OF LAW IN SUPPORT**

      COMES NOW, Defendant, MANATEE COUNTY PORT AUTHORITY

("MCPA") by and through its undersigned counsel, and pursuant to Fed. R. Civ. P.

11, hereby moves this Court for entry of an Order of Sanctions against Plaintiffs,

CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER,

MANASOTA-88 and OUR CHILDREN'S EARTH FOUNDATION (collectively

hereinafter "Plaintiffs") and as grounds thereof states as follows:

**EXHIBIT**

**A**

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

## INTRODUCTION

The MCPA respectfully moves for sanctions against the Plaintiffs and their attorneys because the Second Amended Complaint as alleged against the MCPA is not supported by the facts and is not warranted by existing law. Rule 11 of the Federal Rules of Civil Procedure requires attorneys to ensure that, prior to submitting any pleading, motion or other paper to the court that: (a) the claims are warranted by existing law; and (b) the factual contentions have evidentiary support or will likely have evidentiary support after reasonable investigation or discovery. Rule 11(b)(2-3) Fed. R. Civ. P. The MCPA initially provided the Plaintiffs with a response refuting their claims against the MCPA raised by their initial Notice of Claim, and subsequently provided the Plaintiffs with a "safe harbor letter" as required by Rule 11 including this Motion in response to their improper Second Amended Complaint.  Despite receiving more than clear and convincing notice from the MCPA, Plaintiffs refused to dismiss their action against the MCPA, necessitating the filing of this Motion. For the reasons set forth herein, the Court should enter an Order of Sanctions against Plaintiffs and award the MCPA its reasonable attorney's fees and costs.

## FACTUAL BACKGROUND

On May 17, 2021, Plaintiffs sent Defendants a notice of intent to sue letter alleging violations of the Resource Conservation and Recovery Act ("RCRA"), Clean Water Act ("CWA"), and Endangered Species Act ("ESA") at the Piney Point

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

Phosphate Facility ("Piney Point"). These environmental laws require notice before suit is filed. On July 14, 2021, Plaintiffs served their first Complaint under RCRA's citizen suit provision, 42 U.S.C § 6972(a)(1)(B), for an alleged violation of the statue giving rise to an alleged substantial endangerment to human health and the environment based on activities at Piney Point. The Complaint was filed prior to RCRA's notice period expiring. Plaintiffs sought to justify the failure to meet this jurisdictional requirement by alleging that the threat caused by the Defendants actions was such that it violated subchapter III of RCRA authorizing immediate suit after Defendants' receipt of the notice letter. Despite this claim, Plaintiffs subsequently abated the litigation to negotiate issues for over ninety days (90) solely with the Department with no apparent result. In response to the notice letter and Complaint, the MCPA provided Plaintiffs a letter outlining the reasons why the Plaintiffs' claims against the MCPA could not be maintained. Despite this information, Plaintiffs continue to pursue an action against the MCPA, and on August 12, 2021, Plaintiffs filed their Amended Complaint which continued to include, unchanged, a cause of action against the MCPA alleging a violation of RCRA.

Piney Point is a former phosphate fertilizer plant that ceased operations in the 1990s. As part of this operation, the site contained processing areas for products necessary for the manufacture of fertilizer including a phosphoric acid plant. Phosphoric acid production involves the use of an acidic solution to separate

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

phosphorus from phosphate-containing rock.  A waste byproduct of this process is phosphogypsum.  The phosphogypsum was discarded in piles on the site and allowed to dry.  Over time these piles of phosphogypsum became very large stacks, over seventy feet high. A problem with these stacks is that they can be unstable particularly due to heavy rainfalls. Piney Point has two (2) large phosphogypsum stacks that were covered with a liner as part of FDEP's cleanup efforts at the site. In addition, Piney Point has multiple large, lined reservoirs that contain process wastewater left over from the phosphate fertilizer manufacturing operations. Rainwater also accumulates in these reservoirs and mixes with the wastewater.  In March 2021, a leak was discovered in one of these process water impoundment areas causing the embankments to become unstable.  To prevent a collapse of the stacks, with potential disastrous consequences to adjacent properties, FDEP and HRK determined that it was necessary to discharge process water from these impoundment areas offsite to Tampa Bay through a decant line that runs across MCPA property. The discharges were authorized by an executive order of the FDEP requiring cooperation by HRK, the MCPA, and local governments.

The MCPA is a deep-water seaport that is located adjacent to Piney Point. The MCPA has never owned, operated, or had regulatory authority over Piney Point, nor any authorization or role in the State's closure or cleanup efforts at the site. Piney Point is owned and operated by Defendant, HRK Holdings, LLC ("HRK") under the regulatory supervision of Defendant, FDEP – the State

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

environmental agency. FDEP has overseen cleanup efforts at Piney Point for over two decades.  The MCPA's sole involvement at Piney Point relates to a Dredged Materials Containment Agreement referenced in the Amended Complaint and its subsequent amendments ("DMCA") entered between HRK and the MCPA and authorized by FDEP. The DMCA and amendments thereto are attached hereto as Exhibit "A." Pursuant to the DMCA, in 2011, the MCPA sent dredged materials generated from one of its dredging projects to Piney Point where the materials were placed on top of the lined stacks and one reservoir to form a protective barrier over the liners. Once the dredged material was sent to Piney Point, pursuant to the DMCA, HRK became the exclusive owner of the dredged materials. See DMCA par. 6. The dredged materials did not consist of hazardous substances or substances that have hazardous characteristics.   All activity engaged in by the MCPA under the DMCA was approved by all necessary government authorities. Moreover, contrary to the allegations in the Complaint, although the DMCA contemplated that materials from subsequent maintenance dredging projects would be sent to Piney Point, the MCPA has not sent dredged materials to Piney Point since the initial dredging project was completed in 2011.

## **MEMORANDUM OF LAW**

The MCPA, pursuant to Middle District Local Rule 3.01, files this memorandum of legal authority in support of its Motion for Sanctions.

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

## Argument

### I.   Legal Standard Under Federal Rule of Civil Procedure 11

1.   Federal Rule of Civil Procedure 11(b) provides the following:

> By presenting to the court a . . . motion, . . . an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

2.   Appropriate sanctions are required where an attorney or party submits a pleading to the court that:

> (1) is not well grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose.

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)(internal citations omitted).

3.   The objective standard for assessing conduct under Rule 11 is "reasonableness under the circumstances" and "what [it] was reasonable to believe at the time" the pleading was submitted. *Id.*

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

4.      If the Court determines that Rule 11 has been violated, the Court may impose sanctions upon the attorney, law firm, or party that violated the Rule. Rule 11(c)(1) Fed. R. Civ. P.  Specifically, "under Rule 11, a district Judge 'shall' or must impose sanctions for a violation." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). "In determining whether sanctions are appropriate, a court must ask, first, whether the parties' claims are objectively frivolous, and second, whether the person who signed the pleadings should have been aware that they were frivolous." *Rogers v. Nacchio*, 241 F.App'x 602, 610 (11th Cir. 2007). Subsection (c) of Rule 11 permits a district court to impose sanctions against a party who files pleadings that contain factual contentions that the party knows to be untrue. Fed. R. Civ. P. 11(c). It also allows for sanctions to be imposed against a party or its attorney for failing to "engage in a reasonable inquiry to determine that the information presented to the court is true." *Logan v. Chestnut*, 332. F. App'x 547, 547 (11th Cir. 2009) (citing Fed. R. Civ. P. 11(b)); *Worldwide Primates Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996) (affirming award of sanctions against plaintiff and his attorney pursuant to Rule 11 where the claim was objectively frivolous, and the attorney failed to make a reasonable inquiry into the legal and factual basis of the claim).

5.      An attorney cannot rely solely upon representations made to them by a client and must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996). What constitutes "reasonable inquiry" depends on factors

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

such as the amount of time available for investigation, whether there was no choice but to rely upon a client for information and whether the signor depended upon forwarding counsel or another member of the bar. *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir. 1987).

6.      The duty of counsel and parties to withdraw unsupported claims runs beyond the initial filing as Rule 11 (b) specifically applies to claims presented to the court "whether by signing, filing, submitting or ***later advocating it***". (*Emphasis added*). Sanctions are warranted when a party exhibits a "deliberate indifference to obvious facts," but not when the party's evidence to support a claim is "merely weak." *Riccard*, 307 F. 3d at 1294.

## II.   Critical Facts Alleged in the Amended Complaint are False

7.   The Amended Complaint includes two (2) substantial allegations that are patently false. Plaintiffs were informed of these falsities but failed to remove the allegations from the Second Amended Complaint. The falsities are easily discovered upon reasonable inquiry. Importantly for Rule 11 purposes, these factual inaccuracies directly affect the merit of Plaintiffs' claims. Moreover, the failure to remove these facts is evidence that the Plaintiffs needed to tie the MCPA into the current events at the site even though the MCPA's actual involvement completed in 2011 is far too remote in time to sustain a cause of action under RCRA.

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

8.    First, in paragraph 172, Plaintiffs allege that the MCPA continues to place its dredged material at Piney Point as part of its maintenance dredging efforts. This is inaccurate. The MCPA has not placed any dredged materials at Piney Point since 2011.

9. A simple public records request to the MCPA's Counsel following the MCPA's response to the Notice of Intent to Sue would confirm this fact (something the Plaintiffs did not do). While the MCPA has engaged in other maintenance dredging activities, all spoil associated with any maintenance dredging has been deposited on MCPA property and not at Piney Point.

10. This is a fatal flaw in Plaintiffs' claims against the MCPA because it goes straight to the issue of whether the alleged environmental and health harm caused from the dredged materials is imminent. The primary harm allegation in the Plaintiffs' claims occurred in March and April of 2021.  The dredged materials were placed at Piney Point approximately ten years ago and were no longer owned or under the control of the MCPA when any alleged comingling occurred. As such, Plaintiffs have nothing linking the MCPA to a potential threat of imminent harm as required by existing law to support a claim under RCRA.

11. Second, in Paragraph 355(h), Plaintiffs allege that the MCPA is involved in a deep well injection plan related to addressing waste disposal associated with Piney Point operations. The MCPA is not involved in any such plan. The MCPA in fact has no authority to permit any clean-up efforts at Piney Point. It is not an

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

owner of the Piney Point site and is not a government entity tasked with regulating the site. The Amended Complaint requests injunctive relief against the MCPA to enjoin this activity. The Court cannot enjoin the MCPA from taking future action it has not nor could not perform. The Plaintiffs are in violation of Rule 11 because not only was this information conveyed to the Plaintiffs, but again a simple request for public records to FDEP would confirm for Plaintiffs that the MCPA is not involved in the deep well injection plan.

12. As a result of Plaintiffs' failure to conduct a minimal investigation into the MCPA and FDEP's public records, or to engage in further discussions with the MCPA's Counsel regarding the facts surrounding this matter following the MCPA's Response to the Notice of Intent, the MCPA has incurred thousands of dollars in fees and costs associated with defending against the Plaintiffs frivolous claims. Even if the Court were to assume that the claim against the MCPA was initially brought in good faith, Plaintiffs had a duty under Rule 11 to withdraw their claims against the MCPA after being made aware that the law and facts cannot support their claims and that the lawsuit against the MCPA is frivolous.

## III. The Plaintiffs Amended Complaint Against the MCPA is Unsupported by Existing Law

13. RCRA's primary purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

(1996) (quoting 42 U.S.C. § 6902(b)). Accordingly, RCRA establishes a "cradle to grave" regulatory scheme for wastes it deems to be "hazardous." Nonhazardous wastes are less stringently regulated under RCRA as "solid waste." *City of Chicago v. Environmental Def Fund*, 511 U.S. 328, 331-32 (1994).

14. Citizens may bring suit to enforce RCRA's provisions. Section 7002 of RCRA authorizes any person who has provided the statutorily prescribed notice of intent to sue to commence a civil action:

> against any person, including the United States ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ...

42 U.S.C. § 6972(a)(1)(B).

15. As such, to prevail under RCRA's citizen suit provision in 42 U.S.C. § 6972(a)(1)(B), the plaintiff must prove: (1) that defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that defendant has contributed to or is contributing to handling, storage, treatment, transportation, or disposal of solid or hazardous waste; **and** (3) that solid or hazardous waste may present imminent and substantial endangerment to health or the environment. Solid Waste Disposal Act, § 7002(a)(1)(B), as amended, 42 U.S.C § 6972(a)(1)(B) (*emphasis added*).

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

16.  Here, the MCPA is simply not a proper party in this litigation – something the MCPA informed the Plaintiffs of before the Second Amended Complaint was filed.  The MCPA is not a party who has contributed or who is contributing[1] to the handling, storage, treatment, transportation, or disposal of any solid or hazardous waste, which may present an imminent and substantial endangerment to human health or the environment.

17. The Plaintiffs cannot support an allegation that the dredged materials created an immediate and substantial endangerment that would subject the MCPA to liability under RCRA for several reasons. First, the dredged material does not qualify as a solid or hazardous waste under RCRA. *See* e.g. *Oklahoma v. Tyson Foods, Inc.,* No. 05-CV-0329-GKF-PJC, 2010 WL 653032, at *10 (N.D. Okla. Feb. 17, 2010) ("[i]n determining whether a material is a 'beneficial' product or a RCRA solid waste, courts have examined whether the material has market value, and whether the party intended to throw the material away or put it to a beneficial use"); and, 40 CFR § 261.4(g) (dredged materials are not considered "hazardous

---

[1] "While courts have broadly interpreted "contributing to" as meaning "to have a share in any act or effect", passive conduct, such as merely failing to remediate or prevent migration of contaminants, fails to satisfy the "contributing to" requirement.  See, e.g., *Delaney v. Town of Carmel*, 55 F. Supp. 2d 237, 256 (S.D.N.Y. 1999) ("The term [contributed to] has been universally held to infer something more than mere ownership of a site; some level of causation between the contamination and the party to be held liable must be established."); *SPS Ltd. Partnership, LLLP v. Severstal Sparrows Point*, LLC, 808 F. Supp. 2d 794, 807 (D. Md. 2011) (dismissing RCRA count based on the fact defendant was passive subsequent owner who acquired site after disposal at issue ceased). The failure of the containment areas at Piney Point in 2021, and the decision to release the water from the site is far removed from the limited involvement the MCPA had in 2011 essentially to provide the site with fill with express authorization from the property owner, HRK, and the regulatory authority, FDEP.

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,
And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.
US District Court, MD of FL Case No: 8:21-cv-001521*

wastes" under RCRA where there is a valid 404 Clean Water Act permit).[2] Here the dredged materials were placed at Piney Point for the beneficial purpose of providing cover for the exposed liners.

18. Second, the dredged materials presented no imminent or substantial endangerment to health, or the environment at the time they were placed at the site. *Crandall v. City & Cty. of Denver, Colo.*, 594 F.3d 1231, 1238 (10th Cir. 2010) (a vague possibility of future harm cannot satisfy RCRA, which applies to dangers that are both "imminent and substantial."). After extensive evaluation by the MCPA, FDEP, HRK, and the US Army Corps of Engineers, all determined that there was at best, a *de minimis* risk of the dredged materials ever leaving the containment areas.[3] Moreover, once the dredged materials were placed at Piney Point, HRK became the exclusive owner of the dredged materials pursuant to the DMCA. Therefore, to the extent a hazardous waste now exists at the Piney Point site based on activities that have occurred after the dredging activities took place, the MCPA bears no responsibility or liability for its creation or its release. In addition, the dredged materials were placed on top of the liners as a means of protection. The dredged materials were part of the solution to close the site.[4] The

---

[2] The MCPA had a valid 404 permit for the dredging activity that resulted in materials being placed at Piney Point; another reason why the dredged material is not considered a hazardous waste.

[3] Courts have held that where alleged risk of harm is remote in time, speculative, or de minimis, the threshold for an imminent and substantial endangerment is not met. *See, e.g., Maine People's Alliance and Natural Resources Defense Council v. Mallinckrodt, Inc.*, 471 F.3d 277 (1st Cir. 2006).

[4] Courts have routinely found that material being used for a beneficial purpose is not being "discarded" such that it becomes "solid waste" subject to RCRA regulation. *See Delaware Riverkeeper Network*, 2017 WL 2829603, at *22 ("a common-sense reading of words like "discard," "disposal," and "abandon" connotes that the material is not being applied for a beneficial or intentional purpose."); *Am. Petroleum Inst. v. EPA*,

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

MCPA cannot be liable under RCRA where it acted pursuant to the direction of the state environmental regulatory agency as part of the State's remedial efforts at the site.

19. Third, the Plaintiffs claims against the MCPA are attempting to extend the application of RCRA to a situation that is expressly regulated under section 404 of the Clean Water Act ("CWA") and thus prohibited under RCRA's anti-duplication provision. See e.g., 42 U.S.C. § 6905.

20. Fourth, because the dredged material, which consisted of sand, clay, and seawater is not a solid or hazardous waste, to the extent it comingled with the phosphogypsum as alleged, it did not remove the phosphogypsum and process water's exempt status pursuant to 40 C.F.R 261.4(b)(7)(ii)(D) and 261.4 (b)(7)(ii)(P).

21. Fifth, the injunctive relief requested by the Plaintiffs is not available against the MCPA. The Plaintiffs seek injunctive relief against the MCPA, when the MCPA has no role in the activities the Plaintiffs seek to enjoin.

---

216 F.3d 50, 55-56 (D.C.Cir.2000) ([m]aterial is considered to be "discarded" where it is disposed of, thrown away or abandoned); *see also Am. Mining Congress v. EPA*, 824 F.2d 1177, 1183-84 (D.C.Cir.1987) ("[t]he ordinary, plain-English meaning of the word 'discarded' is 'disposed of,' 'thrown away' or 'abandoned.'"); *Oklahoma v. Tyson Foods, Inc., No.* 05-CV-0329-GKF-PJC, 2010 WL 653032, at *10 (N.D. Okla. Feb. 17, 2010) ("[i]n determining whether a material is a 'beneficial' product or a RCRA solid waste, courts have examined whether the material has market value, and whether the party intended to throw the material away or put it to a beneficial use"); *Krause v. City of Omaha*, No. 8:15CV197, 2015 WL 5008657, at *4 (D. Neb. Aug. 19, 2015) (*citing Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 206 (2d Cir. 2009) ([w]hen the materials in question were "applied for a specific use" and were used to "effectuate their intended purposes," that "they were not discarded under the RCRA.").

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

22. Finally, RCRA's citizen suit provision under which Plaintiffs proceed explicitly prohibits an action regarding the siting or permitting of a waste treatment, storage or disposal facility. 42 U.S.C. § 6972(b)(2)(D). FDEP designated Piney Point as an appropriate upland facility to depose of the dredged materials. As such, Plaintiffs claims amount to a collateral attack on FDEP's siting of the facility and are barred pursuant to RCRA

23. When an attorney signs and presents pleadings to a district court, the attorney certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, warranted by existing law, and is not presented for any improper purpose. Fed. R. Civ. P. 11(a),(b); *see also iParametrics, LLC v. Howe,* 522 Fed. Appx. 737, 739 (11th Cir. 2013); *Baker,* 158 F.3d at 524. In this case, the Plaintiffs and their counsel failed to properly investigate their claims against the MCPA and the existing law on this subject following the MCPA's response to the Notice of Intent to Sue. As explained above, the applicable law (RCRA) and the factual circumstances made known to the Plaintiffs simply cannot support Plaintiffs' claims against the MCPA and as such sanctions under Rule 11 are warranted. See, *Baker v. Alderman*, 150 F.R.D. 202, 208 (M.D. Fla. 1993) ("Where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.").

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

## IV.   CONCLUSION

24. Plaintiff's claims do not remotely pass muster under Rule 11. Maintaining these claims despite the clear law adverse to Plaintiffs' alleged cause of action is sanctionable.

WHEREFORE, based upon the foregoing, the MCPA respectfully requests this Court enter an Order of sanctions in favor of the MCPA and against Plaintiffs and their Counsel, and award the MCPA its attorney's fees and costs incurred in the above-styled action and award such other relief as the Court deems appropriate.

Respectfully submitted this _____ day of _____, 2021.

_____

KEVIN S. HENNESSY, ESQUIRE
Florida Bar No. 0602558
NICOLE J. POOT, ESQUIRE
Florida Bar No. 0118858
LEWIS, LONGMAN & WALKER, P.A.
100 Second Avenue South, Suite 501-S
St. Petersburg, FL 33701
Telephone: (727) 245-0820
Facsimile: (727) 290-4057
Primary Email: khennessy@llw-law.com
                          npoot@llw-law.com
Secondary Email: jbissette@llw-law.com
                          jdavy@llw-law.com
*Counsel for Manatee County Port Authority*

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01(g), counsel for _____ certifies that it conferred with counsel for _____ concerning the relief sought in this Motion. Counsel for Plaintiff objects to MCPA's Motion and the requested relief in its entirety.

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to the following counsel of record, on this ____ day of October, 2021:

Charles M. Tebbutt, Esq.
Daniel C. Snyder, Esq.
B. Parker Jones, Esq.
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR  97401
Tel: (541) 344-3505
Fax: (541) 344-3516
charlie@tebbuttlaw.com
dan@tebbuttlaw.com
parker@tebbuttlaw.com
*Co-Counsel for Plaintiffs*

Jaclyn Lopez, Esq.
Center for Biological Diversity
PO Box 2155
St. Petersburg, FL  33731
Tel: (727) 490-9190
jlopez@biologicaldiversity.org
*Co-Counsel for Plaintiffs*

Justin Bloom, Esq.
PO Box 1028
Sarasota, FL 34230
Tel: (941) 275-2922
Bloomesq1@gmail.com
*Co-Counsel for Plaintiffs*

Nicolas J. P. Meros, Esq.
Deputy General Counsel
Executive Office of the Governor
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL  32399
Nicholas.Meros@eog.myflorida.com
Gov.legal@eog.myflorida.com
Tel: (850) 717-9310
Fax: (850) 488-9810
*Counsel for Governor Ron DeSantis*

*Center For Biological Diversity, Tampa Bay Waterkeeper, Suncoast Waterkeeper, Manasota-88,*
*And Our Children's Earth Foundation v. Manatee County Port Authority, et. al.*
*US District Court, MD of FL Case No: 8:21-cv-001521*

Jesse L. Ray, Esq.
Jesse Lee Ray Attorney at Law, P.A.
13014 N. Dale Mabry Hwy., #315
Tampa, FL  33618-2808
jray@jesseleeray.com
efile@jesseleeray.com
Tel: (813) 443-9701
Fax: (866) 523-5468
*Counsel for HRK Holdings, LLC*

Jeffrey Brown, Esq.
Assistant General Counsel
Department of Envir. Protection
3900 Commonwealth Blvd., MS 35
Tallahassee, FL  32399-3000
Jeffrey.Brown@FloridaDEP.gov
Syndie.Kinsey@FloridaDEP.gov
DEP.Defense@FloridaDEP.gov
*Counsel for Shawn Hamilton, in his*
*official capacity as Acting Secretary of*
*the      Florida      Department      of*
*Environmental Protection*

_____
KEVIN S. HENNESSY

### PORT MANATEE DREDGED MATERIALS CONTAINMENT AGREEMENT

The MANATEE COUNTY PORT AUTHORITY, a political entity of the State of Florida with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida 34221 (the "Authority"), and HRK HOLDINGS, LLC, a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520 ("HRK"), for and in consideration of the mutual covenants herein contained and other good and valuable consideration, agree as follows:

1. AUTHORITY REPRESENTATIONS.  The Authority represents unto HRK, with the intent that HRK rely thereon, that:

A.  The Authority owns and operates public seaport facilities in the northwestern portion of Manatee County, Florida named "Port Manatee".

B.  It is periodically necessary for the Authority to undertake the dredging of basins and channels to provide access to Port Manatee by oceangoing vessels and to provide for the proper and safe upland containment of the materials from said dredging activities.

C.  It is presently anticipated that the Authority will in the immediate future undertake the dredging of the Berth 12 approach channel, also identified as the south channel extension which will consist of hydraulically dredging a channel approximately 1,600 feet long by approximately 400 feet wide to a

-1-

RECEIVED

APR 1 6 2007

PORT MANATEE

```
┌─────────────────┐
│    EXHIBIT      │
│       A         │
└─────────────────┘
```

depth of approximately 40 feet at mean low tide resulting in approximately 1,500,000 cubic yards of dredged materials (the "Anticipated Project"). Depending upon various circumstances existing at the time dredging is to be initiated, the Anticipated Project may be undertaken as one continuous project or in two phases. Phase I would consist of the northerly most 1,000 feet resulting in approximately 1,000,000 cubic yards of dredged materials and Phase II would consist of the remaining distance of approximately 600 feet resulting in approximately 500,000 cubic yards of dredged materials as shown on the drawing attached hereto and made a part hereof as Exhibit "A".

D.   The Anticipated Project is subject to Environmental Resource Permit No. 0129291-009-EM as modified by the Florida Department of Environmental Protection (DEP).

E.   The Anticipated Project is subject to Permit No. SAJ-1998-1210(IP-MN) issued by the Department of the Army (Corps).

F.   The Anticipated Project is subject to prescribed agreements between the Authority and the U.S. Department of the Army (through the Army Corps of Engineers) to the extent that the Anticipated Project is a federal dredging project.

G.   Financing for the Anticipated Project is to be provided in part by Florida Department of Transportation Grant (Financial Project No. 41707719401) which imposed certain limitations and restrictions upon the Authority in connection with

-2-

the Anticipated Project.

H.  The Authority has retained CH2M Hill, Inc. to perform professional consulting engineering services in connection with the portions of this agreement to be performed by the Authority.

2.  HRK REPRESENTATIONS. HRK represents unto the Authority, with the intent that the Authority rely thereon that:

A.  HRK owns the real property that was previously the Piney Point Phosphates, Inc. phosphate fertilizer manufacturing complex located adjacent to U.S. Highway 41 easterly of Port Manatee containing a phosphogypsum stack system (the "Stacks").

B.  The Stacks are subject to an Administrative Agreement between the DEP and HRK in reference to HRK Holdings, LLC, The Former Piney Point Phosphates, Inc. Phosphate Fertilizer Manufacturing Complex, U.S. Highway 41, Manatee County, Florida, OGC No. 06-1685 which imposed certain limitations and restrictions upon HRK in connection with the possession and use of the Stacks.

C.  HRK is allowed pursuant to said Administrative Agreement to fill or otherwise improve the Stacks, and the dredged materials from the Anticipated Project are acceptable and needed to fill or otherwise improve the Stacks.

D.  HRK has retained Environmental Consulting and Technology, Inc. to perform professional consulting engineering services in connection with the portions of this agreement to be performed by HRK.

-3-

3.   MUTUAL REPRESENTATIONS.   The Authority and HRK each represent unto the other party with the intent that both parties may rely thereon that:

A.  The professional consulting engineers retained by the parties hereto shall be instructed to cooperate with each other in connection with the design and construction of both portions of the Anticipated Project covered by this agreement to provide the necessary facilities to efficiently perform the engineering related portions of this agreement.

B.   The purpose of this agreement is to evidence a transaction wherein HRK grants to the Authority the present right to use the Stacks for the containment of dredged materials and to continue said use for as long as there is capacity in the Stacks for the proper and safe containment of dredged materials without granting the Authority any right, title or interest in and to the real property on which the Stacks are located.

4.  RENOVATION OF STACKS.  The Stacks shall be converted to hydraulically dredged material containment facilities with a capacity to properly and safely contain approximately 6,500,000 cubic  yards  of  hydraulically  dredged  materials,  including infrastructure for decanting dredged and rain water from the Stacks, the treatment of dredged water and providing for the integrity of these facilities. The design of, the permitting for and the construction of these facilities shall be at no cost or

-4-

expense to the Authority.

5.   CONTAINMENT OF DREDGED MATERIALS.   The Authority shall cause all or a portion of the dredged materials from the Anticipated Project to be hydraulically transported by pipeline to the Stacks.   HRK shall provide capacity for the proper and safe containment in the Stacks of the dredged materials and for the storage and treatment of dredged material and rainwater as necessary to comply with the turbidity requirements imposed by the Dredging ERP Permit.   HRK shall cause any internal design for the containment, storage and treatment to meet or exceed flows of the largest available hydraulic dredges (estimated at 41,000 gallons per minute). Conceptual specifications and drawings relating to these Stacks and these pipelines are attached hereto and made a part hereof as Exhibit "B".

6.   DREDGED MATERIALS OWNERSHIP.   As between the parties hereto, the Authority shall be deemed the owner of the dredged materials until same are properly and safely deposited in the Stacks at which time HRK becomes the owner of said dredged materials.

7.   DREDGED MATERIALS RELATED WATER.   The Authority shall construct, install, operate and maintain a pipeline that connects to HRK's infrastructure designed pursuant to paragraph 4 for the purpose of transporting and discharging of said decanted water and rainfall with the right to use permitted flocculants in accordance

-5-

with the conditions of the Dredging ERP Permit and with the conceptual specifications and drawings attached hereto and made a part hereof as Exhibit "B". As more fully described in Exhibit "B", during the Anticipated Project the Authority shall be responsible for the operation of the decanted water system, including the water clarification/treatment/collection facilities provided by HRK as well as the return water pipeline. Upon completion of the Anticipated Project, this responsibility will be assumed by HRK, which will operate the decanted water system until the conductivity of the treated water is less than 1,275 micromhos per centimeter.

8. PIPELINE EASEMENTS. The Authority shall provide right-of-way within Port Manatee and HRK shall provide right-of-way within the particular real property owned by HRK for pipelines for the transmission of dredged materials and pipelines for the transmission of decanted water and rainfall from the Stacks then in use for the purpose of this Agreement. The Authority shall be responsible for obtaining any easements or other authorizations needed for rights-of-way for said pipelines across and under any real property, railroad tracks or state highway owned by any entity or person other than the parties hereto.

9. AGREEMENT AND PERMIT MODIFICATIONS. The parties shall cooperate with each other in obtaining any necessary amendments to or modifications of the agreements and permits identified in the

-6-

foregoing paragraphs 1C, 1D, 1E, 1F, 1G, 2B and 2C to lawfully
enable the parties hereto to carry out and perform the provisions
of this agreement. Each party shall have the right to participate
in the proceedings for the amendment or modification of any of said
agreements or permits to the extent authorized by law and shall
share communications and documentation in connection therewith. If
said amendment and/or modification are not completed, executed or
issued within six (6) months of the date of this agreement, the
Authority shall have the right to cancel and terminate this
agreement by giving HRK written notice thereof.

    10.  MUTUAL BENEFIT AND PUBLIC PURPOSE.  The parties hereto
recognize that the containment of the dredged materials from the
Anticipated Project is beneficial to the Authority , that the use
of the Stacks is beneficial to HRK and that there will be related
costs and expenditures incurred by the parties hereto in connection
with constructing, installing, operating and maintaining the
required pipelines and the placement and use of the dredged
materials. The performance of this agreement shall be of material
benefit to the DEP, and as a result of said material benefit, the
severance fee for dredging material from sovereignty submerged
lands should be eliminated or waived by the DEP.  If the severance
fee is not eliminated or waived within six (6) months of the date
of this agreement, the Authority shall have the right to cancel or
terminate this agreement by giving HRK written notice thereof.

-7-

11. COMPENSATION FOR ANTICIPATED PROJECT. The Authority shall pay compensation to HRK for the capacity to properly and safely contain in the Stacks dredged materials and for the actual proper and safe containment of said dredged materials in the following amounts and upon the following events:

A. $1,000,000 upon the parties receiving all of the approvals and permits and/or all of the amendments or modifications to the agreements and permits identified in paragraph 9 hereof.

B. $500,000 upon the issuance of a Notice to Proceed by the Authority to the dredging contractor duly selected by the Authority.

C. $1,000,000 upon the dredging contractor demobilizing upon the completion of Phase I.

D. Compensation for Phase II of the Anticipated Project would be at the rate of $3.75 per cubic yard, with $937,500 due upon commencement of the disposition of dredged materials in the Stacks and the balance due upon agreement by the parties to the in situ cubic yards for materials actually dredged.

E. Maintenance dredging and other Authority uses which utilize the Stacks will be at the rate of $3.75 per cubic yard. This rate will remain in full force and effect for a period of seven (7) years from the date of this agreement at which time it will be renegotiated as provided in paragraph 14C hereof.

12. INSURANCE.

-8-

A. By the Parties.  The parties shall mutually obtain and maintain a policy or policies of insurance covering liability arising out of, caused by or in connection with all of the Anticipated Project including, but not limited to, the construction and installation of improvements, the actual dredging, the transportation of dredged materials to the Stacks, the containment of said materials in the Stacks, the decanting of said materials in the Stacks, the removal of rainwater from the Stacks and the transportation of said water away from the Stacks.  Said insurance shall also cover liability arising out of, caused by or in connection with any unauthorized or unpermitted migration or spillage of dredged materials or decanted water.  Said insurance shall have minimum limits of $2,000,000 for each occurrence and a term that extends for a minimum period of twenty-four (24) months after the last of the dredged materials from the Anticipated Project is deposited in the Stacks.  The parties shall both be named as insureds on said policy or policies as their interests may appear, or one party shall be the named insured and the other party shall be an additional insured as its interests may appear.  Fifty percent (50%) of the amount of the premium or premiums for said insurance shall be paid by each party.

B. By Contractors.  The performance of this agreement for the Anticipated Project requires the construction or installation of improvements including, but not limited to, the

-9-

actual dredging, pipelines and other related equipment and facilities by independent contractors. Each party engaging or retaining any such contractor for any of said improvements shall require said contractor to obtain and maintain a policy or policies of insurance for the amounts, coverages and terms set forth in Insurance Requirements For Port Manatee Berth 12 Dredging Project, Port Manatee - HRK Holdings Pipeline Projects and for the HRK Holdings Phosphogypsum Stack System Improvement Project attached hereto and made a part hereof as Exhibit "C".

C. By the Parties and by Contractors. All policies shall be issued by companies acceptable to both parties and licensed to conduct insurance business in the State of Florida with a favorable rating by A. M. Best Company. Each party shall have the right to obtain from the other party an original or certified copy of any policy issued pursuant to this agreement. Each of said policies shall provide that it is not subject to cancellation, non-renewal, material change or reduction in coverage unless at least thirty (30) days' prior written notice thereof is given to each of the parties.

D. Disclaimer. Nothing herein contained shall be deemed to require any additional or different insurance coverage each of the parties normally carries for the activities, operations and property of the particular party, such as, but not limited to, general liability, vehicle liability, worker's compensation and

-10-

fire and extended coverage for buildings and other structures.

13. FINANCIAL RESPONSIBILITY. Recognizing that each party is obligated to the expenditure of a substantial amount of funds in the performance of this agreement, each party shall, from time to time, upon reasonable notice furnish to the other party requested accountings, financial statements and other financial information, not otherwise confidential or exempt from disclosure, to evidence the financial responsibility of the particular party to perform this agreement. Each party to the extent authorized by law shall not disclose to any other person or entity the contents of any financial document furnished to the other party. The Authority shall appropriate by budget or by budget amendment funds to meet the compensation requirements of paragraph 11 hereof for each fiscal year of the Authority within which compensation payments are to be made by the Authority. HRK in performance of paragraph 42 of the Administrative Agreement identified in paragraph 2B hereof established and maintains a line of credit for the benefit of the DEP in the amount of $1,650,000 as interim financial assurance to conduct long-term care and remaining water management activities associated with the Stacks as provided in Section III of said Administrative Agreement.

14. RESERVATION AND USE OF STACK CAPACITY.

A. Reservation. HRK hereby reserves a total capacity of 6,500,000 cubic yards in the Stacks renovated or to be renovated

-11-

pursuant to the provisions of paragraph 4 hereof for the containment of dredged materials from any future dredging operations by the Authority not included as part of the Anticipated Project for as long as there is remaining capacity in the Stacks for the proper and safe containment of dredged materials and hereby grants the Authority the exclusive right to the containment of dredged materials in the Stacks for as long as there is capacity remaining in the Stacks for the proper and safe containment of dredged materials.

B. Reservation Consideration. The Authority shall pay HRK as consideration for this right a sum in the amount of $200,000 upon the dredging contractor demobilizing following the completion of the Anticipated Project if the Anticipated Project is undertaken as one continuous project or upon the dredging contractor demobilizing following the completion of Phase I if the Anticipated Project is undertaken in phases. If the Authority duly exercises this right and causes the dredged materials to be contained in the Stacks pursuant to the amendment or modification of this agreement provided for below, said $200,000 shall be credited in reduction of the amounts due by the Authority to HRK for the containment of said dredged materials. If the Authority fails to exercise said right and does not cause said dredged materials to be contained in the Stacks, the total amount of said $200,000 shall be retained by HRK to compensate it for the loss of the beneficial use of the Stacks

-12-

during the time period of the reservation and the Authority shall have abandoned, released and waived any and all rights it may have had to said $200,000. If the Authority fails to deposit dredged materials into the Stacks for a period exceeding seven (7) consecutive years, then HRK shall have the right at its sole discretion to terminate this Agreement by written notice to the Authority and the return of the $200,000 reservation consideration.

C. Exercising The Right. The Authority may at any time there is capacity in the Stacks for the proper and safe containment of dredged materials notify HRK of its exercising the right to contain dredged materials in the Stacks by giving written notice to HRK. The parties shall immediately thereafter negotiate in good faith for an applicable amendment to or modification of this agreement nearly as consistent with this agreement as practicable providing for containment of dredged materials in the Stacks. Said amendment or modification shall provide for the compensation to be paid by the Authority to HRK for the containment of dredged materials in the Stacks calculated as an amount per cubic yard for each cubic yard of dredged materials. The amount shall be determined by adjusting $3.75 per cubic yard to reflect the change in the current Consumer Price Index and an amount determined by averaging the Consumer Price Index for the three (3) consecutive years immediately preceding the year in which the Authority exercises its right to contain dredged materials in the Stacks.

-13-

15. FORCE MAJEURE. In the event an act of God or an act of war or terror prevents the performance of this agreement, then and in any one of said events, the parties are released from any and all causes of action, claims or damages arising out of or in connection with said event or events. If any compensation pursuant to paragraph 11 hereof or any consideration pursuant to paragraph 14B hereof has been paid by the Authority to HRK prior to any such event or events, HRK shall reimburse or repay the Authority the total amounts of said compensation or consideration so paid, less an amount equal to the documented capacity used calculated at the rate of $2.50 per cubic yard of capacity used in the prompt performance of this agreement prior to the occurrence of said event or events.

16. AGREEMENT ADMINISTRATION. The Authority hereby authorized the Executive Director of Port Manatee, or his designee, to administer the terms and conditions of this agreement on behalf of the Authority and to make all managerial decisions on behalf of the Authority as they relate to the provisions of this agreement.

17. AUTHORITY TO EXECUTE. Each of the parties hereto covenants to the other party hereto that it has lawful authority to enter into this agreement, that the governing or managing body of each of the parties has approved this agreement and that the governing body or managing body of each of the parties has authorized the execution of this agreement in the manner

-14-

hereinafter set forth.

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Agreement to be executed in duplicate this the _19ᵈ_ day of _April_ , 2007.

ATTEST: R. B. SHORE
      Clerk of Circuit Court

By:

          **SEAL**

          AUTHORITY

WITNESSES:

MANATEE COUNTY PORT AUTHORITY

By:
    2ᴺᴰ Vice - Chairman
      CAROL Whitmore

HRK HOLDINGS, LLC

By:_____ GARY KANIA
Title: PRESIDENT

HRK

-15-



PHASE 1 BASE BID

PHASE 1 BASE BID
40 REQUIRED DREDGE
PLUS 2 FOOT OVERDREDGE

TOE OF SLOPE

TOP OF SLOPE

PHASE 2 ADD ALTERNATE
40 FOOT REQUIRED DEPTH
PLUS 2 FOOT ALLOWABLE OVERDREDGE
(SEE INSTRUCTIONS TO BIDDERS)

Exhibit A



Exhibit B
2686 FT
215 FT
166 FT
109 FT
603 FT
194 FT
1413 FT
209 FT
2652 FT
850 FT
1560 FT

Conceptual Specifications
Pipe Sleeve Installations for Dredge Slurry and Return Carrier Pipes
Dredged Material Disposal at Piney Point
April 13, 2007

1. Install 42-inch diameter steel pipe sleeves by bore-and-jack method – one sleeve crossing Reeder Road in the vicinity of South Dock Street, one sleeve crossing South Dock Street, two sleeves crossing each of the CSX railroad, Federal Port Corporation warehouse project entrance and U.S.-41 at South Dock Street.
2. The purpose is to run dredge slurry and return water carrier pipes across the thoroughfares for long periods of time without interference to traffic.
3. Installations are to be in accordance with design and permits further addressed in an engineering proposal prepared by CH2M HILL.
4. These conceptual details are subject to change during the design and permitting process.

Exhibit B

Exhibit "C" To The Port Manatee Dredged
Materials Containment Agreement


INSURANCE REQUIREMENTS FOR THE PORT MANATEE BERTH 12
DREDGING PROJECT, PORT MANATEE - HRK HOLDINGS PIPELINE
PROJECTS AND FOR THE HRK HOLDINGS PHOSPHOGYPSUM STACK
SYSTEM IMPROVEMENT PROJECT.

The MANATEE COUNTY PORT AUTHORITY, a political entity of the
State of Florida, owning and operating Port Manatee and HRK
HOLDINGS, LLC, a Florida limited liability company, are
independently undertaking various construction and improvement
projects in cooperation with each other and have agreed that each
contractor engaged or retained by either of said parties will
require that the particular contractor obtain and maintain a policy
or policies of insurance meeting the following requirements.

General liability insurance include as a minimum coverages for
premises operations, products and completed operations, blanket
contractual liabilities, personal injury liability and expanded
definition of property damage with minimum limits of at least
$1,000,000 Combined Single Limit (CSL), with an occurrence form
policy.  Said coverage shall not contain any exclusion for
"Underground, Collapse or Explosion (XCU)".

Pollution liability insurance, where applicable, extending to
all work performed by the contractor pursuant to its particular
construction contract with limits of not less than $3,000,000 for
a period extending twelve (12) months following the completion of
all work governed by the particular construction contract.  If any
such contractor pursuant to its particular construction contract is
to perform work on, over or under property controlled or owned by
independent third parties such as the Florida Department of
Transportation or CSX Transportation, Inc., the particular
contractor shall obtain and maintain any and all insurance
coverages required by said third parties which may include, but not
be limited to, Railroad Liability Insurance.

Vehicle liability insurance include as a minimum liability
coverage for owned, non-owned and hired vehicles with the minimum
limits being at least $1,000,000 CSL.

Worker's compensation insurance with limits sufficient to respond to Chapter 440 of the Florida Statutes and employer's liability coverage with limits of not less than $100,000 for bodily injury by accident, $500,000 for bodily injury by disease and $100,000 for bodily injury by disease for each employee.

The Manatee County Port Authority or HRK Holdings, LLC, as the case may be, shall be named as additional insured on each of said policies.

Each of said policies shall contain a Waiver of Subrogation provision in favor of either the Manatee County Port Authority or HRK Holdings, LLC, as the case may be.

All such policies shall be issued by companies acceptable to the Manatee County Port Authority or HRK Holdings, LLC, as the case may be, licensed to conduct insurance business in the State of Florida and enjoying a favorable rating from A. M. Best Company.

Each insurance policy must specify that it is not subject to cancellation, non-renewal, material change or reduction in coverage unless at least thirty (30) days' written notice thereof is given to the Manatee County Port Authority or HRK Holdings, LLC, as the case may be.

A Certificate of Insurance for each of said policies or a certified copy of said policies shall be furnished to the Manatee County Port Authority or HRK Holdings, LLC, as the case may be.

## PORT MANATEE DREDGED MATERIALS
## CONTAINMENT AGREEMENT AMENDMENT

The MANATEE COUNTY PORT AUTHORITY, a political entity of the State of Florida with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida 34221 (the "Authority"), and HRK HOLDINGS, LLC, a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520 ("HRK"), for and in consideration of the mutual covenants herein contained and other good and valuable consideration, amend, modify and supplement that certain Port Manatee Dredged Materials Containment Agreement between the parties hereto dated April 19, 2007, as follows:

1. REPRESENTATIONS.  Paragraph 9 of said agreement provides for the parties cooperating with each other in obtaining all necessary approvals and permits and/or all of the amendments to or modifications of agreements and permits, and paragraph 11A of said agreement provides that the Authority shall pay $1,000,000 to HRK upon the parties receiving all of the approvals and permits and/or all of the amendments or modifications to the agreements and permits identified in said paragraph 9.  Each of the parties represents to the other party, with the intent that the other party rely thereon, that the amendments, approvals and permits obtained to date are set forth in the Port Manatee Dredged Materials

-1-

Containment Agreement Status of Permits & Approvals As Of November 9, 2007 attached hereto and made a part hereof.  Through no direct or deliberate fault of either of the parties hereto, certain of said amendments, approvals or permits have not been obtained and are still pending with completion thereof anticipated within a relatively short period of time.  HRK has and does hereby request that due to said circumstances, the Authority presently pay to HRK $500,000 of said $1,000,000 prescribed for in said paragraph 11A.

2.   AMENDMENT.   Paragraph 11A of said agreement is hereby amended to provide that $500,000 shall be paid by the Authority to HRK immediately hereafter as is practicable and that $500,000 shall be paid by the Authority to HRK upon the parties receiving all of the permits and approvals and/or all of the amendments or modifications to the agreements and permits identified in paragraph 9 of said agreement and as shown on the Port Manatee Dredged Materials Containment Agreement Status of Permits & Approvals As Of November 9, 2007 attached hereto and made a part hereof.

3.   SAVINGS PROVISION.  Except to the extent herein amended, modified or supplemented, said agreement remains in full force and effect.

4. AUTHORITY TO EXECUTE.  Each of the parties hereto covenants to the other party hereto that it has lawful authority to enter into this agreement, that the governing or managing body of each of the parties has approved this agreement and that the governing body

-2-

or managing body of each of the parties has authorized the execution of this agreement in the manner hereinafter set forth.

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Agreement Amendment to be executed in duplicate this the 15th day of November, 2007.

ATTEST: R. B. SHORE                              MANATEE COUNTY PORT AUTHORITY
        Clerk of Circuit Court

By                                               By:
                                                           Chairman


WITNESSES:                                       HRK HOLDINGS, LLC


                                                 By:
Stephen J. Ehrling                               Title:        PRESIDENT

         STEPHEN J. EHRLING                      HRK
    Notary Public, State of New York
           #01EH6115223
      Qualified in Nassau County
   Commission Expires Sept 7, 2008

- 3 -

## PORT MANATEE DREDGE MATERIALS CONTAINMENT
## AGREEMENT AMENDMENT #2

The MANATEE COUNTY PORT AUTHORITY (the "Authority"), a political entity of the State of Florida, with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida  34221, and HRK HOLDINGS, LLC ("HRK"),  a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520, for and in consideration of the mutual covenants herein contained and other good and valuable consideration hereby enter into this Port Manatee Dredge Materials Containment Agreement Amendment #2   ("Amendment #2") and hereby amend, modify and supplement the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, and the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1")  between the parties dated November 15, 2007, and state as follows:

1.        **REPRESENTATIONS.**   This Amendment #2 shall only amend, modify and supersede subsections A, B, C, and D of paragraph 11 of the Original Agreement, and paragraphs 1 and 2 of Amendment #1. All other provisions and subsections in the Original Agreement and Amendment #1shall remain binding upon the Authority and HRK.

2.        **COMPENSATION FOR ANTICIPATED PROJECT.**  The Authority will pay HRK a sum totaling approximately $3,887,500 as compensation to HRK for the capacity to properly and safely contain in the Stacks dredged materials for the actual proper and safe containment of said dredged materials for Phase I and II of the project.  The total costs for the Phase I portion of the project is $2,500,000.  The total costs for the Phase II portion of the project shall be calculated based upon a fee of $3.75 per yard for each cubic yard dredged, and is currently estimated to costs approximately $1,387,500 (based upon engineer estimates of 370,000 cubic yards).  HRK has agreed to accept installment payments from the Authority for the total compensation for Phase I and II at the timeframes set forth below:

A. $1,000,000 upon the parties receiving all of the approvals and permits and/or all of the amendments or modifications to the agreements and permits. The parties acknowledge that this amount has been paid by the Authority to HRK.

B. $500,000 upon the issuance of a Notice to Proceed by the Authority to the dredging contactor duly selected by the Authority.

C. If the contractor is mobilized to perform the dredging as provided for in Phase I and Phase II of the project, the following payments shall be made by the Authority to HRK:

    (1.)   $500,000 to be paid on or before December 31, 2010;

    (2.)   $500,000 to be paid on or before June 30, 2011;

    (3.)   $500,000 to be paid on or before December 31, 2011;

    (4.)   $500,000 to be paid on or before June 30, 2012; and

    (5.)   Any remaining balance, currently estimated at $387,500, shall be paid on or before December 31, 2012.

3.    **CONFLICT.**  In the event of a conflict regarding the provisions set forth in subsections A, B, C and D of paragraph 11 of the Original Agreement and this Amendment #2, this Amendment #2 shall prevail. In the event of a conflict regarding the provisions set forth in paragraphs 1 and 2 of Amendment #1 and this Amendment #2, this Amendment #2 shall prevail.

4.    **SAVINGS PROVISION.**  Except to the extent herein amended, the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, and the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1") between the parties dated November 15, 2007, shall remain binding and in full force and effect.

2

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Amendment #2 to be duly executed in duplicate this the ___24th___ day of ___Aug.___ _____, 2010.

ATTEST:  R. B. SHORE                                        MANATEE COUNTY PORT AUTHORITY
                Clerk of Circuit Court

By: _____              By: _____
Printed: _DIANE E. VOLLMER_                       Larry Bustle

                                AUTHORITY

WITNESSES:                                       HRK HOLDINGS, LLC.

_____              By: _____
                                                              JEFFREY A. BARATH
_____

STATE OF FLORIDA
COUNTY OF _Manatee_____

        The foregoing instrument was acknowledged before me this the ___23___ day of __August__ _____, 2010 by _Jeffery Barath_ as the _____ of _____, a Florida corporation, who is personally known to me or who has produced _FL Drivers Lic_ as identification and who did not take an oath.

_____
Notary Public

JEANINE ZERIS
MY COMMISSION # DD842729
EXPIRES November 24, 2013
(407) 398-0153      FloridaNotaryService.com

3

PORT MANATEE DREDGE MATERIALS CONTAINMENT
AGREEMENT AMENDMENT #3

The MANATEE COUNTY PORT AUTHORITY (the "Authority"), a political entity of the State of Florida, with its principal place of business located at Port Manatee, 300 Tampa Bay Way, Palmetto, Florida 34221, and HRK HOLDINGS, LLC ("HRK"), a Florida limited liability company, with a principal place of business located at 357 West Sunrise Highway, Freeport, New York 11520, for and in consideration of the mutual covenants herein contained and other good and valuable consideration hereby enter into this Port Manatee Dredge Materials Containment Agreement Amendment #3 ("Amendment #3") and hereby amend, modify and supplement the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1") between the parties dated November 15, 2007, and the Port Manatee Dredge Materials Containment Agreement Amendment #2 ("Amendment #2") between the parties dated August 24, 2010, and state as follows:

1.    **REPRESENTATIONS.** This Amendment #3 shall only amend, modify and supersede paragraph 2(C) of Amendment #2. All other provisions, paragraphs and subsections in the Original Agreement, Amendment #1, and Amendment #2 shall remain binding upon the Authority and HRK.

2.    **COMPENSATION FOR ANTICIPATED PROJECT.** HRK has agreed to accept certain installment payments if the contractor is mobilized to perform the dredging as provided for in Phase I and II of the project. The parties agree that such installment payments shall be made by the Authority to HRK as follows:

(1.)$500,000 to be paid on or before December 31, 2010, and such payments have been made and received by HRK;

1

(2.) $350,000 to be paid on or before July 1, 2011,  in consideration for HRK's agreement  to continue progress at the maximum speed practical to make the necessary repairs to the dredge disposal facility located within the Stacks that will  allow  the  Authority's  contractor  (Great  Lakes  Dredge  and  Dock, hereinafter "Great Lakes") to restart and complete the project;

(3.) $150,000 to be paid immediately after all of the following occur: (a) all necessary repairs are made by HRK to the dredge disposal facility located within the Stacks such that the Authority's contractor ("Great Lakes") can restart and complete the project;  (b) written approval is received from the Florida Department of Environmental Protection ("FDEP") to restart the disposal of the dredge spoil at the HRK facility; (c) dredge operations have been restarted by the Authority's contractor (Great Lakes) to the operational levels contracted for by the Authority and Great Lakes;  and (d) after Great Lakes has completed 48 hours of continuous dredging.

(4.) Subject to authorization from the Authority, $500,000 to be paid  after the project has been fully completed and certified by all of the following:  the Authority's contractor (Great Lakes); the Authority's consulting engineers; the Authority's engineer; and, after the U.S. Coast Guard, the Tampa Bay Pilots Association and any other legally required governmental entity has confirmed and certified that the dredging project has been fully completed per the bid specifications and Berth 12 is ready to receive vessels for the class and type for which it was designed.

(5.) $500,000 to be paid on or before June 30, 2012; and

(6.) Any remaining balance, currently estimated at $387,500, to be paid on or before December 31, 2012.

3.     **CONFLICT.**   In the event of a conflict regarding the provisions set forth in paragraph 2 (C) of this Amendment #3 and the Original Agreement, this Amendment #3, shall prevail.   In the event of a conflict regarding the provisions set forth in paragraph 2 (C) of this Amendment #3 and the Amendment #1, this Amendment #3 shall prevail. In the event of a conflict regarding the provisions set forth in paragraph 2 (C) of this Amendment #3 and the Amendment #2, this Amendment #3 shall prevail.

4.     **SAVINGS PROVISION.**   Except to the extent herein amended, the Port Manatee Dredged Materials Containment Agreement ("Original Agreement") between the parties dated April 19, 2007, and the Port Manatee Dredged Materials Containment Agreement Amendment ("Amendment #1") between the parties dated November 15, 2007,  and the Port Manatee Dredged Materials Containment Agreement Amendment #2 ("Amendment #2) between the parties dated August 24, 2010, shall remain binding and in full force and effect.

IN WITNESS WHEREOF, the parties have caused this Port Manatee Dredged Materials Containment Amendment #3 to be duly executed in duplicate this the _30th_ day of _June_ _____, 2011.

ATTEST: R. B. SHORE
          Clerk of Circuit Court


By: _____
Printed: _____

MANATEE COUNTY PORT AUTHORITY


By: _____
     David McDonald, PPM
     Executive Director

3

WITNESSES:                                    HRK HOLDINGS, LLC.

_(signature)_                          By: _(signature)_
                                            (Jordan Levy)
_(signature)_                               CEO

STATE OF FLORIDA
COUNTY OF _Manatee_

    The foregoing instrument was acknowledged before me this the _30th_ day of _June_,
_____, 2011 by _Jordan H. Levy_ , as the _CEO_ of _HRK Holdings, LLC_ a Florida
corporation, who is personally known to me or who has produced _NY/DL 636366174_ as
identification and who did not take an oath.

                                    _(signature)_
                                    Notary Public

SHEILA R. NEAL
Comm# DD0764523
Expires 4/27/2012
Florida Notary Assn., Inc

4