IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

  *Plaintiffs,*

*v.*                                                          Case No. 8:21-cv-1521

GOVERNOR RON DESANTIS, et al.,

  *Defendants.*

## GOVERNOR DESANTIS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs' omnibus response to Defendants' motions to dismiss ("Response") recycles two theories of Article III standing against Governor DeSantis. Neither suffice. First, they claim Governor DeSantis, as head of Florida's Executive Branch, is responsible for FDEP's actions at Piney Point. Second, they argue this role makes Governor DeSantis an "operator" of Piney Point, which provides them standing because it makes him a proper defendant in RCRA citizen suits.

These arguments fail for three reasons. First, Governor DeSantis' general supervisory authority over the Executive Branch does not establish Article III standing. Second, Governor DeSantis is not an "operator" of Piney Point. Third, Governor DeSantis is a redundant defendant. For each reason, this Court should grant Governor DeSantis' Motion to Dismiss the Second Amended Complaint ("Motion") and dismiss this action against him.

## I. General Supervisory Authority Does Not Establish Article III Standing

Plaintiffs allege that "[b]ecause of Governor DeSantis's role as the head of the executive branch, all actions taken by FDEP and Secretary Hamilton at Piney Pont are ultimately his responsibility." Response, at 8.[1] In effect, they argue that every action (or inaction) by an agency employee is automatically imputed, and thereby traceable, to Governor DeSantis. They are wrong. Indeed, they cite zero authority for this sweeping proposition, despite their clear burden to prove standing. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Moreover, even if Governor DeSantis is ultimately responsible for all agency actions, recent binding Eleventh Circuit precedent makes clear that a public official's supervisory authority does not make actions committed by those under him traceable to him. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1204-05 (11th Cir. 2021); *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020). In *Jacobson*, the Eleventh Circuit held that the Florida Secretary of State's role as chief elections officer and her "general supervision and administration of the election laws" does not make injuries arising from those election laws traceable to her. 974 F.3d at 1254. Likewise, in *Support Working Animals*, the Eleventh Circuit found that the Attorney General's supervisory authority over the Statewide Prosecutor and "general superintendence and direction" over state attorneys does not trace injuries arising from enforcing constitutional amendments back to her. 8 F.4th at 1204. The same principle

---

[1] To be clear, Governor DeSantis disputes this claim, despite Plaintiffs' assertion.

2

applies here – Governor DeSantis' role as head of the Executive Branch does not make all agency actions traceable to him.

Instead, to establish causation, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant[.]" *Jacobson*, 974 F.3d at 1253 (quoting *Lujan*, 504 U.S. at 560). In other words, Plaintiffs must allege that Governor DeSantis took – or failed to take – a "challenged action" that caused their injury. Plaintiffs' Response acknowledges this point by stating that "Article III standing requires a plaintiff's alleged constitutional injury to be fairly traceable to the challenged actions of a defendant." Response, at 11. And despite Plaintiffs' attempts to narrowly distinguish them, the three Eleventh Circuit cases Governor DeSantis relied upon in his Motion stand for this proposition. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296 (11th Cir. 2019) (*en banc*) ("But what, exactly, do they say the Attorney General did wrong – how, exactly, do they trace their injuries to his conduct?"); *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265–66 (11th Cir. 2011) (finding no causation because plaintiffs "failed to allege an action of the [Defendant] that had caused [Plaintiff] any injury."); *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) ("Because there is no 'challenged action' by the Attorney General, [Plaintiff]'s injuries are not 'fairly traceable' to the only defendant before the Court.").

The Second Amended Complaint, however, does not allege a single act or omission by Governor DeSantis – besides leading the Executive Branch. And, as discussed above, that role alone does not establish traceability for agency actions. Accordingly, Plaintiffs do not have standing against Governor DeSantis.

## II. Governor DeSantis is Not An "Operator" of Piney Point

Plaintiffs' theory that Governor DeSantis is an "operator" of Piney Point likewise fails to establish their standing to sue him.[2] Specifically, Plaintiffs allege that Governor DeSantis, as head of the Executive Branch, "shares in a measure of control over the solid and hazardous waste at Piney Point" and thereby "contribut[es] . . . to the past and present handling, storage, treatment, transportation, and/or disposal of solid and hazardous waste at Piney Point." Second Amended Complaint ("SAC"), ¶¶ 341, 343. In addition, they claim he "directly supervises and controls HRK's ownership and operation of Piney Point." SAC, ¶ 33.[3] They insist that both allegations convert Governor DeSantis into "a past and present . . . operator of Piney Point." *Id.*, at ¶ 341; *see* 42 U.S.C. § 6972(a)(1)(B) (authorizing RCRA citizen suits against "past or present owner(s) or operator(s) of a treatment, storage, or disposal facility.") And they argue that this role provides them standing because it makes Governor DeSantis a proper defendant in RCRA citizen suits. *See* 42 U.S.C. § 6972(a)(1)(B).

Plaintiffs are wrong for at least three reasons. First, they provide no support for their conclusory allegation that Governor DeSantis is an "operator" of Piney Point. *See* SAC, ¶¶ 341, 336. Instead, they rely on the above conclusory allegations that Governor DeSantis (1) controls and contributes to the hazardous waste at Piney Point,

---

[2] The Second Amended Complaint alleges that Governor DeSantis is an owner and an operator of Piney Point. SAC, ¶ 341. The Response, however, argues that he is merely a "past and present . . . operator of Piney Point." Response, at 8. Given their acknowledgement that he is not an "owner," Governor DeSantis will not argue this point here, but reserves the right to contest it at the hearing on his Motion and on appeal.

[3] Governor DeSantis also disputes this allegation.

4

and (2) supervises and controls HRK's ownership and operation of the site. *See* SAC, ¶¶ 33, 341, & 343.[4] But conclusory allegations alone do not provide standing. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021).

Second, accepting Plaintiffs' standing theory – that agencies and agency heads overseeing hazardous waste facilities are thereby "operators" of such facilities – would subject state and federal regulators to RCRA citizen suits designed to be brought against private owners and operators of hazardous waste facilities. Indeed, Plaintiffs' interpretation would arguably transform this Court into an "operator" of Piney Point – and thereby subject it to the same citizen suits – if it grants Plaintiffs' request to supervise the investigation and closure of Piney Point. *See* SAC Request for Relief ¶¶ 4, 9. Congress clearly did not intend this outcome when drafting RCRA. And it is well settled that courts interpret statutes to avoid such absurd results. *See, e.g.*, *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333 (1938) ("[T]o construe statutes so as to avoid results glaringly absurd, has long been a judicial function.")

Last, RCRA's proper party guidelines do not obviate Article III standing. Indeed, whether Governor DeSantis could be sued under RCRA does not affect Plaintiffs' standing to bring such a suit. Rather, Plaintiffs must establish their standing

---

[4] Plaintiffs cite Governor DeSantis' statements to bolster their claim that he is an "operator," but they did not include them in, or attach them to, any of their three complaints. Accordingly, this Court cannot consider them. *See, e.g.*, *Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1321 n.1 (M.D. Ga. 2020) (stating the established principle that "[a] court ordinarily does not consider anything beyond the face of the complaint and documents attached thereto when ruling on a motion to dismiss," and listing the exceptions, none of which apply here) (citing *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018)).

5

to sue, independent of RCRA, because "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). And as demonstrated in the Motion and above, Plaintiffs lack standing because they do not trace their alleged injuries to Governor DeSantis. Thus, even if Governor DeSantis were an "operator" of Piney Point – and thereby subject to suit under RCRA – Plaintiffs would still not be able to bring this action against him.

### III.   Governor DeSantis is a Redundant Defendant

Last, even if this Court finds that Plaintiffs have standing against Governor DeSantis, it should dismiss this action against him because he is redundant.

Official-capacity suits are, in fact, actions against the public entity of which the public official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, plaintiffs in these actions can obtain the same relief from the public official(s) or the public entity. *See, e.g.*, *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) (finding plaintiff could obtain complete relief from the Florida Department of Health in action against the Department head and the Governor in his official capacity). This makes public officials in such suits redundant. *See, e.g.*, *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("To keep both the City and the [municipal] officers sued in their official capacity as defendants in this case would have been redundant . . . ."). Accordingly, courts routinely dismiss actions brought against public officials in their official capacity where the public entity remains a defendant. *See, e.g.*, *Higdon v. Tusan*, 746 F. App'x 805, 814-15 (11th Cir. 2018) (affirming dismissal of county

commissioner sued in his official capacity where county remained a defendant); *Ala. State Conference of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1339 (N.D. Ala. 2019) (same); *Brenner*, 999 F. Supp. 2d at 1286; *compare Busby*, 931 F.2d at 776 (affirming directed verdict dismissing action against municipal official in his official capacity where municipality remained a defendant).

That is the case here. Plaintiffs allege Count I against FDEP and Governor DeSantis in his official capacity. Thus, FDEP can provide Plaintiffs' requested relief, making Governor DeSantis redundant. Accordingly, this Court should dismiss the action against him. And it should dismiss with prejudice because Plaintiffs' amending their pleading as to Governor DeSantis is futile. *See, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (holding district courts may amend action with prejudice "where amendment would be futile.") Such an amendment will not dismiss FDEP. Thus, Governor DeSantis will always be redundant. And there is ample precedent for dismissing an action against redundant public officials with prejudice. *See, e.g.*, *Rowe v. City of Fort Lauderdale*, 8 F. Supp. 2d 1369, 1375 n.7 (S.D. Fla. 1998) (dismissing with prejudice action against agency employee in her official capacity as redundant because plaintiff also brought action against the agency she represents); *Garrett v. Clarke Cty. Bd. of Educ.*, 857 F. Supp. 949, 952 (S.D. Ala. 1994) (same); *Kubany by Kubany v. Sch. Bd. of Pinellas Cty.*, 818 F. Supp. 1504, 1507 (M.D. Fla. 1993) (same).

## CONCLUSION

This Court should grant Governor DeSantis' Motion to Dismiss the Second Amended Complaint for the reasons outlined in his Motion (ECF 55) and this Reply.

Dated: February 3, 2022

Respectfully submitted,

**RON DESANTIS
GOVERNOR**

/s/ *Nicholas J.P. Meros*
NICHOLAS J.P. MEROS (FBN 0120270)
*Deputy General Counsel*
**EXECUTIVE OFFICE OF THE GOVERNOR**
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Nicholas.Meros@eog.myflorida.com

*Counsel to Governor Ron DeSantis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of February, 2022, a true and correct copy of this document was filed electronically with the Clerk of Court through the CM/ECF filing system, which provides notice to all counsel of record.

/s/ *Nicholas J.P. Meros*