# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER, SUNCOAST WATERKEEPER, MANASOTA-88, and OUR CHILDREN'S EARTH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR RON DeSANTIS<br>and<br>SHAWN HAMILTON, in his official capacity as ACTING SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br>and<br>HRK HOLDINGS, LLC<br>and<br>MANATEE COUNTY PORT AUTHORITY,<br><br>Defendants. | Case No.: 8:21-cv-001521 |

## DEFENDANT, MANATEE COUNTY PORT AUTHORITY'S
## REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, Manatee County Port Authority (the "Port"), by and through its undersigned counsel, and pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., Local Rule 3.01 and this Court's Endorsed Order entered December 22, 2021 (Doc. 64), hereby files its reply in support of its Motion to Dismiss (Doc. 56), and in support thereof states as follows:

## Introduction

RCRA's primary purpose is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). Accordingly, RCRA establishes a "cradle to grave" regulatory scheme for wastes it deems to be "hazardous." Nonhazardous wastes are less stringently regulated under RCRA as "solid waste." *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331-32 (1994). Materials that have a beneficial use or have been defined by regulation as non-waste are not subject to the RCRA regulatory scheme of liability.

The 1980 Bevill Amendment to RCRA suspended EPA's authority to regulate "special wastes," including mining and mineral processing wastes, as hazardous under RCRA Subtitle C until six months after EPA's completion of a detailed study on the adverse human health and environmental effects and a published Bevill determination for each particular category of special waste. In 1991, mineral processing wastes, including phosphogypsum and process wastewater, were added to the list of Bevill exempt wastes. Bevill wastes are not subject to regulation as hazardous wastes under RCRA.

Citizens may bring suit to enforce RCRA's provisions. Section 7002 of RCRA authorizes any person who has provided the statutorily prescribed notice of intent to sue to commence a civil action:

> against any person, including the United States ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ...

42 U.S.C. § 6972(a)(1)(B).

Plaintiffs have sued all the named defendants under RCRA's citizen suit provision, 42 U.S.C § 6972(a)(1)(B), for an alleged violation of the statute giving rise to an alleged substantial endangerment to human health and the environment based on activities at the Piney Point Phosphate Facility ("Piney Point"). In addition, the Second Amended Complaint asserts a claim against, HRK Holdings, Inc. ("HRK") and the Florida Department of Environmental Protection ("FDEP") alleging a violation under the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C. §§1251-1387.

The Port is a dependent special district. It does not own or operate Piney Point and has not had any involvement at Piney Point since 2011. In 2011, after receiving all requisite federal and state permits, the Port placed dredged materials at Piney Point for the beneficial purpose of providing cover for the liners on the gypsum stacks. The Port's limited involvement with the Piney Point site does not amount to a cause of action under RCRA's citizen suit provisions. Thus, for the reasons expressed below and the Port's Motion to Dismiss (Doc. 56), the Second Amended Complaint should be dismissed.

## Memorandum of Law

Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss (the "Response") conflates issues and fails to remedy the defects in Plaintiffs' Second Amended Complaint. With respect to the Port, Plaintiffs argue that their injuries are fairly traceable to the Port's disposal of dredged materials at Piney Point, their injuries are redressable, that the case is not moot, that their claims are properly noticed, and that the Court should reject the Port's arguments raised in the Port's Motion to Dismiss. The Port maintains its original arguments set forth in Doc. 56 and further explains its position on new arguments raised as follows.

### I.  Grounds for Dismissal Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Federal Rules of Civil Procedure.

Plaintiffs' begin their Response by stating that Defendants' **handling** of solid and hazardous waste at Piney Point presents an imminent and substantial endangerment in contravention of RCRA, despite the fact that the Port is not a party that has handled waste at Piney Point.  (Doc. 50, p. 48, 73; Doc. 69, p. 5)(*emphasis added*).  The Port's sole involvement with Piney Point was the placement of dredged materials to cover the gypsum stack liners at Piney Point pursuant to Federal and State permits. While Plaintiffs vehemently argue that the Port's activities violate federal law, the Port obtained and complied with all applicable state and federal regulations, and Plaintiffs' have made no allegations to the contrary.  Moreover, the Plaintiffs have not alleged that: (1) the Port is a person who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment,

storage, or disposal facility; (2) the Port has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) solid or hazardous waste presents an imminent and substantial endangerment to health or the environment. Solid Waste Disposal Act, § 7002(a)(1)(B), as amended, 42 U.S.C. § 6972(a)(1)(B). ("RCRA") (*emphasis added*).  Thus, the Plaintiffs have failed to state a claim for which relief may be granted and this action must be dismissed. In addition, despite filing numerous affidavits in an effort to establish standing, Plaintiffs fail to meet certain elements of Article III standing to maintain their Second Amended Complaint.

    **a. The Port did not create a new leachate and the Bevill Amendment is not lost – Thus, Plaintiffs' injuries are not fairly traceable to the Port's disposal of dredged materials at Piney Point.**

Plaintiffs state that this case is about accountability, and while that may be Plaintiffs' intent, the Port is not a party responsible for Plaintiffs' grievances. Specifically, Plaintiffs' attempt to tie liability to the Port by claiming that the dredged materials placed at the site created a new hazardous leachate at Piney Point that was subsequently released into the environment. Notably, Plaintiffs have provided no factual explanation supporting their bare legal conclusion that the "new" leachate exhibits any characteristics that are not already present in RCRA Schedule C exempt process water and phosphogysum. *Robinson v. Jewish Ctr. Towers*, Inc., 993 F. Supp. 1475, 1476 (M.D.Fla.1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as

factual conclusions."). As fully briefed in the Port's Motion to Dismiss, the dredged materials delivered to Piney Point over ten years ago as a matter of law were neither hazardous waste nor solid waste as defined by RCRA.

Moreover, Plaintiffs know that their only recourse lies in a legislative or administrative forum and not this Court. Plaintiffs have long lobbied for a change to the Bevill Amendment which provides the regulatory exemption for phosphogypsum facilities. Plaintiffs have, as recent as last year, petitioned EPA to initiate rulemaking to change the regulation of phosphogypsum and process wastewater. *See* Petition for Rule Making attached hereto as **Exhibit "A."**[1] As stated in the outset of their response, Plaintiffs identify Piney Point as a problem for decades, "leaking liners, failing impoundments and groundwater contamination". (Doc. 69, p. 4). As Plaintiffs acknowledge, the regulatory challenges at Piney Point are endemic to phospogpypsum facilities, but the U.S Congress and EPA have chosen to address the problem by exempting the waste from the proactive injunctive relief regulation available for hazardous waste in Subsection C of RCRA, and instead determined it should be treated simply as regulated solid waste. The Plaintiffs' knowledge of phosphogysum facilities and their chemical makeup is also specifically set forth in paragraphs 47-56 of the Second Amended Complaint.

---

[1] The Port respectfully requests that the Court take Judicial Notice of Exhibit A for the same legal reasons expressed in its Motion for Judicial Notice of Motion to Dismiss Exhibits, Doc. 57. Pursuant to Local Rule 3.01, the Port has conferred with Plaintiffs regarding this request, and Plaintiffs stated that they will take a position on this document after it sees how the Port will use it in connection with this Reply.

To maintain this action under RCRA, Plaintiffs seek to get around the Bevill Exemption by going back ten years in time when the Port placed dredged materials at Piney Point as part of a Corps and FDEP permitted project pursuant to Section 404 of the CWA. Plaintiffs claim that the mixing of the dredged materials and the phospogypsum material under the liner covering the phosphogypsum stack created a leachate that is now a regulated hazardous waste. (Doc. 50, p. 47). More specifically Plaintiffs claim this "new" leachate is what was released to Tampa Bay due to the recent facility failures at Piney Point. This legal argument appears to be based on statements made by the U.S Army Corps of Engineers (the "Corps") who suggested it as a possibility and recent groundwater sampling taken at the Piney Point site.

Plaintiffs essentially assert that the combination of dredged material and phosphogypsum waste falls under the narrow provisions in RCRA that allows a phosphogypsum facility to lose its hazardous waste exemption where operations allow the introduction of a non-exempt hazardous waste to mix with the phosphogypsum waste and create a new hazardous waste which is subject to hazardous waste regulation. (Doc 50, ¶¶ 58-60). Although a creative stretch of time, physics, fact and law, Plaintiffs' argument fails as a matter of law because there is no legal authority for the claim that phosphogypsum exempt waste (40 C.F.R. § 261.4(b)(7)(D)), when mixed with dredged materials, a legislatively declared non-hazardous waste (40 C.F.R § 261.4(g)), equates to the factual scenario where phosphogypsum waste can lose its RCRA protection.

The Plaintiffs' rulemaking petition is also instructive because all of the grievances that Plaintiffs raise regarding Piney Point, which the reader of the Second Amended Complaint and Response would be led to believe are unique to Piney Point, are in fact charges levied against all phosphogypsum facilities in the Rulemaking Petition.  Claims that the stacks are dumps, that stacks with liners still leak, that the stacks are unstable and given to failure, that they contain hazardous materials and generate hazardous leacheate, are all discussed in the Petition as issues across the industry.  It is clear in comparing the allegations in Plaintiffs' Petition to the allegations in the Second Amended Complaint, attachments and public records, that there is nothing unique to Piney Point that would suggest that it should lose the RCRA exemption, or that the Port's limited involvement by placing dredged materials at the site contributed to an imminent and substantial endangerment to health or the environment ten years later.

Thus, the Plaintiffs' injuries are not fairly traceable to the Port. Nothing about the dredged materials caused a leachate to form that wasn't already at Piney Point. Rather, the dredged materials were used as part of a solution to protect the liner covering the phosphogysum stacks. The breach that occurred a decade later by the Plaintiffs own admission contained no new leachate or anything directly attributable to the dredged materials. (*see e.g* Doc. 69, p.  39).  Moreover, operational and regulatory decisions resulted in the release to Tampa Bay in 2021 not the placement of dredged materials in 2011.

Plaintiffs know that they must identify a new hazardous waste, different from what is expected to be found in phosphogypsum stacks, to be able to maintain their RCRA endangerment claim against the Port, but ultimately, all Plaintiffs identify in their Second Amended Complaint and Response by way of a "new" hazardous material is arsenic found in testing of Piney Point groundwater wells (notably Plaintiffs cite to no testing revealing a hazardous substance in the water discharged to Tampa Bay). Arsenic is naturally occurring in groundwater, often above standards, but is also a known constituent of phosphogypsum leacheate as stated in the Rulemaking Petition to which Plaintiffs are a party (Exhibit "A", p. 19). The Plaintiffs' Second Amended Complaint and Response fail to specify how the Port's dredged materials present an imminent and substantial endangerment to health or the environment and do not identify injuries that are fairly traceable to the Port. While the Response attempts to remedy the Second Amended Complaint's deficiency on this front, the legal conclusions are simply not sufficient to withstand a Motion to Dismiss for the reasons set forth above and in the Defendants' Motions. Therefore, the Second Amended Complaint must be dismissed.

### b. Plaintiffs have failed to identify a new hazardous waste and thus their notice of intent to sue is insufficient.

Compliance with RCRA's notice requirements with respect to substance and timing is mandatory, not optional, and a condition precedent to commencing a RCRA citizen suit. *Hallstrom v Tillamook County,* 493 U.S. 20, 26 (1990); *see also*

*Brod v. Omya, Inc.,* 653 F.3d 156, 165 (2d Cir. 2011). The notice letter must contain "sufficient information" regarding any alleged RCRA violation. 40 C.F.R. § 254.3(a). "[T]he information provided must include the pollutant alleged to be the basis of a violation subsequently alleged in the complaint," and "the [notice] letter must differentiate pollutants from non-pollutants and one pollutant from another." *Brod,* 653 F.3d at 166-68.

The Plaintiffs' notice is deficient as it does not specifically identify a hazardous waste that would not already be present at Piney Point. Because the constituents of Plaintiffs' alleged "new waste material" are all exempt, Plaintiffs must affirmatively show—with particularity—how the "new" "mixture" satisfies the legal criteria to be considered "hazardous" waste subject to RCRA. Plaintiffs have identified no such new property and admits as much in their Response – see pages 38-40 – it is not enough that the Plaintiffs allege the existence of a hazardous waste leachate – Plaintiffs know that phosphgypsum stacks create a leachate and that leachate has hazardous properties. Rather, Plaintiffs are required to specifically identify the hazardous waste at issue. Without this identification, the Notice is insufficient, and the Plaintiffs Second Amended Complaint must be dismissed.

### c. The dredged materials are not a solid waste that present an imminent and substantial endangerment to health or the environment.

While RCRA liability may attach to a transporter of solid waste, merely transporting solid waste does not create RCRA liability; only the transportation of solid waste that may create an imminent and substantial danger does. *Cal. River*

*Watch v. City of Vacaville,* 14 F.4th 1076, 1081-82 (9th Cir. Sep. 29, 2021).[2] The same is true for a generator of solid waste. *See e.g Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993 (11th Cir. 2004). In this case the dredged materials, are 1) not solid waste as explained in the Port's Motion to Dismiss, and 2) have at no time presented an imminent and substantial endangerment to health or the environment.

If the Court determines the dredged material may be considered solid waste under RCRA, the imminent and substantial endangerment prong of RCRA is still not met. The dredged materials consist of uncontaminated matter including sand, silt, and seawater. While a potential CWA issue, if the dredged materials escaped confinement, there was not imminent and substantial endangerment to health or the environment posed. Because the operative word in 42 U.S.C. § 6972(a)(1)(B) is 'may,'… the Plaintiffs must show that there is a potential for an imminent threat of a serious harm. *Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1015 (11th Cir. 2004). "[A]n endangerment is substantial where there is *reasonable cause for concern* that someone or something may be exposed to risk of harm" (emphasis added). *Burlington N. & Santa Fe Railway. Co. v. Grant,* 505 F.3d 1013, 1021 (10th Cir. 2007). "[A]n endangerment can only be 'imminent' if it 'threatens to occur immediately.' " *Meghrig,* 516 U.S. at 485; *Parker* 386 F.3d *at* 1015.

---

[2] There are other criteria that a Plaintiff must demonstrate in order to establish liability under a RCRA endangerment claim as set forth above and in the Port's Motion to Dismiss. As detailed therein the Port has similarly not contributed to a solid waste that may present an imminent and substantial endangerment to heath and the environment.

This is simply not the case in the context of the dredged materials, and Plaintiffs have failed to show that there was a potential for an imminent threat of serious harm from the dredged materials. There was never any indication that the dredged materials would or have escaped the Piney Point site and would or have caused harm. Again, the Port complied with all necessary permits, and while Plaintiffs maintain that the Port did not do its due diligence prior to utilizing Piney Point, the record simply does not reflect their legal conclusion masquerading as fact. Moreover, the harm Plaintiffs complain of occurred a decade after the dredged materials were placed at Piney Point. The Plaintiffs' allegations fail to tie the dredged materials to their alleged harm that occurred in 2021. Therefore, Plaintiffs have failed to state a claim for which relief may be granted, and the Second Amended Complaint should be dismissed as to the Port.

### d. The Port has a valid CWA permit for its dredging activity and RCRA's anti-duplication provisions apply

As proof that the Port should have known of the dangers of placing the dredged materials at Piney Point, the Plaintiffs rely on correspondence from the U.S Army Corps of Engineers (the "Corps"). However, the Plaintiffs' own Exhibit 6 to its Response to Motions for Judicial Notice indicates that the Corps confirmed that the Port was permitted to place dredged materials at Piney Point. (Doc. 71-6, p. 4). ("[i]f Piney Point was not recommended by GRR#6, the port could use Piney Point providing the port did the work, funded the work, and did not seek federal reimbursement funding").

The correspondence and conversations between the Corps, FDEP, and the Port references the Corps' involvement in the Manatee Harbor Project – a fact that the Plaintiffs clearly misunderstand and have failed to fully investigate. The Corps was not disallowing the Port's use of Piney Point as an upland disposal facility but rather was explaining why it – the Corps - did not want to use Piney Point for the dredged materials the Corps itself would create during its own dredging as part of the Manatee Harbor Project. The reasoning was that although unlikely there MAY BE some risk of liability to the Federal Government.  Moreover, as Exhibit 7 to Plaintiffs' Response to Motions for Judicial Notice explains, the Corps had a policy against using sites like Piney Point for its upland dredged material containment facilities.  (Doc. 71-7, p. 3)

The Port, FDEP, and HRK completed extensive analysis prior to the placement of the dredged materials in 2011. Only after such analysis was completed and FDEP issued all requisite permits did the Port commence with the dredging project whereby the dredged materials would be sent to Piney Point. At no time was Piney Point not considered an upland disposal site for the Port's dredged materials under 404 of the CWA.

Plaintiffs' attempt to get around this clear fact by arguing that the Corps' correspondence indicates that the Corps somehow withdrew its 2007 permit modification designating Piney Point as an upland disposal site.  The documents for which Plaintiffs request judicial notice contradict this claim. (See e.g Doc. 71-6).  The documents explain the Corps position with respect to the dredged

materials that it would generate or pay for the disposal of. *See* Exhibit 6 to Plaintiffs' Response to Motions for Judicial Notice ("[t]he purpose of this letter is to clarify… concerning use of this spoil site [Piney Point] when federal dollars are involved). (Doc. 71-6, p. 3). As required by the CWA, Piney Point was approved as an upland disposal site by both the Corps as part of a permit modification to the Port's CWA 404 Permit and by FDEP through the issuance of ERP 0129291-016-EM. The fact that later correspondence from the Corps refers to Piney Point as an upland site, and therefore does not impact any jurisdictional wetlands simply does not equate to the Port acting outside its validly issued 404 permit for the Berth 12 Expansion including the original permit modification designating Piney Point as an upland disposal facility.

      Plaintiffs make this creative but inaccurate argument regarding the CWA out of the necessity to avoid RCRA's antiduplication provision. RCRA's anti-duplication provision restrains RCRA's application with respect to "any activity or substance which is subject to" the CWA except to the extent that such application is not inconsistent with the requirements of the CWA. 42 U.S.C. § 6905(a). To regulate dredged materials under RCRA directly conflicts with Section 404 of the CWA and is completely inconsistent with the CWA. Section 404 requires a permit before material may be dredged from waters or jurisdictional wetlands or discharged into waters or jurisdictional wetlands.. A dredging project, such as the Berth 12 Expansion, triggers the CWA requirement for a 404 permit. As part of a dredging project, the agency will regulate the placement of dredged materials

impacts to jurisdictional waters or wetlands. See e.g 33 U.S.C § 1344. This is often accomplished by ensuring a spoil placement site is located to avoid any impacts, and that specific location or conditions governing placement are specific requirements of the 404 permit. *Id*, 40 C.F.R part 230; see also Doc. 56-3. To say that the designation of that site is somehow outside of the 404 process, thereby subjecting the dredger to RCRA regulation, is not consistent with the CWA's regulatory regime. Plaintiffs do not allege a violation of the Port's CWA permit but instead attempt to argue that a permit did not exist, because the Corps notes that the Piney Point is an upland site and therefore did not impact any jurisdictional wetlands. The whole point of the CWA regulation under 404 is to first avoid impacts to waters of the United States (including jurisdictional wetlands), or alternatively minimize and mitigate those impacts.

### e. Plaintiffs' Injuries are not Redressable by the Court.

RCRA does not permit a citizen suit for damages for past environmental harm and authorizes only prospective relief to address threatened future harm. *Meghrig* at 485. While judicial authority to grant injunctive relief under the RCRA is broad, it is granted only to the extent necessary to abate the danger and is not intended to determine blame or apportion fault. *87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215,1221 (S.D.N.Y. 2002). As required by RCRA § 7002(a)(1)(B), where remedial action is underway, the plaintiff must show how the defendant's participation is necessary in order to withstand a RCRA cause of action. See e.g *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 867 F. Supp. 2d

754, 763 (W.D. Pa. 2012), *aff'd in part, vacated in part*, 735 F.3d 131, 140 (3rd Cir. 2013). In this case, Plaintiffs fail to allege how the Port is a necessary party in the remediation efforts and how injunctive relief against the Port addresses future harm. The Response attempts to remedy this by arguing that the Plaintiffs injuries are redressable against the Port because RCRA provides for broad injunctive relief. See Doc 69, p. 14. Specifically, the Plaintiffs in their Response clarify that they

> …seeks injunctive and remedial relief under federal law, well beyond the closure of the "stack system." ¶¶ 2-5, 7, 9. The SAC asks the Court to require Defendants to undertake a RCRA corrective action study to "diagnose, evaluate, monitor, and abate *all* sources of contamination and endangerment at Piney Point," *id.* at 93 ¶¶ 2-5; requests that the Court order Defendants to obtain a lawfully-issued NPDES permit to come into compliance with the CWA, *id.* at 94, ¶ 7; and requests injunctive relief requiring Defendants to draw down the impoundments to prevent the possibility of future discharges. *Id.* at 94, ¶ 9.

Doc. 50, ¶¶ 2-5, 7, 9; p. 93, ¶¶ 2-5; p. 94, ¶¶ 7, 9; Doc. 69, p. 16-17. To the extent the Port's dredged materials, a non-waste, somehow contributed to an environmental harm subject to RCRA liability, which the Port maintains it does not, the requested relief is simply not available from the Port, nor is the Port necessary in granting said relief or assisting in remedying the harm. Sanctions against the Port are similarly inappropriate under RCRA and do nothing to prevent future harm or alleviate Plaintiffs' alleged injuries. The Port complied with all applicable regulations and has sought other arrangements for its future dredging projects. What role the Port could even play in a RCRA corrective study remains entirely unclear, as the Port has no authority to perform studies or even enter Piney Point. The same is true with respect to a draw down or with respect to the groundwater

issues the Plaintiffs discuss. It is also worth noting that although the Response seems to indicate the NDEPS permit request would apply to all Defendants, the Plaintiffs confirmed in writing that the CWA allegations were specifically not raised against the Port. Thus, to the extent the Plaintiffs want the Court to require the Port to obtain an NPDES permit, some explanation for why it is needed is necessary to comply with the pleading standard and state a cause of action for which relief may be granted.

## II. <u>Conclusion</u>

For the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice and without leave to amend as to the Port. On a final note, the fact that a RCRA citizen suit cause of action does not exist in this case and against the Port does not mean that Piney Point is not subject to regulation and is not being actively addressed by the State of Florida. The Plaintiffs have other more appropriate remedies available. In fact, the Plaintiffs acknowledge the action being taken by FDEP in state court and have the ability to intervene in that proceeding.

Respectfully submitted this 4th day of February, 2022.

/s/ *Kevin S. Hennessy*
KEVIN S. HENNESSY, ESQUIRE
Florida Bar No. 0602558
NICOLE J. POOT, ESQUIRE
Florida Bar No. 0118858
LEWIS, LONGMAN & WALKER, P.A.
100 Second Avenue South, Suite 501-S
St. Petersburg, FL 33701
Telephone: (727) 245-0820
Facsimile: (727) 290-4057
Primary Email: khennessy@llw-law.com
npoot@llw-law.com
Secondary Email: jbissette@llw-law.com
jdavy@llw-law.com
*Counsel for Manatee County Port Authority*

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to the following counsel of record, on this 4th day of February, 2022:

Charles M. Tebbutt, Esq.
Daniel C. Snyder, Esq.
B. Parker Jones, Esq.
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR  97401
Tel: (541) 344-3505
Fax: (541) 344-3516
charlie@tebbuttlaw.com
dan@tebbuttlaw.com
parker@tebbuttlaw.com
*Co-Counsel for Plaintiffs*

Jaclyn Lopez, Esq.
Center for Biological Diversity
PO Box 2155

Justin Bloom, Esq.
PO Box 1028
Sarasota, FL 34230
Tel: (941) 275-2922
Bloomesq1@gmail.com
*Co-Counsel for Plaintiffs*

Nicolas J. P. Meros, Esq.
Deputy General Counsel
Executive Office of the Governor
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL  32399
Nicholas.Meros@eog.myflorida.com
Gov.legal@eog.myflorida.com
Tel: (850) 717-9310

St. Petersburg, FL  33731
Tel: (727) 490-9190
jlopez@biologicaldiversity.org
*Co-Counsel for Plaintiffs*

Jesse L. Ray, Esq.
Jesse Lee Ray Attorney at Law, P.A.
13014 N. Dale Mabry Hwy., #315
Tampa, FL  33618-2808
jray@jesseleeray.com
efile@jesseleeray.com
Tel: (813) 443-9701
Fax: (866) 523-5468
*Counsel for HRK Holdings, LLC*

Fax: (850) 488-9810
*Counsel for Governor Ron DeSantis*

Jeffrey Brown, Esq.
Assistant General Counsel
Department of Envir. Protection
3900 Commonwealth Blvd., MS 35
Tallahassee, FL  32399-3000
Jeffrey.Brown@FloridaDEP.gov
Syndie.Kinsey@FloridaDEP.gov
DEP.Defense@FloridaDEP.gov
*Counsel for Shawn Hamilton, in his official capacity as Acting Secretary of the Florida Department of Environmental Protection*

   /s/ *Kevin S. Hennessy*
      KEVIN S. HENNESSY