## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CENTER FOR BIOLOGICAL
DIVISION, TAMPA BAY
WATERKEEPER, SUNCOAST
WATERKEEPER, MANASOTA-88, *and*
OUR CHILDREN'S EARTH
FOUNDATION,

      *Plaintiffs*,

      *v.*

GOVERNOR RON DeSANTIS,
SHAWN HAMILTON, *in his official
capacity as* SECRETARY, FLORIDA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, HRK HOLDINGS, LLC,
*and* MANATEE COUNTY PORT
AUTHORITY,

      *Defendants*.

Case No.  8:21-cv-1521

**FDEP'S REPLY IN SUPPORT OF
MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED
COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ............................................................................................ 1

ARGUMENT ................................................................................................... 1

I.     PLAINTIFFS' CLAIMS ARE MOOT. ................................................ 1

II.    THE CWA CLAIM AGAINST FDEP SHOULD BE DISMISSED. ................. 7

       A.     The Diligent-Prosecution Bar Applies. ................................ 7

       B.     Plaintiffs Do Not State A CWA Claim Against FDEP. ........................ 10

       C.     The SAC Does Not Allege An Ongoing Discharge. ............................ 12

       D.     The NPDES Permit Remains In Force. ............................ 13

III.   PLAINTIFFS' RCRA CLAIM SHOULD BE DISMISSED. ............................ 14

       A.     Plaintiffs' Cannot Not Avoid RCRA's Mandatory Ninety-Day Delay
              Period. ....................................................................... 14

              1.     Plaintiffs' Notice Letter Did Not Identify a Hazardous
                     Waste Violation Under Subchapter III. .................................... 14

              2.     Plaintiffs' "Hybrid" Complaint" Theory Does Not Apply
                     Here. ..................................................................... 16

       B.     Plaintiffs Fail to State a Claim for RCRA Endangerment. .................. 17

CONCLUSION ............................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.,*
  251 F. Supp. 2d 1215 (S.D.N.Y. 2002) .................................................................. 3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................... 17, 19

*Bldg. & Constr. Trades Council of Buffalo, New York & Vicinity v. Downtown
  Dev., Inc.,*
  448 F.3d 138 (2d Cir. 2006) ................................................................................18

*Brod v. Omya,*
  653 F.3d 156 (2d Cir. 2011) ................................................................................14

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York,*
  273 F.3d 481 (2d Cir. 2001) ................................................................................15

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.,*
  4 F.4th 63 (1st Cir. 2021) ..................................................................................... 8

*City of Colton v. American Promotional Events, Inc.,*
  824 F. Supp. 2d 1015 (C.D. Cal. 2011) ................................................................ 3

*Clean Harbors, Inc. v. CBS Corp.,*
  875 F. Supp. 2d 1311 (D. Kan. 2012) ................................................................... 3

*Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.,*
  1993 U.S. Dist. LEXIS 8364 (E.D. Cal. Mar. 2, 1993)....................................... 11

*Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.,*
  989 F.2d 1305 (2d Cir. 1993) ..............................................................................12

*Coosa Riverkeeper, Inc. v. Oxford Water Works & Sewer Bd.,*
  2017 WL 2619087 (N.D. Ala. June 16, 2017) ................................................... 8, 9

*Cox v. Bd. of Cty. Commissioners of Franklin Cty.,*
  No. 2:18-CV-1631, 2021 WL 2042629 (S.D. Ohio May 21, 2021)....................... 8

*Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health &
Rehab. Servs.*,
225 F.3d 1208 (11th Cir. 2000)..................................................................... 4

*Flores v. Koster*,
No. 3:11-CV-0726-M-BH, 2013 WL 664704 (N.D. Tex. Jan. 22, 2013).............. 4

*Hallstrom v. Tillamook Cnty.*,
493 U.S. 20 (1989) ........................................................................................ 17

*Hinds Invs., L.P. v. Angioli*,
654 F.3d 846 (9th Cir. 2011)......................................................................... 20

*In re MTBE Products Liability Litig.*,
476 F. Supp. 2d 275 (S.D.N.Y. 2007)............................................................. 3

*Kentucky v. Graham*,
473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ......................... 4

*LAJIM, LLC v. Gen. Elec. Co.*,
917 F.3d 933 (7th Cir. 2019) ........................................................................ 5

*Lambeth v. Three Lakes Corp.*,
478 F. Supp. 3d 1347 (N.D. Ga. 2020) .................................................... 11

*Mays v. Joseph*,
No. 21-10919, 2022 WL 18981 (11th Cir. Jan. 3, 2022) ........................ 4

*N. Cal. River Watch v. Honeywell*,
Aero., 830 F. Supp. 2d 760 (N.D. Cal. 2011) ......................................... 14

*Nat'l Parks Conservation Ass'n, Inc. v. TVA*,
502 F.3d 1316 (11th Cir. 2007).................................................................. 16

*Raritan Baykeeper, Inc. v. NL Indus., Inc.*,
No. 09-CV-4117 JAP, 2013 WL 103880 (D.N.J. Jan. 8, 2013) ........................ 3

*S. River Watershed All., Inc. v. DeKalb Cnty., Georgia*,
484 F. Supp. 3d 1353 (N.D. Ga. 2020) ................................................... 8

*Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*,
867 F. Supp. 2d 754 (W.D. Pa. 2012) .................................................... 3

*United States v. Bd. of Trustees of Fla. Keys Cmty. Coll.*,
531 F. Supp. 267 (S.D. Fla. 1981) ............................................................ 11

*United States v. Metro. Water Reclamation Dist. of Greater Chicago*,
  792 F.3d 821 (7th Cir. 2015) ................................................................ 8

*W. Va. Highlands Conservancy, Inc. v. Huffman*,
  625 F.3d 159 (4th Cir. 2010) .............................................................. 11

## **Statutes**

§ 403.062, Fla. Stat. (2021) ..................................................................... 15

§ 403.0885(3), Fla. Stat. (2021) ............................................................... 13

33 U.S.C. § 1365(b)(1)(B) ........................................................................ 10

33 U.S.C. §§ 1365(a)(1), (b)(1)(B) ............................................................. 7

42 U.S.C. § 6903(27) ............................................................................... 15

42 U.S.C. § 6972(b)(2)(B) ........................................................................ 17

## **Regulations**

40 C.F.R. §§ 261.20–.24 .......................................................................... 16

40 C.F.R. § 261.21 ................................................................................... 15

40 C.F.R. § 261.3(a)(2)(i) ......................................................................... 18

40 C.F.R. § 261.4(g) ................................................................................. 18

Rule § 62-620.335(3), Fla. Admin. Code .................................................. 13

Rule 62-673.610, Fla. Admin. Code .......................................................... 7

## **INTRODUCTION**

The relief requested in this case is already under way.  FDEP has secured a court-appointed Receiver to close Piney Point, backed by significant funding from the State legislature.[1]  Nevertheless, intent on wresting control for themselves, Plaintiffs attempt to creatively plead federal claims against FDEP without basis in law or fact.  But federal courts hear only limited claims and provide only limited relief.  As set forth in FDEP's Motion to Dismiss, Plaintiffs' attempt to shoehorn the problems at Piney Point into a federal case against FDEP suffers from numerous constitutional, statutory, and pleading defects.  Plaintiffs' Opposition fails to cure these fatal shortcomings.

## **ARGUMENT**

### **I.    PLAINTIFFS' CLAIMS ARE MOOT.**

Plaintiffs would prefer that this Court, rather than the state court, supervise remediation of Piney Point.  But the mootness doctrine precludes a federal court from substituting its own injunction for a like injunction from a state court.  Rather, to avoid mootness, the Eleventh Circuit requires that this Court be able provide "meaningful relief" *beyond* the relief ordered by the state court.  *See* FMTD 10–13.  Because this Court cannot provide anything more (and would likely provide far less) than the comprehensive closure already underway in state court—via the court-appointed Receiver—Plaintiffs' claims are moot.

---

[1] Unless otherwise indicated, capitalized terms retain definitions from FDEP's Motion to Dismiss, Doc. 51 ("FMTD"), and FDEP's Motion to Stay, Doc. 53 ("FMTS").

Plaintiffs attempt to diminish the Receiver's authority, noting that he was technically appointed in the Foreclosure Action instead of the Enforcement Action. But FDEP sought a receiver in the former action simply because the receiver could be appointed more quickly there than in the state Enforcement Action.  *See* FMTD n.11.   The Receiver—an agent of the state court[2]—has been directed to comprehensively close the Facility.  He is developing a plan to accomplish that closure, and his efforts are subject to state court orders in both the Foreclosure Action and Enforcement Action, as well as to all applicable environmental laws. *See* RJN Ex. C 12 ("Receiver shall insure that all aspects of the Facility comply with any and all laws, regulations, orders or requirements of any Federal, State, County or Municipal Authority having appropriate jurisdiction.  Receiver shall effectuate the abatement of any ongoing or imminent violations and expeditious closure of the Facility, and shall develop a closure plan....").  The Receiver has already made significant progress toward closure, including: inspecting the Facility and conducting numerous interviews; evaluating options for draining the reservoirs; meeting and negotiating with engineers, contractors, and other service providers; preparing bidding materials to procure necessary services; preparing budgets related to closure efforts; meeting with FDEP regarding closure strategy; retaining counsel, IT, and other personnel necessary to effectively and efficiently administer the Receivership.  *See* Second RJN Ex. A 3–6; *see also* RJN Ex. G 3–5.  FDEP

---

[2] *See* Second RJN Ex. A § 2 ("[T]he Receiver is an agent of the Court—not an agent or employee of the FDEP.").

expects the Receiver to issue a closure plan within several months.

Importantly, environmental claims may be moot even where remediation is not yet fully implemented.  This is not a controversial proposition, and FDEP's Motion to Dismiss demonstrates that the weight of authority—including among courts in the Eleventh Circuit—holds that citizen suits are moot if the government is already undertaking remedial efforts.  *See* FMTD 10–13.  Yet, Plaintiffs insist—without support—that "[o]nly a governmental action that has been fully developed [and] implemented" can moot their claims.  MTD Opp. 15.  That is simply not the law, and none of Plaintiffs' cases go so far.[3]  An enforceable state court order to close the Facility is already in place, the Receiver is working diligently to implement that order, and Plaintiffs are not entitled to invoke this Court's jurisdiction just because progress is not yet to their satisfaction.

Because Plaintiffs' claims are mooted by the Receiver's work to close the Facility, Plaintiffs go to great lengths to construe the SAC as seeking broader relief than the Receiver's mandate.  In reality, however, the Receiver's efforts will

---

[3] *87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215, 1219–21 (S.D.N.Y. 2002) (no injunctive relief available in light of state agency's *ongoing* cleanup); *Clean Harbors, Inc. v. CBS Corp.*, 875 F. Supp. 2d 1311, 1330-32 (D. Kan. 2012) (similar); *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 867 F. Supp. 2d 754, 764 (W.D. Pa. 2012) (no injunctive relief available where "[t]he remediation process … is well under way," even though "active cleanup of the Site has not begun"); *cf. City of Colton v. American Promotional Events, Inc.*, 824 F. Supp. 2d 1015, 1022 (C.D. Cal. 2011) (injunctive relief available where plaintiffs alleged soil contamination and existing cleanup efforts addressed only groundwater); *Raritan Baykeeper, Inc. v. NL Indus., Inc.*, No. 09-CV-4117 JAP, 2013 WL 103880, at *21 (D.N.J. Jan. 8, 2013) (injunctive relief available where state had declined to conduct cleanup and "no action has been taken since"); *In re MTBE Products Liability Litig.*, 476 F. Supp. 2d 275, 283 (S.D.N.Y. 2007) (discussing primary jurisdiction doctrine, not mootness).

address every violation alleged in the SAC.  Indeed, the Receiver's comprehensive closure of the site will go further than any injunction from this Court ever could.

**_First_**, Plaintiffs contend that the civil penalties they seek are unavailable in state court.  *See* MTD Opp. n.6.  But such penalties *against FDEP* are not available here either.  As FDEP noted in its Motion to Dismiss (and as Plaintiffs wholly ignore), "[t]he Eleventh Amendment would limit any federal order against FDEP to prospective injunctive relief necessary to cure an ongoing violation of federal law."  FMTD 11 (citing *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1220 (11th Cir. 2000)); *see also Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985) ("[T]he Eleventh Amendment bars a damages action against a State in federal court."); *Mays v. Joseph*, No. 21-10919, 2022 WL 18981, at *2 (11th Cir. Jan. 3, 2022) ("The Eleventh Amendment prohibits actions against state officials acting in their official capacity for monetary damages in federal court.").[4]

**_Second_**, Plaintiffs misconstrue the scope of potential federal relief available to them.  "[B]eyond the closure of the stack system," Plaintiffs contend they should be able "to require Defendants to undertake a RCRA corrective action study to diagnose, evaluate, monitor, and abate *all* sources of contamination and

---

[4] Because jurisdiction must be established on a per-claim and per-defendant basis, *see Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2013 WL 664704, at *4 (N.D. Tex. Jan. 22, 2013) ("Courts are to assess a plaintiff's standing to bring each of its claims against each defendant."), Plaintiffs' claims against FDEP are moot independent of whether claims for different relief from other parties (*e.g.*, civil penalties) survive Defendants' motions to dismiss.

endangerment at Piney Point."  MTD Opp. 16.  But neither RCRA nor CWA empower Plaintiffs to seek such all-encompassing injunctive relief.  Any injunction from this Court will necessarily be limited to abatement of (1) particular imminent and substantial endangerments that amount to RCRA violations, and (2) particular discharges that amount to CWA violations.  *See* FMTD 10–13; *see also LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 949 (7th Cir. 2019) ("RCRA is not a 'cleanup' statute.").  If Plaintiffs are able to prove specified violations of federal law, then the Court may order those violations cured, but neither RCRA nor CWA permit Plaintiffs to substitute as government regulator and "diagnose" or "evaluate" every conceivable environmental issue at Piney Point.  In contrast, relief ordered by the state court already requires compliance with industry-specific laws and regulations, including comprehensive closure-plan requirements for protection of both surface and ground waters.

**_Third_**, Plaintiffs embellish their allegations to make the SAC appear broader than it actually is.  Plaintiffs accuse Defendants of "mischaracterize[ing] Plaintiffs' case as focusing exclusively on the impoundments at Piney Point."  MTD Opp. 15.  But Plaintiffs have not alleged anything more than that.  Plaintiffs' only attempt to show other violations at the Facility—beyond the liner tears and structural instabilities at NGS-S—is to string cite numerous paragraphs of the SAC in a footnote.  *See id.* at n.5.  But a review of each of those paragraphs shows that they do not allege the violations Plaintiffs now suggest form the basis for their case:

**SAC ¶¶ 124–25, 177–78, 225–26 (purportedly alleging distinct violations at OGS-S).**  These paragraphs merely describe a 2008 Army Corps report that speculates that all reservoirs (including OGS-S) might become hazards under certain circumstances.  While Plaintiffs allege that NGS-S has actually become a hazard, the SAC does not make similar allegations regarding OGS-S.

**SAC ¶¶ 244, 350 (purportedly alleging distinct violations at NGS-N).**  Paragraph 244 includes the singular allegation that, "[b]y April 5, 2021, FDEP took emergency efforts to address uncontrolled flooding from the northern toe of the NGS-N."  There are no allegations that any problems at NGS-N persist, much less that an imminent and substantial endangerment persists.  Likewise, Paragraph 350 includes only the allegation that that backup in drains caused by the leak in NGS-S could exert pressure and eventually compromise NGS-N.  Thus, at most, Plaintiffs have pleaded for relief with respect to the NGS-S drainage system.  These threadbare allegations are not sufficient to state a claim for which the available redress under RCRA would be total closure of NGS-N.

**SAC ¶¶ 351–56 (purportedly alleging distinct violations related to groundwater contamination).**  These paragraphs merely allege that contaminants are entering the groundwater from the alleged leaching and releases, and that such contamination poses an imminent and substantial endangerment to the local community.  But neither of these paragraphs allege Piney Point sources of such leaching other than the liner breaches and impoundments failures at NGS-S.  In other words, these paragraphs merely allege that causing contaminants to

enter the groundwater is one of the ways the NGS-S liner breaches and impoundment failures might amount to a RCRA violation.  Thus, Plaintiffs' groundwater allegations are simply part of their allegations regarding NGS-S.  In any event, "[r]emedying the groundwater contamination" *is* part of the Receiver's charge.  *Compare* RJN Ex. C 12 (Receiver shall ensure compliance with Florida law) *with* Rule 62-673.610, Fla. Admin. Code (state closure plan requirements necessitate comprehensive protections for both surface and ground waters, including specific water quality protections and standards for metals of concern such as arsenic).

In sum, based on the actual claims in the SAC, even if successful on the merits, Plaintiffs would be entitled to less relief than the Receiver's mandate: closure of the facility.  Accordingly, Plaintiffs' claims are moot.[5]

## II.   THE CWA CLAIM AGAINST FDEP SHOULD BE DISMISSED.

### A.   The Diligent-Prosecution Bar Applies.

Plaintiffs misconstrue the standard for the diligent-prosecution bar under the CWA.  Where a citizen suit alleges violation of "an effluent standard or limitation under [the CWA]," the diligent-prosecution bar applies where the State has already brought an action "to require compliance with the standard [or] limitation."  33 U.S.C. §§ 1365(a)(1), (b)(1)(B).  Plaintiffs read the statute to mean

---

[5] Even if the Court concludes that Plaintiffs' claims are not moot *today*, Plaintiffs acknowledge that some or all of their claims are likely to become moot when the Receiver issues a final closure plan.  *See* MTD Opp. 18–19 (acknowledging cases establishing mootness where "a developed remedial plan" is "in place").  This weighs in favor of staying the federal action, at least until the Receiver issues his plan.  *See* FMTS.

that the State's action must actually be prosecuting a *cause of action under the CWA*, as opposed to any cause of action that enforces the *standard or limitation prescribed by the CWA*. Courts uniformly reject Plaintiffs' reading. FMTD at 15–18. The diligent-prosecution bar applies so long at the State's enforcement action is "capable of requiring compliance with the CWA." *Coosa Riverkeeper, Inc. v. Oxford Water Works & Sewer Bd.*, 2017 WL 2619087, at *6 (N.D. Ala. June 16, 2017). The standards and limitations targeted in the State's enforcement need only "substantial[ly] overlap" with the CWA standards and limitations that Plaintiffs put at issue; "identical claims" are not required. *S. River Watershed All., Inc. v. DeKalb Cnty., Georgia*, 484 F. Supp. 3d 1353, 1366 (N.D. Ga. 2020); *see also Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 74 (1st Cir. 2021); *United States v. Metro. Water Reclamation Dist. of Greater Chicago*, 792 F.3d 821, 824 (7th Cir. 2015).[6]

Here, the "standard" Plaintiffs seek to enforce is the bar on unpermitted discharges. SAC ¶¶ 364–66. Plaintiffs cannot credibly dispute that complete closure of the Facility—including emptying the reservoirs—will halt the alleged discharges.

---

[6] Even if the Court concludes that the current record in the State Actions is insufficient to show that the State Actions are addressing the discharges alleged in the SAC, FDEP reserves its right to invoke a diligent-prosecution defense at a later stage. *See Cox v. Bd. of Cty. Commissioners of Franklin Cty.*, No. 2:18-CV-1631, 2021 WL 2042629, at *11–12 (S.D. Ohio May 21, 2021). That the Receiver's forthcoming remediation plan is likely to confirm that Plaintiffs' CWA claims are encompassed by the State Actions weighs in favor of staying the federal action if it is not otherwise dismissed. *See* FMTS.

Plaintiffs say that the emergency discharges in 2021 are somehow different than discharges related to "leakage and seepage and potential breaches of the reservoir's walls." MTD Opp. 24. This makes little sense. As Plaintiffs state in the SAC, the emergency discharges in 2021 were the direct result of the "leakage and seepage and potential breaches of the reservoir's walls," and addressing those problems (including by draining the compromised reservoir) will prevent emergency discharges.[7] The Receiver is tasked with closing the Facility in compliance with all applicable state and federal laws and rules (including the CWA); it strains credulity to suggest he will leave the Facility in a state where recurring emergency discharges are a likelihood. *See Coosa Riverkeeper*, 2017 WL 2619087, at *6 ("The burden is heavy, because the enforcement agency's diligence is presumed.").

Plaintiffs also argue that the diligent-prosecution bar does not apply because FDEP's "assertions that discharges will be eliminated at some undetermined point in the future [are] speculative." MTD Opp. 25. But the diligent-prosecution bar applies as soon as the State *pursues* enforcement; remediation need not be complete (or even substantially underway). *See* FMTD 15–18.

Finally, Plaintiffs argue that the diligent-prosecution bar cannot apply because they have sued FDEP and the agency cannot be "diligently prosecuting a CWA action against itself." MTD Opp. 21. Plaintiffs mistake the bar's name for its

---

[7] Plaintiffs also argue that the State Actions are less comprehensive that Plaintiffs' CWA claim because the latter seeks civil penalties. Opp. to MTD at 24. As set forth above, however, civil penalties are not available against FDEP.

function.  It applies so long as there is a "civil action ... to require compliance with the standard, limitation, or order" allegedly violated.  33 U.S.C. § 1365(b)(1)(B).  They also ignore that the Receiver, an officer of the state court, not FDEP is in charge of closing the site.  Even assuming (wrongly) that FDEP's first-responder emergency intervention could otherwise expose it to CWA liability, the State Actions seek to close the Facility so that FDEP never has to take such emergency actions again.  It would be passing strange if the CWA cabined a state regulator's response to an emergency, life-threatening situation, and created liability for any response that preceded litigation about that emergency.

### B.    Plaintiffs Do Not State A CWA Claim Against FDEP.

Plaintiffs concede that Count III of the SAC—which alleges discharges in violation of the NPDES permit—is not brought against FDEP.  *See* MTD Opp. n.13 ("Plaintiffs' alternative claim is that ***HRK*** violated its NPDES permit by discharging pollutants....") (emphasis added); *see also* FMTD n.7.  Count II, on the other hand, alleges that "[t]here is no lawfully-issued NPDES permit for point source discharges from Piney Point."  SAC ¶ 365.  FDEP disputes this allegation as a matter of law, *see infra* 12, but, even assuming the absence of an NPDES permit, Count II, as alleged against FDEP, still fails.

As set forth in FDEP's Motion to Dismiss, the SAC does not contain sufficient factual matter to plausibly conclude that FDEP is the Facility's "operator" under the CWA.  At best, Plaintiffs allege FDEP's *awareness* of certain discharges by HRK.  But there are no allegations amounting to (1) actual performance or (2)

10

responsibility or control required for CWA liability.  *See* MTD Opp. 26 (quoting *United States v. Bd. of Trustees of Fla. Keys Cmty. Coll.*, 531 F. Supp. 267, 274 (S.D. Fla. 1981)); *see also Lambeth v. Three Lakes Corp.*, 478 F. Supp. 3d 1347, 1355 (N.D. Ga. 2020).

Plaintiffs spend much of their Opposition arguing that FDEP is subject to CWA permitting requirements.  *See* MTD Opp. 26–30.  But FDEP has not contended that it is categorically exempt from such requirements.  Even assuming FDEP would require a permit to make the alleged discharges if it were operating the facility, Plaintiffs have not sufficiently alleged that FDEP was actually the operator responsible for those discharges.  Plaintiffs cite two cases for the proposition that a governmental body can be liable under the CWA even if does not own the discharging facility, but in both cases it was undisputed that the government defendants *were in fact operating the discharging facilities for years*.[8]

Here, in contrast, there is no credible dispute that HRK was operating the Facility when the alleged discharges occurred.  That FDEP monitored HRK's operations as a regulator does not transform FDEP into an "operator" for CWA purposes.  The only instance of actual FDEP "activity" alleged in the SAC is FDEP's

---

[8] *See W. Va. Highlands Conservancy, Inc. v. Huffman*, 625 F.3d 159, 162–64 (4th Cir. 2010) (state agency had taken over water-treatment obligations from mining company pursuant to state program, under which the agency employ[ed] the existing treatment system as a temporary salve and then install[ed] a series of water wheels that mechanically release neutralizing agents"); *Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.*, 1993 U.S. Dist. LEXIS 8364, at *3–7 (E.D. Cal. Mar. 2, 1993) (municipal board operating pumps for over fifteen years).

role in facilitating the emergency response to the life-threatening breach of the containment walls in spring of 2021.  Plaintiffs cite no cases—and FDEP is not aware of any—that confer CWA "operator" status on first responders at a crisis scene.  To find FDEP was an operator because of such conduct would discourage regulators from acting to abate discharges in an emergency.

### C.    The SAC Does Not Allege An Ongoing Discharge.

*Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, does not supply the appropriate standard.  That decision addressed a defendant's motion for summary judgment on whether the plaintiffs' allegations were a "sham."  989 F.2d 1305, 1311 (2d Cir. 1993).  Here, the question is whether Plaintiffs have sufficiently alleged an ongoing violation, not whether *otherwise sufficient* allegations are a sham.

The SAC admits that Defendants have abated the allegedly wrongful discharges, and alleges no facts to support Plaintiffs' assertion that the discharges continue.  *See* FMTD 21–23.  The Receiver has now taken over the Facility and is implementing further efforts to ensure discharges do not recur.  Plaintiffs apparently doubt the Receiver's capabilities, but their incredulity now cannot substitute for missing factual allegations in the SAC.[9]  Moreover, even if they otherwise alleged an "ongoing" discharge, Plaintiffs acknowledge that they must further plead that such ongoing discharge reaches "waters of the United States,"

---

[9] *See* FDEP's Opposition to Plaintiffs' Cross-RJN, filed concurrently herewith.

MTD Opp. 26, and Plaintiffs have no response to FDEP's point that the SAC does not actually allege that.  *See* FMTD 23.

### D.   The NPDES Permit Remains In Force.

Plaintiffs do not dispute that Piney Point Phosphates, Inc. timely submitted an administrative petition regarding its application for renewal for the NPDES permit for Piney Point.  *See* MTD Opp. 21–22.  Plaintiffs also do not dispute that Florida law tolls expiration of an NPDES permit "until the Department has taken final action on the application for renewal."  Fla. Admin. Code § 62-620.335(3); *see also* § 403.0885(3), Fla. Stat.  Rather, Plaintiffs assert that a final action occurred—and the NPDES Permit therefore expired—when the administrative law judge ("ALJ") relinquished jurisdiction over the petition.  *See* MTD Opp. 22.  But the ALJ's relinquishment of jurisdiction is not a final action *by FDEP*.  Indeed, by relinquishing jurisdiction, the ALJ explicitly remanded the matter back to FDEP for final action.  *See* Doc. 71 ("Cross-RJN") Ex. 3 ("[J]urisdiction should be relinquished back to the Department to allow the Department to take agency action on these pending wastewater permit applications.… Therefore … the parties move the Administrative Law Judge for an order relinquishing jurisdiction of these cases to the Department for entry of appropriate final orders.").  Plaintiffs do not allege FDEP has taken such final action (nor could they), and the documents from the administrative proceeding confirm that the matter remains pending before FDEP—and the expiration of the NPDES permit therefore remains tolled.

### III.  PLAINTIFFS' RCRA CLAIM SHOULD BE DISMISSED.

####   A.  Plaintiffs' Cannot Not Avoid RCRA's Mandatory Ninety-Day Delay Period.

#####     1.  Plaintiffs' Notice Letter Did Not Identify a Hazardous Waste Violation Under Subchapter III.

To avoid RCRA's mandatory ninety-day delay period, Plaintiffs were required to provide FDEP sufficient notice of (1) an identified hazardous waste (2) amounting to a violation of Subchapter III.  The Notice Letter fails in both respects.

***First***, the Notice Letter does not describe the supposedly hazardous characteristics of the waste at issue—*i.e.*, the alleged "leachate" present in the stack system.  Plaintiffs claim that it is enough to simply utter the word "toxic waste" rather than "ascribe[] a specific moniker."  MTD Opp. 38.  But a "specific moniker" is *exactly* what the caselaw requires, FMTD 26, and Plaintiffs cannot point to any contrary authority.  Indeed, the very case Plaintiffs cite states there is sufficient notice only where it makes defendants aware of "'the specific compounds causing the contamination.'"  MTD Opp. 37 (quoting *N. Cal. River Watch v. Honeywell Aero.*, 830 F. Supp. 2d 760, 766 (N.D. Cal. 2011)).  And Plaintiffs admit that *Brod v. Omya*, 653 F.3d 156 (2d Cir. 2011), requires that "notice letter must identify *the contaminant*" at issue.  MTD Opp. 40 (emphasis added).

Plaintiffs point to SAC ¶ 173.  MTD Opp. 38.  A later- filed complaint cannot cure a deficient *pre-suit* notice, but even that paragraph of the SAC merely recites

the regulations in conclusory fashion.[10]  Similarly, Plaintiffs say their Notice Letter "states that the Bevill amendment for phosphogypsum is vitiated by the comingling of solid waste (dredged materials) and the phosphogypsum beneath the liner, and the new leachate satisfies regulatory standards for hazardous waste," MTD Opp. 38,  but simply asserting that the Bevill amendment does not apply (1) is a legal conclusion, not a factual allegation, and (2) does not provide any basis to conclude that the alleged leachate in fact exhibits the characteristics of a hazardous waste.

Plaintiffs try to save the Notice Letter by pointing to the voluminous well-monitoring data appended to it.  *See* MTD Opp. 40–41.  But groundwater itself is not a *waste* under RCRA.  *See* 42 U.S.C. § 6903(27).[11]  Thus, Plaintiffs' rely on the speculation that arsenic levels detected in groundwater directly correspond to, and were caused by, metal levels in the stack system, and so apprising FDEP of the former suffices for notice of the latter.  Such speculative inferences are not the "reasonable specificity" required for notice.  *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 488 (2d Cir. 2001).  Plaintiffs' burden was to actually spell-out how a covered solid waste at the Facility

---

[10] Beyond conclusory, some of those recitations are far-fetched.  For example, ¶ 173 states that "[t]he leachate waste created through the comingling and/or mixing of dredged material and phosphogypsum waste and related process wastewater exhibits the 'characteristic of ignitability' under 40 C.F.R. § 261.21."  There is no good-faith basis to assert that any leachate from the Facility—which Plaintiffs allege is almost all water with trace amounts of dissolved minerals—is "ignitable."  *See* 40 C.F.R. § 261.21 ("Characteristics of ignitability").

[11] Groundwater is regulated by a separate statutory regime, which Plaintiffs have not invoked here.  *See* § 403.062, Fla. Stat.  *et seq.*

exhibits the characteristics of hazardous waste set forth in 40 C.F.R. §§ 261.20–.24.  They did not do so.[12]

 **<u>Second</u>**, even if Plaintiffs had identified a specific hazardous waste, they were further required to cite the specific part of Subchapter III allegedly violated.  FMTD 30–32.  Merely alleging the *presence* of arsenic at Piney Point does not amount to a hazardous waste violation under Subchapter III.  *See supra* n.12. In their Opposition, Plaintiffs can only repeat the Notice Letter's general citation to "subchapter III" and block quote a "see generally" citation to the entirety of that subchapter.  MTD Opp. 41.  But such a broad citation—bereft of the "specific standard" supposedly violated—is insufficient under binding precedent.  *Nat'l Parks Conservation Ass'n, Inc. v. TVA*, 502 F.3d 1316, 1329–30 (11th Cir. 2007). Incredibly, Plaintiffs do not address the fatal implications of *National Parks* for their notice letter.[13]

### 2. <u>Plaintiffs' "Hybrid" Complaint" Theory Does Not Apply Here.</u>

 Because Plaintiffs Notice Letter does not fall within RCRA's exemption to the mandatory ninety-day delay period, Plaintiffs' RCRA claim must be dismissed.

---

[12] Arsenic is a naturally occurring element in soils and groundwater throughout the United States and in Florida.  Moreover, as the SAC acknowledges, phosphogypsum stacks themselves are known to contain arsenic, and are known to leach arsenic into the groundwater, but Congress nevertheless chose to exempt phosphogypsum stacks from regulation under Subchapter III.  *See* SAC ¶¶ 48–56 (describing the Bevill Amendment). Thus, the presence of arsenic in the groundwater is, by itself, meaningless for purposes of determining whether Plaintiffs have stated a claim here.

[13] In the context of the SAC—not the Notice Letter—Plaintiffs baldly contend "FDEP's reliance on *Nat'l Parks* [] is misplaced."  MTD Opp. 58.

*Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989).  Yet, Plaintiffs' claim that their allegations related to solid waste should proceed, regardless of the failure to meet the ninety-day delay, under a "hybrid" theory, with the solid-waste claim piggybacking on the defunct hazardous waste claim.  MTD Opp. 42–45.  The "hybrid" complaint doctrine does not apply here.

As a threshold matter, the Supreme Court and Eleventh Circuit have never recognized the "hybrid" complaint doctrine, and Plaintiffs cannot point to a single case in this circuit applying it.  In any event, the doctrine, as applied in the few out-of-circuit cases cited by plaintiffs, states that solid-waste claims will not be retroactively deemed premature in the event that the hazardous-waste claims fail *on the merits*.  But if there is no sufficient notice of the hazardous-waste claim from the outset—before a court ever addresses the merits of those claims—then there is nothing on which to piggyback; the entire "action" is premature.  42 U.S.C. § 6972(b)(2)(B).  Plaintiffs' solid-waste claims cannot be deemed to have walked through a door that was never opened.  Were it otherwise, the ninety-day delay period would be meaningless, because a plaintiff could always simply incant "Subchapter III" in a notice letter and vitiate the waiting period.

### B.    Plaintiffs Fail to State a Claim for RCRA Endangerment.

Plaintiffs' RCRA allegations do not meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs' Opposition does not overcome these defects.

**_First_**, with respect to the SAC's failure to identify the hazardous waste at issue, FMTD 33–35, Plaintiffs cannot point to anything in the SAC other than the nebulous and insufficient "new hazardous leachate waste." MTD Opp. 45. But Plaintiffs "must do more than allege generally that 'hazardous waste' has been disposed of by a defendant." *Trades Council of Buffalo*, 448 F.3d at 155.

Plaintiffs try to save their complaint by pointing to allegations referencing an Army Corps of Engineers report. MTD Opp. 45–46. But that report—*from fourteen years ago*—simply hypothesized that liner breaches *might* result in the creation of a hazardous waste *if* the resulting leachate actually meets the specific regulatory requirements for such designation. SAC ¶ 126. Plaintiffs fail to allege how the leachate that supposedly exists today (fourteen years later) actually meets those requirements. Indeed, in their Opposition, as in the SAC, Plaintiffs **_completely ignore_** the specific EPA regulation (not Army Corps) that governs whether a mixture of exempt and non-exempt wastes constitutes a hazardous waste. *See* FMTD 34–35 (discussing 40 C.F.R. § 261.3(a)(2)(i)).[14]

---

[14] Plaintiffs do not dispute that the phosphogypsum stacks are exempt material. MTD Opp. 39. Plaintiffs dispute that the dredge spoil is exempt under 40 C.F.R. § 261.4(g). MTD Opp. 39–40. Plaintiffs note that the Army Corps of Engineers determined that no Section 404 permit was necessary for disposal of the dredge spoil at Piney Point because the reservoirs are outside CWA jurisdiction. *Id.*; *see also* Cross-RJN Ex. 6. But the *spoil itself*—regardless of where it was disposed—is nonetheless "subject to the requirements of a permit that has been issued under [Section] 404," 40 C.F.R. § 261.4(g), even if the Port did not ultimately avail themselves of disposal locations available under that permit. Regardless, Plaintiffs admit that the dredge spoil on its own is not "hazardous." MTD Opp. 39.

**_Second_**, with respect to the SAC's failure to specify a Subchapter III violation, the Opposition again simply points to the entirety of the subchapter. MTD Opp. 47 ("Plaintiffs specifically allege that Piney Point is not compliant with *any* of RCRA's hazardous waste requirements."). *Twombly* demands more.

Plaintiffs oddly claim the SAC's shotgun citation is permissible because "no aspect of Piney Point has ever complied with RCRA subchapter III." MTD Opp. 46. But in the very next clause, Plaintiffs rebut their own assertion: "because phosphogypsum is typically exempt from such regulation." *Id*. Thus, Plaintiffs attempt to save this deficiency really just circles back to their failure to identify a specific toxic waste.

**_Third_**, Plaintiffs supply no authority to suggest that FDEP's regulatory activities make it an "operator" under RCRA. *See* MTD Opp. 48–49. Aside from FDEP's emergency-response activities, Plaintiffs' allege only that FDEP has been advising and monitoring—*i.e.*, regulating—the actual owners and operators of Piney Point. Likewise, with respect to FDEP's emergency-response activities, Plaintiffs ignore that this was a life-threatening situation, where the actual owner and operator was unwilling or unable to protect public safety on its own. That FDEP was forced to act does not transform it from first-responder into an operator. Plaintiffs' contention to the contrary has no limiting principle and threatens to turn every regulator who sets foot on a potentially dangerous site—or issues a directive regarding a regulated entity's conduct—into a RCRA-liable party.

**_Fourth_**, Plaintiffs appear to concede that FDEP's only action that allegedly "contributed" to the claimed endangerment is regulatory approval of the dredging project.  MTD Opp. 50.  Plaintiffs do not dispute that _Hinds Invs., L.P. v. Angioli_, 654 F.3d 846, 852 (9th Cir. 2011), provides that FDEP cannot be a RCRA contributor based in the agency's role in installing the liner prior to the reservoirs' contemplated use as a storage basin for dredge spoil.  Instead, Plaintiffs say that, "[u]nlike _Hinds_," "FDEP is actively involved in Piney Point's operations in numerous ways, including approving the dredging project that created a new hazardous waste which led to widespread liner breaches, the resulting 2021 Discharge Event, and efforts to temporarily repair liner breaches."  Opp. to MTD at 51.  Just two sentences later, however, Plaintiffs' tacitly admit that the alleged "contribution" is not FDEP's 2021 emergency response, but is actually "the longstanding agency's involvement in Piney Point."  _Id._  But such dated conduct cannot serve as a basis for the requested injunctive relief.

**<u>CONCLUSION</u>**

For the foregoing reasons and those stated in its initial brief, FDEP's Motion to Dismiss should be granted, and all claims against FDEP should be dismissed in their entirety.

Dated:  February 4, 2022                    Respectfully submitted,

                                            */s/ Jesse Panuccio*
                                            Jesse Panuccio
                                            Fla. Bar No. 31401
                                            jpanuccio@bsfllp.com
                                            Carl Goldfarb
                                            Fla. Bar No. 125891
                                            cgoldfarb@bsfllp.com
                                            BOIES SCHILLER FLEXNER LLP
                                            401 East Las Olas Blvd., Suite 1200
                                            Fort Lauderdale, FL 33301
                                            Telephone: (954) 356-0011
                                            Facsimile: (954) 356-0022

                                            *Counsel for Defendant FDEP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this fourth day of February, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


s/ *Jesse Panuccio*
Jesse Panuccio