# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER, SUNCOAST WATERKEEPER, MANASOTA-88, *and* OUR CHILDREN'S EARTH FOUNDATION,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>GOVERNOR RON DeSANTIS, SHAWN HAMILTON, *in his official capacity as* SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, HRK HOLDINGS, LLC, *and* MANATEE COUNTY PORT AUTHORITY,<br><br>*Defendants*. | Case No.  8:21-cv-1521<br><br><br><br>**FDEP'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

ARGUMENT ............................................................................................................. 4

I.   FDEP HAS NOT TAKEN "FINAL ACTION" ON THE PETITION. .............. 4

II.  PLAINTIFFS MISCONSTRUE FDEP'S RELIANCE ON THE
     ADMINISTRATIVE AGREEMENT. .............................................................. 7

CONCLUSION ......................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) ................................................................................. 8

*Nat'l Parks Conservation Ass'n v. Norton*,
    324 F.3d 1229 (11th Cir. 2003) ................................................................................. 7

*O'Donnell's Corp. v. Ambroise*,
    858 So. 2d 1138 (Fla. 5th DCA 2003) ...................................................................... 6

**Statutes**

§ 120.52(7), Fla. Stat. ....................................................................................................... 5

§ 120.569(1), Fla. Stat. .................................................................................................... 6

§ 120.57(1)(k)–(l), Fla. Stat. ........................................................................................... 6

§ 120.57(1)(l), Fla. Stat. .................................................................................................. 6

§ 403.0885(3), Fla. Stat. .................................................................................................. 5

§ 403.0885, Fla. Stat. ...................................................................................................... 2

**Regulations**

Fla. Admin. Code § 62-110.106(12) ................................................................................ 7

Fla. Admin. Code § 62-620.335(3) .......................................................................... 2, 3, 5

Fla. Admin. Code § 62-620.340(3) ................................................................................. 4

Fla. Admin. Code §§ 62-673 ........................................................................................... 3

## **INTRODUCTION**

At the hearing on FDEP's Motion to Dismiss, held February 15, 2022, the Court ordered the parties to submit supplemental briefing regarding the "pedigree" of the NPDES Permit—*to wit*, the jurisdictional facts related to the issuance, transfer, and continuance of the NPDES Permit, as well as the import of those facts on Plaintiffs' CWA claim against FDEP.[1]  Accordingly, FDEP respectfully submits this supplemental brief in further support of its Motion to Dismiss.

The parties agree that a threshold issue for Count II of the SAC—the only CWA claim brought against FDEP[2]—is whether the NPDES Permit remains in effect (as FDEP argues) or has expired (as Plaintiffs argue).  At the hearing, the Court asked Plaintiffs' counsel if this issue could be resolved as a matter of law on the current record at the motion to dismiss stage.  Plaintiffs' counsel stated that the issue was ripe for resolution.

FDEP agrees.  To survive FDEP's Motion to Dismiss (with respect to Count II against FDEP), the SAC must allege sufficient facts to support the plausible conclusion that there is no lawfully-issued NPDES permit for Piney Point.[3]  But the SAC includes only the bald assertion that the operative NPDES Permit has expired.

---

[1] Unless otherwise indicated, capitalized terms retain definitions from FDEP's Motion to Dismiss, Doc. 51 ("FMTD"), and FDEP's Reply in Support of Motion to Dismiss, Doc. 79 ("FDEP MTD Reply").
[2] Count III is not brought against FDEP.  *See* FMTD n.7; FDEP MTD Reply 10.
[3] Of course, even if the Court were to conclude that the NPDES Permit has expired, the CWA claim against FDEP should be dismissed for other reasons.  *See* FMTD 14–24.

1

*See* FMTD 23. It includes no *facts* to support this legal conclusion. Plaintiffs attempted to flesh out their theory in their Opposition—and to introduce new facts through their accompanying Cross-Motion for Judicial Notice, Doc. 71 ("Cross-RJN"), which attaches various filings from state administrative proceedings concerning a petition for renewal of the NPDES Permit (the "Renewal Petition").[4] Plaintiffs admit (as they must) that Florida law suspends expiration of the NPDES Permit pending final agency action on the Renewal Petition. *See* § 403.0885, Fla. Stat.; Fla. Admin. Code § 62-620.335(3); MTD Opp. 22 (citing Fla. Admin. Code § 62-620.335(3)). Instead, Plaintiffs' theory appears to be that the ALJ's relinquishment to FDEP of jurisdiction over the Renewal Petition constituted a "final action" that would trigger the expiration of the NPDES Permit under Florida law. Plaintiffs cite no authority to support their reading of Florida law on this point, and that is because their interpretation lacks any support whatsoever. To the contrary, Florida law is clear that the NPDES Permit, in this case, has been administratively continued and remains in effect until FDEP takes final action on the Renewal Petition, which has not yet occurred.

In short, Plaintiffs do not (because they cannot) argue that the NPDES Permit was unlawfully issued, they do not (because they cannot) argue that the NPDES Permit expired during the pendency of the state administrative proceedings, and neither their threadbare allegations nor any judicially-noticeable

---

[4] The Renewal Petition is Exhibit 1 to Plaintiffs' Cross-Motion for Judicial Notice. As FDEP explains elsewhere, consideration of these documents to augment the allegations in the SAC for 12(b)(6) purposes is improper. *See* Doc. 82.

2

documents demonstrate that FDEP has taken final action on the Renewal Petition. Accordingly, Count II of the SAC must be dismissed.

## BACKGROUND

Relevant facts concerning the issuance, transfer, and continuance of the NPDES Permit are set forth in the Administrative Agreement, *see* RJN Ex. F § 1, and other judicially-noticeable documents. Most relevant here:

- **October 6, 1999**: FDEP issued the NPDES Permit to Piney Point Phosphates, Incorporated ("PPPI"), the then-operator of the Facility, with an expiration date of March 25, 2001.

- **September 22, 2000:** PPPI applied for renewal of the NPDES Permit, filing a timely and sufficient application, "at least 180 days before the expiration date of the existing permit," in accordance with Fla. Admin. Code § 62-620.335(3).

- **December 4, 2000**: FDEP issued an initial denial of PPPI's application to renew the NPDES Permit; that denial remained subject to challenge in a formal administrative proceeding pursuant to sections 120.569 and 120.57, Fla. Stat.

- **December 13, 2000**: PPPI filed with the FDEP a petition for an extension of time to file a petition for formal administrative proceedings.

- **February 7, 2001**: PPPI filed with the FDEP a second petition for an extension of time to file a petition for formal administrative proceedings.

- **February 7, 2001**: PPPI filed the Renewal Petition, seeking formal administrative proceedings with respect to FDEP's initial denial of the renewal application for the NPDES Permit. PPPI sought review pursuant to, *inter alia*, sections 120, 403, Fla. Stat. and Fla. Admin. Code §§ 62-673. *See* Cross-RJN Ex. 1 ¶ 7.

- **March 24, 2006**: PPPI and FDEP jointly move the ALJ to relinquish jurisdiction of the Renewal Petition "to the Department for entry of appropriate final orders." Cross-RJN Ex. 3. In the motion, the parties explained that FDEP was again reviewing the "application for transfer and renewal." *Id.*

3

- **March 27, 2006**: The ALJ granted PPPI and FDEP's joint motion to relinquish jurisdiction of the Renewal Petition back to FDEP. Cross-RJN Ex. 4.

- **April 25, 2006**: the NPDES Permit initially issued to PPPI was transferred to CDM Constructors, Inc. ("CDM"), in accordance with the requirements of Fla. Admin. Code § 62-620.340(3).

- **September 8, 2009**: the NPDES Permit was transferred from CDM to HRK, in accordance with the requirements of Fla. Admin. Code § 62-620.340(3).

- **September 28, 2009**: HRK revised the pending application for renewal of the administratively continued NPDES Permit. RJN Ex. E § D.

- **January 28, 2011:** HRK and FDEP entered the Administrative Agreement, which imposed additional restrictions on HRK's discharges from Piney Point, and on HRK's closure-related site operations, beyond the restrictions provided by the NPDES Permit.

- **June 27, 2012:** HRK filed for bankruptcy. *See* RJN Ex. E ¶ 14.

- **March 17, 2014**: FDEP issued the 2014 CO against HRK, which required HRK to update its application for renewal of the NPDES Permit. RJN Ex. E.

- **August 25, 2021**: The Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, in its order appointing the Receiver, ordered that "[t]he Receiver is authorized and directed to preserve or obtain whatever licenses, permits or authorizations as are necessary in the preservation, maintenance, management or closure of the Facility." RJN Ex. C § 3(5).

Plaintiffs do not appear to dispute any of these facts.

## ARGUMENT

### I.  FDEP HAS NOT TAKEN "FINAL ACTION" ON THE PETITION.

The NPDES Permit was lawfully issued to PPPI and ultimately transferred to HRK. PPPI timely sought formal administrative proceedings with respect to its timely and sufficient application for renewal of the NPDES Permit. *See* Cross-RJN

4

Ex. 1 ¶ 4. The parties agree that Florida Admin. Code § 62-620.335(3) is dispositive. *See* MTD Opp. 22. That regulation provides:

> When an application for renewal of a permit is timely and sufficient, the existing permit shall not expire until the Department has taken final action on the application for renewal or until the last day for seeking judicial review of the agency order or a later date fixed by order of the reviewing court.

*See also* § 403.0885(3), Fla. Stat. ("[U]pon timely application for renewal, a permit issued under this section shall not expire until the application has been finally acted upon or until the last day for seeking judicial review of the agency order or a later date fixed by order of the reviewing court.").

Thus, the only dispute before the Court is a pure question of state law: has FDEP taken "final action" on the Renewal Petition? The answer is no. As applicable here, a "'final order' means a written final decision which results from a proceeding under … s. 120.569, s. 120.57 … , and which has been filed with the agency clerk, and includes final agency actions which are affirmative, negative, injunctive, or declaratory in form." § 120.52(7), Fla. Stat. But nothing in Plaintiffs' allegations or judicially-noticeable documents suggests (much less plausibly establishes) that FDEP has taken such final action.

Yet, Plaintiffs insist—without citation to any legal authority—that the NPDES Permit expired when the ALJ granted FDEP and PPPI's joint motion to remand jurisdiction over the Renewal Petition "back to the Department to allow the Department to take agency action on these pending wastewater permit applications for Mulberry and Piney Point." Cross-RJN Ex. 3. As a threshold

5

matter, Florida administrative law provides that, where a challenge involves a factual dispute, *only the agency can issue a final order*; the ALJ can issue only a recommendation. § 120.569(1), Fla. Stat. ("[Section] 120.57(1) applies whenever the proceeding involves a disputed issue of material fact."); § 120.57(1)(k)–(l), Fla. Stat. ("The presiding officer shall complete and submit to the agency and all parties a recommended order…. The agency may adopt the recommended order as the final order of the agency."); *see also* § 120.57(1)(l), Fla. Stat. (describing procedures and the circumstances under which an agency may reject or modify an ALJ's recommended order when issuing the agency's final order). Accordingly, by definition, the ALJ's ruling on the motion to remand was not a final order.

Moreover, the motion that was granted explicitly stated that FDEP would later take further action. Remand for *further* action is not a *final* action. *Cf. O'Donnell's Corp. v. Ambroise*, 858 So. 2d 1138, 1138–39 (Fla. 5th DCA 2003) ("Because the order on appeal simply remands the petition back to the administrative law judge for further proceedings (*i.e.,* a formal hearing), it is not a final order."). Indeed, one basis for the joint motion was the parties' representation that FDEP was "prepared to take agency action on the [renewal] application," and the parties therefore requested that the ALJ relinquish the matter back to FDEP "for entry of appropriate final orders." Cross-RJN Ex. 3 at 2. Plaintiffs' theory—that an interim agency decision under administrative review is automatically deemed "final" if it is remanded for further consideration—contradicts basic principles of administrative law. *See* Fla. Admin. Code § 62-

6

110.106(12) ("Because the administrative hearing process is designed to formulate final agency action, the filing of a petition means that the Department's final action may be different from the position taken by it in [its] notice [of denial]."); *see also O'Donnell's Corp.*, 858 So. 2d at 1138 ("Final agency action is that which brings the administrative adjudicatory process to a close."); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003) (observing that "[t]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" and, "[b]y contrast, the Supreme Court has defined a nonfinal agency order as one that does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.").

Plaintiffs do not argue (much less actually allege) that FDEP has taken final action on the Renewal Petition since retaking jurisdiction over the matter.

II. **PLAINTIFFS MISCONSTRUE FDEP'S RELIANCE ON THE ADMINISTRATIVE AGREEMENT.**

Plaintiffs insist that "[t]he Administrative Agreement plainly is *not* a NPDES permit." MTD Opp. 23; *see also* SAC ¶ 313. But FDEP does not contend that it is. Rather, FDEP contends that the NPDES Permit for Piney Point—originally issued to PPPI and later transferred to HRK—remains in effect. For purposes of its Motion to Dismiss, FDEP relies on the Administrative Agreement for two distinct purposes.

*First*, as discussed above, the factual circumstances surrounding the issuance, transfer, and continuance of the NPDES Permit, apparent on the face of

7

the Administrative Agreement, belie Plaintiffs' conclusory allegation that there is no active NPDES Permit.  *See* FMTD 23–24.  Plaintiffs' repeatedly invoke the Administrative Agreement in their SAC, and they should not be allowed to cherry-pick portions of that document while ignoring the portions that preclude their CWA claim against FDEP.  Indeed, the Administrative Agreement itself sets forth the facts related to the transfers of the NPDES Permit and the pendency of the Department's final agency action.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

**<u>Second</u>**, because the Enforcement Action brought by FDEP seeks to enforce the Administrative Agreement (among other enforcement mechanisms, including further wastewater management and Facility closure obligations imposed on HRK in the 2014 CO, *see* RJN Exs. D–F), FDEP relies on the Administrative Agreement to demonstrate the expansive nature of the relief FDEP may obtain through the State Actions.  Thus, the Administrative Agreement supports FDEP's arguments that any relief available to Plaintiffs from this Court is duplicative of relief being obtained by FDEP in state court.

## **<u>CONCLUSION</u>**

For the foregoing reasons, and those reasons stated in its initial brief and its reply brief, FDEP's Motion to Dismiss should be granted, and Count II of the SAC should be dismissed as to FDEP.

8

Dated:  February 25, 2022

Respectfully submitted,

*/s/ Jesse Panuccio*
Jesse Panuccio
Fla. Bar No. 31401
jpanuccio@bsfllp.com
Carl Goldfarb
Fla. Bar No. 125891
cgoldfarb@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Counsel for Defendant FDEP*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 25th day of February, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                               s/ *Jesse Panuccio*
                                               Jesse Panuccio