IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CENTER FOR BIOLOGICAL DIVERSITY, TAMPA BAY WATERKEEPER, SUNCOAST WATERKEEPER, MANASOTA-88, *and* OUR CHILDREN'S EARTH FOUNDATION,

    *Plaintiffs*,

    *v*.

GOVERNOR RON DeSANTIS, *and* SHAWN HAMILTON, *in his official capacity as* ACTING SECRETARY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, *and* HRK HOLDINGS, LLC, *and* MANATEE COUNTY PORT AUTHORITY,

    *Defendants*.

Case No.  8:21-cv-1521-WFJ-CPT

**FIRST STATUS REPORT OF PLAINTIFFS IN RESPONSE TO ORDER OF MARCH 28, 2022**

Plaintiffs submit this status report in compliance with this Court's order, Dkt. 99, granting Defendant Florida Department of Environmental Protection's (FDEP) Motion to Stay. Dkt. 53. Parties are to submit status reports every 60 days, with a status conference set for October 15, 2022. This status report details events based on publicly available information concerning the Piney Point site over the last 60 days.

## INTRODUCTION

Following the near catastrophic collapse of the Piney Point phosphogypsum stack in March 2021, conservation and public health organizations filed the present

lawsuit to abate the imminent and substantial endangerment posed by Piney Point. Piney Point has a torrid history of failures threatening environmental and human disasters. Between February 2001 and February 2004, FDEP discharged approximately 1.1 billion gallons of polluted wastewater from Piney Point into Bishop Harbor and Tampa Bay. SAC at 94, Dkt. 50. An additional breach and FDEP-authorized discharge from Piney Point in 2011 led to a harmful algae bloom in Bishop Harbor. *Id.* at 161; Declaration of Daniel C. Snyder, filed herewith (Snyder Decl.) Ex. A, OGC No. 21-0323. Plaintiffs' lawsuit intends to hold the owner and operators of Piney Point accountable to prevent future harm to Tampa Bay.

This Court granted Defendant FDEP's Motion to Stay on March 28, 2022. Dkt. 99. The Court granted the six-month stay to give "the state-court Receiver sufficient time to continue planning for the closure of Piney Point and any potential environmental remediation." *Id*. at 17. In the 60 days since this order, no plan has been implemented. Instead, FDEP has approved an incomplete "conceptual" closure plan. Snyder Decl. Ex. B, Conceptual Closure Plan; *Id*. Ex. C, OGC No. 22-0468. This incomplete planning document purports to address performance standards for the four phosphogypsum stack compartments but does not address the closure of the entire facility, nor does it provide detailed closure design analysis, construction drawings, or technical specifications including sequencing and timeframes. Significantly, the Conceptual Closure Plan does not address the existing groundwater contamination at the site in any way.

Meanwhile, Piney Point continues to suffer failures and threaten collapse. For example, a leaking boil in the gypstack wall was reported in March 2022. *Id.* Ex. D, NGS-S Pond Leak. Donica Receivership Service, LLC hired an imaging company, Echo Ocean Science LLC, to create an image of the pond floor which found several anomalies, three of which were identified as "high priority." *Id*. Ex. E, Sidescan Imaging Report at 13.

The Piney Point site is no less of a threat to human health and the environment than it was 60 days ago, and yet Piney Point still has no closure plan and no NPDES permit governing discharges to Tampa Bay.

I.  **The Incomplete Conceptual Closure Plan Falls Far Short of Required Measures and is Not a RCRA-Compliant Closure Plan.**

The state-court receiver submitted its revised, incomplete conceptual closure plan to FDEP on March 25, 2022. Dkt. 101-1. On March 30, 2022, FDEP approved the plan finding it "conforms with the closure plan performance standards of Rule 62-673.610, Fla. Admin. Code." Snyder Decl. Ex. C*,* OGC No. 22-0468, at para. 5. On April 21, 2022, Plaintiffs sent FDEP a letter explaining their concerns about the incomplete conceptual closure plan's inadequacies and urging FDEP to immediately take specific measures to mitigate the imminent and substantial harm from Piney Point. *Id*. Ex. F, Letter to FDEP. Plaintiffs have not received a reply to that communication.

As an initial matter, FDEP's Order approving the incomplete conceptual plan appears a pretextual attempt to prove it is working to reduce the imminent and

substantial endangerment posed by Piney Point, yet the Order and incomplete conceptual plan accomplish very little. First, a "conceptual" plan is not contemplated by Florida law regarding phosphogypsum stack closure, *see* 62-673.610, Fla. Admin Code; instead, final actual planning documents must be reviewed and approved. Furthermore, a real closure plan under Florida law requires an exhaustive list of considerations which this incomplete conceptual closure plan does not even approach. *See id.* (specifying that "[a]ll closure plans *shall* address" the enumerated requirements of the regulation or explain why those requirements are not applicable) (emphasis added).

By the Order's own terms, the incomplete conceptual closure plan only attempts to address performance standards for the four phosphogypsum stack compartments, and explicitly does not address closure of the entire facility, nor does it provide detailed closure design analysis, construction drawings, or technical specifications including sequencing and timeframes. Snyder Decl. Ex. B, Conceptual Closure Plan; *id.* Ex. C, OGC No. 22-0468. The plan also does not address necessary improvements or modifications to address 100-year, 24-hour storm rainfall, erosion protection, modeled overflow, verification of dike elevations, or stormwater drainage modification plans. *Id.* Ex. B. Additionally, the incomplete conceptual closure plan does not include required information responsive to subsections 1-4 and 7-9 of the applicable regulation, 62-673.610, Fla. Admin. Code. *Id.* Therefore, even after 60 days, it cannot be said that FDEP is making expeditious progress on Piney Point's closure.

Plaintiffs' RCRA cause of action seeks remedial relief to redress numerous aspects of Piney Point that are nowhere mentioned in the conceptual closure plan. As Plaintiffs have repeatedly pointed out, a RCRA-compliant closure plan must, at a minimum, remediate the existing groundwater contamination at the site and control and abate future contamination from the stacks. Here, the conceptual closure plan falls woefully short. By its own terms:

> The conceptual closure plan does not address the following previously approved elements under existing NPDES permit No. Fl 0000124 supported by the "*Site Report NPDES Permit Renewal Application FL0000124*" by Environmental Consulting & Technology, Inc. (ECT) dated September 2009:
>
> - Groundwater Monitoring Plan
> - Long-term care of the gypsum stack system including seepage water management
> - Closure of the LPWS pond (seepage collection pond)[1]

Snyder Decl. Ex. B at 2, Conceptual Closure Plan. Similarly, the conceptual closure plan does not meaningfully address problems with underlying phosphogypsum material, which is not engineered and not designed to withstand the pressure of millions of gallons of detained water and precipitation. These critical shortcomings call into question whether FDEP, HRK Holdings, LLC, and the Receiver are proceeding with an eye toward expediency in lieu of a complete closure and the abatement of the existing endangerment.

//

//

---

[1] This passage of the conceptual closure plan incorrectly claims that an active, lawful NPDES permit exists for the site. As Plaintiffs have argued in their prior and supplemental briefing, there is no such NPDES permit.

II.     **Piney Point Continues to Operate Without a Valid NPDES Permit.**

The incomplete conceptual closure plan suggests that Piney Point "has been closed under NPDES Permit No. FL000124[.]" *Id.* Ex. B at 1. This is false. There is no active NPDES Permit for the Piney Point site according to both FDEP's NPDES website and the U.S. EPA.

The last NPDES permit authorizing discharges from the Piney Point site was issued on October 6, 1991. Dkt. 52 at 181 (FDEP Mot. for Judicial Notice). The NPDES permit had an expiration date of March 25, 2001. *Id.* at 182. Piney Point Phosphates, Inc. timely submitted a renewal application on September 22, 2000, which was denied by FDEP on December 4, 2000. *Id.* at 149 (Administrative Agreement ¶ 1.e.). FDEP acted on the permit request by denying. To date, FDEP has not issued a NPDES permit for the site to any other operator. FDEP cannot secure compliance with Florida law or the Clean Water Act by claiming that an expired NPDES permit is on administrative life-support for an indefinite period, and certainly not for three decades.

III.    **Piney Point Continues to Threaten Tampa Bay.**

Over the last 60 days, Piney Point has experienced additional structural concerns and release threats. These dangers underscore the ongoing threat posed by the site, and the need to quickly and correctly remediate the site consistent with hazardous waste regulation.

For example, Echo Ocean Science LLC prepared a sidescan imaging report for Piney Point on March 20, 2022, of the pond floor. Snyder Decl. Ex. E, Sidescan

Imaging Report at 3. This image helps identify the presence of damage to the pond liner or potential leak areas. *Id*. The sidescan survey revealed 46 sonar contacts in the cooling water pond at Piney Point, each representing an anomaly to the pond floor. *Id.* The survey identified three contacts as high priority, each showing as depressions greater than two meters in diameter. *Id* at 13. Echo Ocean Services LLC recommends further investigations to assess whether the pond liner is damaged or if leakage is currently occurring at these locations. *Id.* at 18.

Additionally, further repair work on the active NGS-S leak was needed to address a boil along the south exterior gypstack wall on January 5, 2022. Snyder Decl. Ex. D, NGS-S Pond Leak. While the waterflow from the NGS-S south slope boil stopped on January 15, 2022, concentrated seepage resumed on March 4, 2022 from the same location. *Id.* Ex. G, Piney Point Daily Update March 2022. Seepages again stopped on March 5 but resumed *again* on March 6, 2022. *Id.* at 3. While current reports show the flow is suspended, the history of leakage, temporary fixes, and additional leakage evidences an ongoing threat from the location.

Ardaman & Associates Inc. submitted "recommended steps for leak repair" of the NGSS pond on March 29, 2022. *Id.* Ex. D, NGS-S Pond Leak. Of the 28 steps needed to rectify the leak, only fifteen have been marked as complete. *Id*. And, the steps that have been completed are merely preparatory: Ardaman has not inserted the injection pipes needed for the repair, and resin material intended to secure the area cannot be pumped into the site until the pipes are secured. *Id.*

The Piney Point notification website states that "the bid submittal period for work on this first compartment ended and the court-appointed receiver is now reviewing all proposals." *Id.* Ex. H, Piney Point Notification System, May 20, 2022. From the latest FDEP statement, the site could be potentially—but incompletely—closed by the end of 2024. *Id.* Ex. B, Conceptual Closure Plan. There has already been an admission, however, that storms and other events may delay the closure even further and may result in additional discharges into Tampa Bay.[2]

## CONCLUSION

Over the last 60 days, the imminent and substantial endangerment to the environment and human health and safety posed by Piney Point has not been abated. Leaks are still being discovered, repairs attempted, and breaches discovered again. Imaging results are calling for an investigation to see if additional leaks are currently ongoing. FDEP's approval of an incomplete conceptual plan is not the signal that we are in the final chapter of Piney Point's perilous history that FDEP likely intended. Ongoing issues with Piney Point tell a different story.

Plaintiffs will submit a second status report in 60 days. Based on the information submitted thus far, however, Plaintiffs' lawsuit should be allowed to continue in light of the serious shortcomings of the conceptual closure plan, the ongoing endangerment from groundwater contamination, and the continued failure of FDEP to secure compliance with the Clean Water Act.

---

[2] Mendoza, Jesse, *Florida Department of Environmental Protection accepts plans for Piney Point closure*, Sarasota Herald-Tribune (April 4, 2022).

RESPECTFULLY SUBMITTED THIS 27TH DAY OF MAY, 2022.

/s/ Daniel C. Snyder
Daniel C. Snyder, *pro hac vice*
Charles M. Tebbutt
B. Parker Jones
Law Offices of Charles M. Tebbutt,
P.C. 941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
Fax:(541)344-3516
charlie@tebbuttlaw.com
dan@tebbuttlaw.com
parker@tebbuttlaw.com

/s/ Justin Bloom
Justin Bloom, Florida Bar No. 89109
PO Box 1028
Sarasota, FL 34230
Tel: (941) 275-2922
bloomesq1@gmail.com

/s/ Ragan Whitlock
Ragan Whitlock, Florida Bar No. 1034177
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33713
Tel: (727) 426-3653
rwhitlock@biologicaldiversity.org

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Ragan Whitlock
Ragan Whitlock, Florida Bar No. 1034177
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33713
Tel: (727) 426-3653
rwhitlock@biologicaldiversity.org